

June 14, 2024

ORAL ARGUMENT REQUESTED

VIA ECF                                                                                                                                       REDACTED

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      RE:    *United States v. Huawei Technologies Co. Ltd.*, No. 1:18-cr-00457 (S-3) (AMD) (CLP)

Dear Judge Donnelly:

      We write on behalf of the Huawei Defendants (collectively, "Huawei") to request that the Court downgrade the government's February 7, 2022 *Brady* disclosure letter (the "February 2022 *Brady* Letter") from "Attorneys' Eyes Only" ("AEO") to "Sensitive Discovery Material" ("SDM") under the Protective Order, Dkt. 57 ("P.O.").

      The ▮▮▮▮ February 2022 *Brady* Letter, which is the most significant of a series of *Brady* letters in this case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] Inexplicably, the government withheld the information described in the February 2022 *Brady* Letter for roughly three years, despite Huawei's repeated demands for this precise type of exculpatory information. And when the government finally disclosed the information, it designated its Letter as AEO under the Protective Order, meaning Huawei personnel still have never seen or been made aware of this information more than two years after it was produced.

      After resisting for nearly two years any downgrading of the February 2022 *Brady* Letter, the government now proposes to eventually downgrade this information from AEO to SDM only three months before trial. Such delayed discovery is entirely inappropriate for exculpatory *Brady* information of the type contained in the February 2022 *Brady* Letter. Moreover, because of the lengthy time required to investigate related leads in China and to secure for use at trial the highly exculpatory evidence likely to be derived from the February 2022 *Brady* Letter, the government's delayed discovery proposal would virtually ensure the need for a continuance of the trial date once the downgrade is eventually made.

---

[1] Despite the exculpatory value of the information contained in the Letter, the government has resisted the *Brady* label, asserting that it has made its (belated) disclosure not in response to Huawei's repeated *Brady* demands, but voluntarily, out of an abundance of caution.

For the reasons described below, Huawei respectfully requests that the Court order the prompt downgrade of the February 2022 *Brady* Letter from AEO to SDM.

**I.    Background**

    **A.    The February 2022 *Brady* Letter**

On February 7, 2022, the government produced ▓▓▓▓ *Brady* disclosure that  The information disclosed in this Letter demonstrates that ▓▓▓▓

The government has asserted that SDM protections are insufficient for the February 2022 *Brady* Letter and has designated the Letter as AEO.[2] Defense Counsel have repeatedly voiced their objections to this designation. In response, the government has cited only vague and unsubstantiated concerns regarding ▓▓▓▓ as the reason for the AEO designation. At no time, however, has the government provided any specificity regarding the nature of its concerns or any basis for them.

Despite being on notice for more than two years of Huawei's objection to the AEO designation, the government has failed to make an application to this Court to justify its AEO designation as required by the Protective Order. Finally, on May 13, 2024, the government addressed Huawei's concerns for the first time, offering to downgrade the February 2022 *Brady* Letter from AEO to SDM three months before trial. As explained below, the government's proposal is inadequate.

    **B.    Relevant Protective Order Provisions**

Under the Protective Order governing discovery in this action, there are three possible levels of protection for all discovery produced by the government: Discovery Material ("DM"), SDM, and AEO. *See* P.O. ¶¶ 1, 11, 16.

---

[2] Due to this restriction, Defense Counsel cannot attach a copy of the disclosure to this motion. Rather, counsel requests that the government provide the Court with a copy of the February 7 *Brady* Letter under seal. We are describing the contents of the Letter under a May 13, 2024 agreement with the government that we "may describe AEO materials in under-seal submissions to the Court, provided that the filing does not quote from or disclose any PII derived from the AEO material."

2

By default, all discovery is deemed at least DM. *See id.* ¶ 2. The protection of DM is ensured by a number of restrictions on who can see it and how it can be used. *See id.* ¶¶ 2–10. If, and only if, the government has a "good-faith belief" that greater restrictions are required, it may initially designate a document (or part thereof) using one of the two more restrictive designations: SDM and AEO. *Id.* ¶¶ 19–20.

An SDM designation carries with it onerous restrictions designed to protect highly sensitive information, including "identifying information for any potential witness, victim or individual not a party to this litigation; proprietary or sensitive information of a victim financial institution or of a witness; national security or law enforcement information; information that could implicate the safety of others; [and] information that could impede an ongoing law enforcement investigation." *Id.* ¶ 19. As detailed in Defendants' concurrently filed motion regarding SDM procedures ("SDM Mot."), the parties have in the past few weeks reached certain compromises to reduce the burden of SDM designations. However, even with these modifications, SDM remains subject to substantial restrictions, including:

- Defendants may review SDM "only in the presence of Defense Counsel or Defense Staff," P.O. ¶ 12;

- Defendants are "prohibited from having possession, custody, or control of the [SDM]," and may not retain any work product they generate that is "derived or prepared from the SDM," *id.*;

- Neither SDM nor work product based on SDM may be "taken, transmitted or accessed, in whole or in part, outside of the United States," nor may information from SDM even be discussed outside the United States, except as agreed by the government, *id.* ¶¶ 13–14; and

- Defendants may not discuss SDM except in conversations that include Defense Counsel, *see* SDM Mot. 4.

The final category of discovery restrictions is AEO, which may be reviewed only by Defense Counsel and Defense Staff who "are citizens of the United States." P.O. ¶ 17. Additionally, unless otherwise agreed between the parties, such discovery "must be maintained on a stand-alone computer or computers within the office of Defense Counsel, not connected to the internet, and may not be transported or transmitted from those stand-alone computers without order of this Court." *Id.* ¶¶ 18–19. An AEO designation is appropriate only where "designation as [SDM] provides insufficient protection to such materials." *Id.* ¶ 20.

The Protective Order also contains dispute-resolution procedures. If the parties disagree about the government's AEO designation, the government is required to "make an application to the Court and seek to establish good cause regarding why the material should be treated as [AEO] Material." *Id.*

## II. Argument

### A. The February 2022 *Brady* Letter Contains *Brady* Information That Must Be Disclosed To The Defendants Promptly And In Time For Its Effective Use At Trial.

The government's February 2022 *Brady* Letter contains information that is highly exculpatory and required to be disclosed to Huawei in accordance with *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny. Specifically, the February 2022 *Brady* Letter ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. In other words, the information disclosed "support[s] an alternative version" of events "entirely at odds with the government's theory." *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 162 (2d Cir. 2008) (finding *Brady* violation and granting a new trial).

Because the February 2022 *Brady* Letter contains *Brady* information, the government must disclose it to Huawei "in time for its effective use at trial." *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008); *see also* U.S. Dep't of Justice, *Justice Manual* § 9-5.001(D)(1) ("Exculpatory information must be disclosed reasonably promptly after it is discovered."). Indeed, this Court explicitly directed the government pursuant to Rule 5(f) that all *Brady* material must be disclosed "promptly after its existence becomes known to the prosecution so that the defense may make effective use of the information in the preparation of its case." Feb. 18, 2021 Order at 1, Dkt. 261.

### B. Delayed Disclosure Of The February 2022 *Brady* Letter Until Three Months Before Trial Does Not Allow For Its Effective Use.

In violation of its obligation to "promptly" produce *Brady* material, the government sat on this disclosure for years, and once it made the disclosure to counsel, did so only under the Protective Order's AEO restrictions. This means that, five years into this case, the Defendants still do not know the material, exculpatory information set forth in the February 2022 *Brady* Letter. On May 13, 2024, the government finally agreed that it would allow the February 2022 *Brady* Letter to be provided to Huawei, but not until three months before trial. For several reasons, such a belated disclosure does not allow for its effective use at trial and therefore does not satisfy the requirements of *Brady*.

*First*, as the Second Circuit has recognized, "[t]he more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense" the required "opportunity for use" at trial. *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006). The February 2022 *Brady* Letter contains ███████ of highly valuable information, rich with potential leads that Huawei could use to develop highly exculpatory evidence for use at trial.

4

*Second*, given that virtually all of the relevant conduct in this case took place in China, it is likely that the evidence to be derived from the February 2022 *Brady* Letter will be found in China, not the United States. ███████████████████████████████████████████████████████████████ Conducting an effective investigation in China based on the leads contained in the *Brady* Letter will likely take many months or more, far in excess of the three months the government proposes to allow. As discussed further below, such an investigation will also require the involvement of Huawei.

*Third*, to the extent exculpatory testimonial evidence is identified in China based on the leads provided in the February 2022 *Brady* Letter, it could take more than a full year to obtain appropriate approvals from the Chinese government to introduce such evidence in court, whether through live testimony, remote testimony, or Rule 15 deposition. For example, in a recent trade secret theft prosecution against a Chinese corporation, the court allowed the remote testimony of a senior executive from the corporate defendant —but despite the witness's willingness to testify and the parties' diligent efforts, it took a full *sixteen months* in order to secure the various diplomatic approvals (Chinese and U.S.) for the witness to testify at trial.[3] *See* Minute Entry (Dkt. 617), *United States v. Fujian Jinhua Integrated Circuit Co.*, No. 3:18-cr-465-MMC (N.D. Cal. Aug, 21, 2023) (noting that the chairman of the company, Lu Wensheng, testified by Zoom). After hearing that testimony, the court acquitted the defendant of all charges. *Id*. Dkt. 650 (judgment of acquittal); *id*. Dkt. 652, at 5520:10–5224:16 (court's verdict noting "in particular" testimony from Mr. Lu as grounds for acquittal).

Given the nature, size, and complexity of this case, the February 2022 *Brady* Letter must be disclosed to Huawei immediately in order for Huawei to be able to make effective use of it at trial. A delayed disclosure a mere three months before trial, or even twelve months before trial, would likely be insufficient for Huawei to be able to effectively use the information to secure exculpatory evidence in support of their defense. For these reasons, a delayed disclosure would violate *Brady* and likely necessitate a continuance of the trial. *Cf. DiSimone*, 461 F.3d at 197 (information "would have induced the defense to conduct further investigations in order to use the evidence fully," and noting "the delay" in disclosure "was aggravated by the failure of the court to grant the defense's requested continuance").

### C. Disclosure Only To Defense Counsel Does Not Satisfy *Brady*.

Although Defense Counsel have had access to the *Brady* Letter since February 2022, the government's AEO designation has prohibited Defense Counsel from sharing the Letter with Huawei or communicating with them about it in any way. Such an AEO disclosure does nothing to satisfy the government's *Brady* obligations, and violates Huawei's rights to participate in its own defense and to meaningfully communicate with its counsel.

*Brady* requires disclosure to the defendant, not only to defense counsel. Defense Counsel have been unable to identify a single case where the government has even attempted to maintain a *Brady* disclosure as AEO, much less one where a court approved such a designation. *Cf. United States v. Castricone*, 2021 WL 841405, at *1–2 (W.D.N.Y. Mar. 5, 2021) (government agreed to

---

[3] The government's case rested on April 4, 2022. *Id*. Dkt. 422. After two additional court days when a U.S.-based defense witnesses testified, the trial was continued from April 6, 2022 through August 21, 2023, when the defense was finally able to call Mr. Lu. *See id*. Dkt. 617.

5

modify protective order to remove AEO designation and allow the defendant to review all discovery materials, including communications with the "victim/confidential source").

Whether *Brady* could ever by satisfied by disclosure to defense counsel alone, it cannot be here. Disclosure to Huawei is essential for the defense to be able to make effective use of the information. As the court explained in *United States v. Baker* when rejecting the government's proposed protective order that would have impeded defendant's personal access to discovery, "[i]t frequently will be the defendant, and the defendant alone, who knows all of the relevant facts and who will appreciate the significance of a particular item of evidence . . . ." 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2020); *see also United States v. Burgess*, 2018 WL 11211501, at *3 (S.D.N.Y. Sept. 21, 2018) (requiring prompt production of discovery materials to the defendants personally, emphasizing defendants' "strong interest in viewing the [discovery] to help prepare for their defense"). That is especially the case here, where the exculpatory evidence to be derived from the February 2022 *Brady* Letter is likely in China and Defense Counsel are unable to conduct an effective investigation based on the February 2022 *Brady* Letter without the assistance of Huawei.

The Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53 (1957), is instructive. That case considered the so-called "informer's privilege," the government's "privilege to withhold from disclosure the identity of persons who furnish information of violations of law" to law enforcement. *Id.* at 59. Recognizing the government's strong interest in maintaining this privilege, the Court nevertheless held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. In such circumstances, "the trial court may require disclosure and, if the Government withholds the information, dismiss the action." *Id.* at 61; *see also DiBlasio v. Keane*, 932 F.2d 1038, 1043 (2d Cir. 1991) (holding that disclosure was required where it was "'relevant and material' to the case" and "helpful to the defense").

So too here. The February 2022 *Brady* Letter contains information highly relevant and helpful to Huawei's defense. Effective use of such information requires that it be disclosed to Huawei directly and promptly. In such circumstances, whatever interest the government has in maintaining its AEO designation (an interest that is, in any event, speculative and without foundation, *see* Part II.D, *infra*) "must give way." *See Roviaro*, 353 U.S. at 61.[4]

    **D.**    **A Balancing Of Interests Is Not Relevant, But Regardless, The Government Cannot Establish Good Cause To Justify Withholding The *Brady* Letter.**

Because the February 2022 *Brady* Letter contains highly exculpatory information, the effective use of which requires prompt disclosure directly to Huawei, *Brady* requires disclosure regardless of the government's purported interest in keeping the information secret from

---

[4] Disclosure to Defense Counsel only under an AEO designation also violates Huawei's right to participate in its own defense, *see Baker*, 2020 WL 4589808, at *4 ("In criminal cases, the accused has a personal interest in making his or her best defense.") (citing *Faretta v. California*, 422 U.S. 806, 819 (1975)), and to consult meaningfully with counsel, *Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir. 2000).

defendants. Even considering such an interest, however, the government fails to justify maintaining its AEO designation.

It is well established that any restriction on discovery must be narrowly tailored and supported by good cause. "Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *Castricone*, 2021 WL 841405 at *1 (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (citation omitted); *see also United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (requiring a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements"), *cited with approval by Baker*, 2020 WL 4589808 at *3. As the party seeking the protection, the government bears the burden of establishing good cause. *Castricone*, 2021 WL 841405 at *1; *Smith*, 985 F. Supp. 2d at 522–23.

The government has failed to meet such a burden. In response to Defense Counsel's request that the government articulate its rationale for maintaining an AEO designation, the government has cited only vague and unsubstantiated concerns regarding ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The government has not supported such generalized concerns with any reason to believe that SDM treatment is insufficient. Nor could such concerns be implicated by allowing individuals within Huawei who have signed the Protective Order to see this information under SDM restrictions. *First*, the SDM category already contains millions of pages of material that the government contends ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, and there the government has not indicated that those concerns have been insufficiently protected by the SDM restrictions. The government cannot credibly establish why SDM restrictions are sufficient to protect all of its other purportedly sensitive information, but insufficient to protect the February 2022 *Brady* Letter. *Second*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ What is new in the *Brady* Letter ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

The government has also asserted that disclosure of the Letter is not necessary because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. However, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7

████████████ The government's efforts to justify its AEO designation fail to establish the requisite good cause for withholding this *Brady* material from the Defendants.

Accordingly, even if the government could justify withholding the *Brady* Letter from Huawei based on a showing of good cause (which it cannot), the government has failed to demonstrate good cause here.[5]

## III. Conclusion

For the foregoing reasons, Huawei respectfully requests that the Court downgrade the Protective Order designation of the February 2022 *Brady* Letter from AEO to SDM.

Respectfully submitted,

/s/ Douglas A. Axel
Douglas A. Axel
Michael A. Levy
Jennifer Saulino
Daniel Rubinstein
Ellyce R. Cooper
Melissa Colón-Bosolet
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Tel.: 212-839-5300
Email: daxel@sidley.com

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
Tel: 202-639-6048
Email: dbitkower@jenner.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

CC: Clerk of the Court (AMD) (by ECF)

---

[5] Any attempt by the government to substantiate its speculative assertion of "good cause" through an *ex parte* filing, without affording Huawei or its counsel an opportunity to respond, would be improper. As Huawei has asserted in connection with other similar attempts by the government to litigate through *ex parte* submissions, such a process is highly disfavored, particularly when a criminal defendant's Sixth Amendment rights are at issue. *See Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968) ("The value of a judicial proceeding . . . is substantially diluted where the process is *ex parte*, because the Court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate."). The Court should not allow the government to present information in support of its asserted "good cause" *ex parte* without affording Huawei an opportunity to respond.

8