**SIDLEY**   **JENNER&BLOCK** LLP   **Steptoe**

May 8, 2025

**HEARING REQUESTED**

**VIA ECF**
The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Huawei Technologies Co. Ltd.*, No. 1:18-cr-00457 (S-3)
            Opposition to Motions to Confirm AEO Designation of Company 1 Materials and
            Cross Motion to Overrule Designation of Company 2 Materials as AEO

Dear Judge Pollak:

      The government's motions[1] ask this Court to rule that more than 46,000 documents obtained from alleged victim "Company 1" (the "Company 1 Subject Materials") may be designated Attorneys' Eyes Only ("AEO"). Separately, the government has designated an additional 2,048 documents from the alleged victim "Company 2" (the "Company 2 Subject Materials") as AEO. Huawei hereby opposes the government's motions concerning the Company 1 Subject Materials and cross-moves to overrule the government's AEO designations of the Company 2 Subject Materials.

      The government comes nowhere close to showing good cause to designate Rule 16 discovery as AEO material. Across its two motions with respect to Company 1, the government does not identify a single case where Rule 16 material was subject to AEO restrictions—and the facts here certainly do not warrant this Court breaking new ground. The Company 1 Subject Materials relate to two-decades-old technology that Company 1 no longer sells or technologically supports or to alleged trade secrets that Company 1 has since publicly disclosed. The only support the government offers for its designation (or re-designation)—two declarations from a Company 1 employee who describes reviewing only an unidentified "sampling" of the materials designated as AEO—fails to explain how the specific information in *any* (let alone all) of these tens of thousands of documents requires AEO treatment. And defense counsel's own review of the Company 1 Subject Materials reveals that many of the disputed documents—which include public documents, reproductions of Company 1's logo, blank pages, and other patently non-sensitive materials—would not even warrant SDM treatment, let alone highly restrictive treatment as AEO material. *Cf.* ECF No. 57 ("P.O.") ¶ 20.

      The government's self-serving claim that Huawei employees do not need to review the Company 1 Subject Materials likewise fails. By producing the materials as part of Rule 16 discovery, the government has implicitly represented that they are either "material to preparing the defense" or potentially part of the government's "case-in-chief at trial." Fed. R. Crim. P.

---

[1] *See* ECF No. 497 ("Mot."), ECF No. 521 ("Suppl. Mot.").

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 2

16(a)(1)(E). The Defendants are thus entitled to review them. It would be unfair and inconsistent with due process to permit the government to keep the Defendants in the dark as to the materials unless and until the government uses the material at trial.

Likewise, the Company 2 Subject Materials do not merit AEO treatment. As with the allegations pertaining to Company 1, the alleged misappropriation of Company 2's trade secrets occurred more than a quarter-century ago, *see* S3 Indict. ¶ 25 ("between 2000 and 2003"), and concerned technology many generations out of date. The Company 2 Subject Materials, too, include many documents—such as a patent, third-party brochures, and reproductions of Company 2's logo—that were plainly never sensitive and would not merit even SDM treatment. The government's only stated basis for the AEO designation is that these documents have boilerplate "Confidential and Proprietary" stamps. But these were seemingly imposed by Company 2 in the ordinary course of business—*i.e.*, not in connection with litigation or under a court-entered protective order. And in any event, any confidentiality designations made during a long-ago civil matter cannot supersede the Defendants' rights to access the materials in this criminal matter.

On the other side of the ledger, designating these materials as AEO would prejudice the defense. AEO treatment would prevent any Huawei employee from accessing the documents in preparation for trial. It would likewise prevent U.S. defense counsel from discussing the documents with fact witnesses who may be necessary to help interpret the documents, or even from freely collaborating within the defense team about these documents and their import to the case. It would require defense counsel to maintain and review more than 48,000 documents on an air-gapped, difficult-to-access computer in a physical office, which could not be meaningfully searched or compared against other discovery documents. And it would require defense counsel to "purge" more than 5,500 documents initially produced as SDM or DM from its computer systems, as well as any attorney work product that may quote from these materials.

The Court should deny the government's pending motions to confirm its AEO designation of the Company 1 Subject Materials and overrule the government's designation of the Company 2 Subject Materials as AEO. To the extent the Court does not summarily deny the government's motion, Huawei respectfully requests a hearing on the government's motion and provides notice of its intention to cross-examine the Company 1 declarant, and any declarant the government may offers with respect to Company 2.

## BACKGROUND

### A. Relevant Protective Order Provisions

The Court is by now familiar with the terms of the Protective Order governing discovery in this case. P.O. ¶ 1. By default, the Protective Order deems all discovery produced by the government as Discovery Material ("DM"), which subjects it to a number of restrictions on who can see it and how it can be used. *See id.* ¶¶ 2–10. Where the government has "a good-faith belief" a document contains certain delineated types of sensitive information, including "proprietary or sensitive information of a victim … or of a witness," the government may

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 3

designate the document (or any relevant parts) as SDM. *Id.* ¶ 19. Among other restrictions, a SDM designation means that Defendants may not review the material outside of "the presence of Defense Counsel or Defense Staff," *id.* ¶ 12; may not "hav[e] possession, custody, or control of [it]," *id.*; and may not review or discuss it except in the United States or certain pre-approved third-party countries, *id.* ¶¶ 13–14.

The final and most onerous discovery designation is AEO, which may be applied "only upon a good-faith belief by the government that designation as [SDM] provides insufficient protection to such materials." P.O. ¶ 20. Among other restrictions, AEO may only be reviewed by defense counsel and Defense Staff who "are citizens of the United States"; "may not be disseminated to or reviewed by any other person, including the [D]efendants"; and "must be maintained on a stand-alone computer or computers within the office of Defense Counsel, not connected to the internet." *Id.* ¶¶ 17–19.[2] Further, as discussed below, *infra* at 7–8, the law requires AEO designations to be narrowly tailored, meaning that the government must limit its designation to the specific parts of individual documents presenting concerns that cannot be addressed through an SDM designation. Prior to the productions and retroactive designations at issue here, the government had designated just one government-authored disclosure letter as AEO.

Per the Protective Order, the government bears the burden of justifying SDM or AEO designations. ECF No. 471, at 10. If the parties disagree about a designation, the government is required to "make an application to the Court and seek to establish good cause regarding why the material should be treated as [AEO]." P.O. ¶¶ 19–20. Pursuant to the Court's November 4, 2024 order, the government must bring such an application within 60 days of a defendant's unresolved objection. ECF No. 471, at 17. Huawei also may move to downgrade material to a lower level of discovery protection. *See, e.g.*, ECF Nos. 143, 454.

### B. Company 1 Subject Materials

The Third Superseding Indictment includes allegations relating to an early-2000s civil dispute between Huawei and a technology company identified as Company 1. *See* S3 Ind. ¶¶ 18–24. In 2003, Company 1 sued Huawei over the same conduct alleged in the S3 Indictment. The allegations in that lawsuit involved router products and versions of operating systems that were developed in the late 1990s and early 2000s and are no longer sold or supported by Company 1. Nguyen Decl. ¶ 2. The Company 1 Subject Materials were all either (1) produced to Huawei's counsel under a two-tier protective order entered in that case, or (2) allegedly provided to a neutral expert retained in that case (as well as to Huawei's counsel in that case). *Id.* ¶ 3, 5. Company 1 and Huawei settled that lawsuit in 2003, approximately nine months after it was filed. *Id.* ¶ 4.

The government's pending motions ask the Court to confirm its AEO designation of two tranches of Company 1 Subject Materials, which collectively total more than 46,000 documents

---

[2] In 2020, the government agreed that AEO materials produced in hard copy could also be maintained in defense counsel's home or office.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 4

and comprise approximately **28% of all Company 1 discovery** produced by the government in this case. All of these documents are at least twenty-two-years old (some much older) and concern technology that is multiple generations out of date. As further detailed below, *infra* at 10–12, the materials include customer-facing materials, websites, company logos, and other materials that are plainly not confidential. The government justifies its blanket designation of over 46,000 materials based on its assertion that these materials "contain, at least in part, trade secret information pertaining to Company 1's source code and related technologies," and that these technologies "may be the same as" technology in use today. *See* Mot. 5, 7 (emphases added); Suppl. Mot. 3, 4 (same). The government supports its request with two declarations from a Company 1 employee who reviewed an unidentified "sampling" of materials. The declarations do not cite specific examples of materials that remain sensitive today, nor do they explain why designating the materials as SDM would provide insufficient protection.

        1.        **Tranche A**

The government's first motion concerns 5,547 documents Company 1 produced to Huawei in the prior civil litigation ("Tranche A"). These documents were produced in 2003 or 2004 under a two-tier protective order (the "Company 1 Civil PO"). *See* Mot. Ex. C. The highest level of protection in the Company 1 Civil PO was a designation called "Highly Confidential – Attorneys' Eyes Only" (hereinafter, "Highly Confidential"). *Id.* ¶ 1.5.2. That designation was less restrictive than the AEO restrictions under the Protective Order in this case. Documents designated as Highly Confidential could be shared with Huawei's outside counsel, independent experts or consultants, and certain other third-party vendors. *Id.* ¶ 3.2. Such documents could generally be stored on a networked-enabled computer, with an additional protection requiring "source code" itself to be stored on an air-gapped computer secured in outside counsel's office. *Id.* ¶ 6.2.

In April 2023, the government produced the documents in Tranche A as Rule 16 discovery. ECF No. 377; ECF No. 497, at 4. The government designated 5,493 of them as SDM and 54 of them as DM under the P.O. in this case. *See id.* Since then, and to this date, the documents have resided on defense counsel's computer systems, and defense counsel and members of the Huawei in-house legal department have accessed and reviewed the documents in accordance with applicable SDM restrictions. Nguyen Decl. ¶ 7. There have been no issues relating to the security of the documents or any allegations of improper use.

Between April 2023 and November 2024, the government never asserted that these documents required AEO treatment. Initially, the government instructed Huawei to comply with both the government's designations under the criminal-case Protective Order and the designations under the protective order from the long-dismissed civil case. Ex. 15.[3] After Huawei objected that the Company 1 Civil PO was inapplicable to Rule 16 productions in this case, the government clarified on July 24, 2023 that it "takes no position on [Huawei's] obligations with respect to its civil protective orders." Ex. 16. As a courtesy to Company 1,

---

[3] Exhibits refers to the exhibits attached to the concurrently filed Declaration of Tung T. Nguyen ("Nguyen Decl.") (concurrently filed).

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 5

Huawei agreed to abide by the Company 1 Civil PO designations while it worked with Company 1's lawyers to resolve this dispute. After extensive discussions, on November 8, 2023, Huawei's counsel and Company 1's counsel agreed to an interim solution, under which "members of [Huawei's] legal department"[4] (but not other Huawei employees) could access materials designated as Highly Confidential "consistent with the SDM proscriptions of the criminal protective order." Mot. Ex. E. Huawei has followed the terms of that interim solution to this date, but has at all times maintained that even this solution was unduly restrictive.

On May 24, 2024, Huawei's counsel notified the government and Company 1 that, starting on June 1, 2024, Huawei would follow only the Protective Order designations applicable to the Rule 16 discovery in this case, explaining that the Company 1 Civil PO had no bearing on the government's Rule 16 discovery here. On June 12, 2024, the government responded that it intended to upgrade "7,000 or so" documents to AEO. Ex. 17, at 10. Defense Counsel promptly requested a list of the proposed upgraded documents. After many months and repeated requests from Defense Counsel (during which Huawei voluntarily adhered to the status quo of abiding by the parties' November 2023 interim agreement), the government finally responded on November 14, 2024, providing the list of the documents comprising Tranche A attached as Exhibit A to its motion. *Id.* at 3. The government further demanded that Defense Counsel "take all necessary steps to remove all other materials designated as Attorneys' Eyes Only from your systems." *Id.*[5]

The day after the government made its request, Huawei informed the government that it objected to the government's purported re-designation of over 5,500 documents from SDM or DM to AEO. Ex. 17, at 1. Huawei's counsel advised the government that, unless and until the Court ordered otherwise, Huawei would "maintain the existing *status quo* with respect to the documents at issue," meaning that the documents would be accessible to "members of the Huawei Legal Department in accordance with the SDM restrictions." *Id.* at 2. The government has not objected to this. *See* Mot. 4–5.

The parties further met and conferred without reaching agreement; the government's first motion followed.

    2.    **Tranche B**

While the first motion was pending, the government informed Huawei that it intended to produce an additional 68,000 Company 1 documents as AEO—which the government eventually narrowed to "41,432 documents" ("Tranche B"). Suppl. Mot. 2. Huawei informed the government on February 7, 2025 that it objected to this further designation of material as AEO.

---

[4] Contrary to the government's claims (ECF No. 497, at 4), this agreement was broader than just "Huawei's in-house counsel," as it included non-lawyers who "work exclusively in Huawei's legal department." *See* Mot. Ex. E. In addition, under a June 2023 agreement with the government regarding the handling of SDM, these documents have been remotely reviewed via a Citrix terminal in defense counsel's Hong Kong office. *See* ECF No. 432-1 ¶ 8.

[5] The government also requested to treat the spreadsheet attached as Exhibit A to its motion as AEO; Defense Counsel rejected that request, and the government's motion does not seek to designate or treat that spreadsheet as AEO. Ex. 17, at 1–3.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 6

*See* Ex. 19.  The parties agreed to brief these issues together.  *See* ECF No. 500.  The parties therefore sought, and the Court granted, an abeyance of briefing on Tranche A, so that the confidentiality claims of those documents and Tranche B could be resolved together.  *See* Electronic Order (Feb. 12, 2025).  The government initially produced Tranche B to the defense on February 24, 2025.  *See* ECF No. 506.  However, Huawei did not receive the files in an accessible form until April 23, 2025.[6]

The government represents that the materials in Tranche B were provided by Company 1 to a neutral expert retained in the parties' prior civil litigation.  Accepting this representation as accurate, these materials were also available to Huawei's counsel in the prior civil litigation under less restrictive terms than the AEO designation in this case.  The neutral expert was retained jointly by Huawei and Company 1 pursuant to the civil settlement for the purpose of determining whether Huawei's code was substantially similar to, or developed or derived from, Company 1's code.  *See* Ex. 1 §§ 5.04, 5.05.  Pursuant to the settlement agreement, Company 1's source code was provided to the neutral expert and Huawei's outside litigation counsel, as well as accessible to any experts retained by Huawei for the civil litigation.  *Id.* § 5.03.  The source code was maintained at the "Source Code Location," which was the "Expert's residence," *id.* § 1.01, on a desktop computer with modified security features, which included the "removal of removable storage media drives (such as floppy disk and CD write drives)", *id.* § 5.01.  However, neither the government nor Company 1's declarant represent that any of the materials in Tranche B was subject to these requirements.

### C. Company 2 Subject Materials

In 2010 and 2011, Huawei and Company 2 sued one another asserting trade secret claims.  Nguyen Decl. ¶ 21.  Huawei obtained a preliminary injunction against Company 2 in February 2011, and the parties eventually settled their disputes in April 2011.  *Id.*  The government has repackaged certain of the allegations in Company 2's civil lawsuit as part of Counts 1–3 of the Third Superseding Indictment.  *See* S3 Indict. ¶¶ 25–27.

Prior to February 28, 2025, the government had produced more than half a million documents relating to the Company 2 allegations.  Nguyen Decl. ¶ 23.  These earlier productions include technical specifications, market requirements, and source code.  *Id.*  Every one of these documents was designated either DM or SDM under the Protective Order, and neither the government nor Company 2 has ever asserted that these designations were insufficiently protective.  *Id.*  On February 28, 2025, the government made its final production of over 2,000 Company 2 materials, and designated all of those documents as AEO.  ECF No. 511.  All of these documents predate the 2011 settlement between Huawei and Company 2, and most date back to 2003 and earlier.  Nguyen Decl. ¶ 25.

---

[6] The format of the production was such that the materials could not be extracted and reviewed consistent with the Protective Order, because the government's production format would require connecting the production to an internet-enabled device.  The government attempted to re-produce these materials to Huawei's counsel on March 7, 2025 as individual image files, but Huawei did not receive this production.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 7

The government's sole stated reason for designating these materials as AEO was its understanding that Company 2 had, in the underlying civil litigation, designated these documents as "Confidential and Proprietary." Nguyen Decl. ¶ 27. This appears to be inaccurate based on defense counsel's review of the materials. These documents do not have Bates stamps or other indicia that these documents were produced in litigation, and there was no category under the protective order in the Company 2 civil litigation called "Confidential and Proprietary." *See id*. ¶ 25; Exs. 11-14.[7] Rather, these documents appear to have been stamped "Confidential and Proprietary" by Company 2 employees in the ordinary course of business. Nguyen Decl. ¶ 25.

During a meet and confer call, the government acknowledged that it had not independently determined the materials were proprietary, nor had the government determined whether the confidential nature of the materials had changed in the intervening decade-plus. The government also did not explain why SDM restrictions—which are designed to protect "proprietary or sensitive information" and has been applied to hundreds of thousands of other documents from alleged technology company victims—would be insufficient. *Id*. ¶ 28.

Huawei informed the government on April 1, 2025 that it objected to the designation of these materials as AEO. Because the legal issues with respect to the Company 1 and Company 2 Subject Materials are similar and the government's designations suffer from similar flaws, Huawei suggested to the government that it address these materials within its then-forthcoming motion with respect to Tranche B of the Company 1 Subject Materials. The government declined, and instead stated that it would file a motion within 60 days, *i.e.*, before June 2, 2025. In the interest of judicial economy and given that Huawei first objected to the government's designation of Rule 16 material as AEO in early November, Huawei informed the government that it would cross-move for an order de-designating the Company 2 Subject Materials. Ex. 20.

## ARGUMENT

I. **The Government Seeks Unprecedented Relief Based on Conclusory and Unsupported Justifications.**

The government cannot show "good cause" for its AEO designation of tens of thousands of pages of Rule 16 discovery. Rule 16 requires the government to "permit the defendant to inspect and to copy" materials in the government's possession, custody, or control that is, as relevant here, either material to the defense or part of the government's case in chief. *See* Fed. R. Crim. P. 16(a)(1)(E). This right belongs to the defendant, not merely to the defendant's lawyers. *See, e.g.*, *DiBlasio v. Keane*, 932 F.2d 1038, 1043 (2d Cir. 1991) (disclosure of information to the defendant is mandatory where it is "'relevant and material' to the case" or "helpful to the defense"). Although the Court has discretion to grant a protective order regulating *when and how* a defendant may access certain discovery, such a restriction presumes the defendant will see the material, and moreover, even simply regulating a criminal defendant's

---

[7] As with Company 1, the protective order in the Company 2 civil litigation was much less restrictive than the AEO requirements in this case. The highest-level protection under that protective order, called "Attorneys' Eyes Only" permitted the materials to be shared with each party's outside counsel and experts (later amended to include certain in-house attorneys) and did not impose any restrictions on how counsel could store the materials. *See* Exs. 12–13.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 8

access to discovery requires the government to establish the risk of "a clearly defined, specific and serious injury" from early disclosure. *United States v. Smith*, 985 F. Supp. 2d 506, 523–24 (S.D.N.Y. 2013) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* at 523 (citation omitted).

Faced with this extraordinary burden, the government offers only conclusory and unsupported justifications. Put simply, the government has not established that any of the disputed documents, let alone each and every one of them, is deserving of AEO designation. The government does not cite a single case where a court approved an AEO restriction on Rule 16 material, much less on the facts presented here. Even assuming an AEO restriction on Rule 16 discovery could ever be warranted, the age and nature of the materials here makes any claim of a continuing need for AEO designation implausible. The disputed documents are similar in kind to hundreds of thousands of documents the government produced to these same Defendants, without any AEO designation, relating to alleged trade secrets of the same and similarly situated companies; a large subset of the materials has been accessible to the Defendants under less-restrictive measures for more than two years without incident; and the AEO designation carries with it onerous and impermissible restrictions on even outside counsel's ability to access the materials.

The government's unwarranted and unlawful restrictions on Defendants' and defense counsel's ability to access the subject materials should be rejected. In criminal proceedings, "the accused has a personal interest in making his or her best defense." *United States v. Baker*, 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2020). Indeed, "[t]he right to defend is personal. The defendant, and not his lawyers or the State, will bear the personal consequences of a conviction." *Id.* (quoting *United States v. Rosemond*, 958 F.3d 11, 120 (2d Cir. 2020)). Often, only the defendant knows all the relevant facts and can appreciate the significance of a particular piece of discovery. *Id.*

The only legal support the government offers for its unprecedented request is 18 U.S.C. § 1835(a), *see* Mot. 6, but that provision is unavailing for several reasons. *First*, section 1835(a) merely requires the Court to act "as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal [] Procedure . , , and all other applicable laws." 18 U.S.C. § 1835(a). Section 1835 "does not [] abrogate existing constitutional and statutory protections for criminal defendants." *United States v. Hsu*, 155 F.3d 189, 197, 205 (3d Cir. 1998) (reaffirming defendant's right to Rule 16 materials and requiring the district court "to assess the materiality of those portions of the documents sought to be withheld"). To the extent there is any conflict between the due process rights of a criminal defendant and the property rights of a third party, the former must prevail. *Second*, the statute by its own terms applies only to actual trade secrets, but the government has failed to identify any actual trade secrets contained in the Company 1 Subject Materials; its declarant states only that certain of the materials at issue *relate to* trade secrets. *Third*, § 1835(a) authorizes only the steps "necessary and appropriate"; as detailed below, SDM and DM

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 9

restrictions more than safeguard whatever vague, unsupported, and stale proprietary interests the alleged victims might have in these documents.[8]

**II.     The Government's Motions to Confirm Its AEO Designation of the Company 1 Subject Materials Should Be Denied.**

The government's motions fail to establish that any of the Company 1 Subject Materials merit AEO designation. As detailed below, the Court should deny the motions and overrule the AEO designations.

**A.     The Government Fails to Show that the Company 1 Subject Materials Contain Trade Secrets or Other Proprietary Information.**

**1.     Neither the Government nor Its Declarant Establishes Specific Material that Requires AEO Treatment.**

Neither of the government's motions carries its burden to show with specificity that the materials it has designated AEO merit such protection. With respect to Tranche A only, the government has submitted a chart containing only conclusory, boilerplate descriptions of each document that purportedly justifies the AEO designation. *See* Mot. Ex. A. The government never identifies the author of that chart or provide any other information that would be necessary to authenticate it. Insufficient as that effort may be, the government does not even attempt a document-by-document justification for the more than 41,000 documents comprising Tranche B; instead, the government offers only boilerplate confidentiality concerns—that the Tranche B documents purportedly "contain Company 1's highly confidential trade secret and proprietary information." Suppl. Mot. 3. The government does not put forth any particularized reason or point to any single document, page, or phrase in either tranche of materials that presents this type of heightened confidentiality concerns. These attempts to manufacture broad-brush confidentiality concerns fall far short of showing good cause to designate thousands of documents as AEO. *Smith*, 985 F. Supp. 2d at 523.

The government purports to carry its burden by submitting two declarations from a Company 1 employee. *See* Mot. Ex. B; Suppl. Mot. Ex. A. However, the declarant admits that he reviewed only an unidentified "sampling" of the disputed documents. *See* Mot. Ex. B ¶ 7; Suppl. Mot., Ex. A ¶ 8. He does not explain how those documents were selected, how many or which documents he reviewed, whether the documents were from both tranches of materials, or even who created the sample. Such a "sampling" methodology cannot carry the government's burden. But even if the declarant had reviewed the entire set of materials, his representations reveal two additional flaws. First, his explanations are entirely conclusory. He does not identify

---

[8] The government also cites *United States v. Aleynikov*, but that case only contains a general and, for present purposes, irrelevant description of the statutory purpose behind the federal trade secret theft statute. *See* 737 F. Supp. 2d 173, 178 (S.D.N.Y. 2010). It had nothing to do with restricting a defendant's access to discovery, let alone discovery that Rule 16 specifically contemplates the defendant is entitled to access.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 10

a single document that contains trade secrets that remains proprietary and sensitive to this date. These are precisely the types of "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" that "do not support a good cause showing." *Smith*, 985 F. Supp. 2d at 523 (citation omitted). Second, the declarant concedes that some of the Company 1 Subject Materials may not even contain trade secrets. *See* Mot., Ex. B ¶ 7 (stating that the Company 1 Subject Materials "contain, *at least in part*, trade secret information" (emphasis added)); Suppl. Mot., Ex. A ¶ 8 (same). This admission is fatal to the government's motion. Rule 16(d) requires the government to demonstrate that disclosure of these materials "*will* result in a clearly defined, specific, and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (emphasis added) (citation omitted); *see also United States v. Gangi*, 1998 WL 226196, at *2 (S.D.N.Y. May 4, 1998) (requiring "a particular factual demonstration of potential harm, not on conclusory statements" (citation omitted)). The government cannot meet its burden by presenting vague, conclusory assertions that the *some of* the Subject Materials *may* contain trade secrets.

The government and its declarant also make the conclusory assertion that this ancient technology remains a trade secret because Company 1's "'technology in use today is derived from, and in fact, may be the same as, the technology' contained within the Subject Materials.'" Mot. 7 (quoting Mot. Ex. B ¶ 7); *see also* Suppl. Mot. Ex. A ¶ 8 (same). But the government never identifies what modern technology is supposedly derived from late-1990s router technology, much less that the specific technology in the Company 1 Subject Materials remains confidential and embodied in an actual device sold or even used today.

      **2.**      **The Government Has Designated as AEO Thousands of Company 1 Subject Materials that Were Facially Never Confidential.**

Defendants' own review of the Company 1 Subject Materials reveals that many of these documents do not contain any trade secret information and are not deserving of any confidentiality at all, much less AEO treatment.[9]

      **a.**      **Tranche A.** The documents comprising Tranche A of the Company 1 Subject Materials are all over twenty-two-years old (some much older) and relate to technologies that are multiple generations out of date. The documents purportedly relate to networking equipment such as routers and switches that Company 1 stopped selling and supporting many years ago, and to source code that Company 1 has publicly disclosed over the course of many years.

Even casual scrutiny of Tranche A shows that the government has not applied anything close to the level of care necessary to justify its re-designation of these documents. For example, many of the documents are publicly available. *See* Nguyen Decl. ¶ 8. There are also a

---

[9] To be clear, Huawei's objection is not limited to the specific, plainly non-confidential documents identified here and with respect to Company 2 below. These examples, rather, demonstrate that neither the government nor Company 1 comes anywhere close to applying the exacting standard for AEO designation.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 11

substantial number of documents that include no substantive information, such as slip sheets for appendices, blank pages, and images of Company 1's logo. *Id.* ¶ 9.

More importantly, even limiting the analysis to the subset of documents that are substantive and not public, these documents relate to Company 1's products that are no longer supported. Nguyen Decl. ¶ 10. Moreover, the Company 1 routing protocol at issue in the case has been freely and repeatedly described by Company 1 in a submission to the Internet Engineering Task Force, in patent applications, in books published by Company 1 engineers dating back to 2000, and other public sources. *See id.* ¶ 18. Despite this, the government claims that thousands of documents relating to this publicly disclosed protocol merit AEO protection.

The subject matter of the documents further belies the government's blanket AEO characterization or its purported confidentiality concerns. For example, the government says some of the Tranche A materials warrant AEO treatment because they contain "engineering and testing information as to [Company 1's] proprietary hardware" and "indicate[] potential security vulnerabilities of [Company 1's] systems." Mot. Ex. A, lines 2–3. These documents, which are from 1998, are in no way sensitive: They describe only (1) the process for getting a particular version of software ready for general release to Company 1's customers and (2) survey results of Company 1's customers who have used that particular version of the software. *See* Nguyen Decl. ¶ 10. Moreover, these documents relate only to the use of the software on routers that Company 1 no longer sells or supports. *Id.* The government claims certain other documents in Tranche A "contain information that reveal potential vulnerabilities and security concerns." Mot. 5; Mot. Ex. A, lines 12–33. These documents are various versions of test plans and test reports for features tested on three routers that Company 1 no longer sells or supports. Nguyen Decl. ¶ 10. Further, Company 1 regularly publishes vulnerabilities of its software and offers free software updates and workarounds to its customers to address them. *Id.* ¶ 11. Neither the government nor its declarant ever explains why the supposed vulnerabilities revealed by these documents (or by the roughly 700 other AEO designations the government justifies with similar, boilerplate language) warrant AEO treatment when Company 1's general approach is to make identified vulnerabilities public. *See also* Mot. 5 (claiming "718 documents" merit AEO protection because they could "reveal potential vulnerabilities and security concerns in Company 1's intellectual property").

      **b.**     **Tranche B.** The materials in Tranche B also relate to decades-old technology that is no longer sold or supported. The government has not supplied a log of the documents or its basis for asserting AEO protection. *Cf.* Mot. Ex. A. The government's declarant copies and pastes his characterization of Tranche A, *see* Suppl. Mot. Ex A ¶ 8 ("The trade secret information in the Subject Materials collectively relates to the source code at issue, which includes but is not limited to information pertaining to Cisco's networking platforms, product design, configurations and networking messaging flow diagrams, which are tied to proprietary algorithms."), but this characterization appears to be incorrect. In truth, these documents appear to be customer-facing documentation for very old technology.

Tranche B can be placed into three categories. First, the government has produced a home page for a "[Company 1] Product Documentation" CD-ROM, which is dated August 3,

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 12

2001; a search page from that same CD-ROM; an explainer for how to launch a multimedia presentation for computers running Windows 95 or other older platforms; and approximately 35,000 images that appear to have been on the documentation CD-ROM. *See* Nguyen Decl. ¶¶ 13–14. The documentation for the CD-ROM contains a customer survey and other indicia that the materials were intended to be customer facing. *Id.* ¶ 14. Second, there are 5,493 pages in Tranche B that appear to be users manuals relating to IOS releases from 1995–97. *Id.* ¶¶ 13, 15. These manuals state that Cisco documentation was available to customers on CD-ROM and the internet. One of the user manuals has already been produced separately to Huawei as SDM. *Id.* ¶ 15, and this appears to be one of the user manuals referenced in the Third Superseding Indictment. *See* S3 Indict. ¶¶ 18–19. Third, there is an errata category of stray documents not relating to the CD-ROM or user manual, but many document in this category of document are similarly not sensitive, such as images of the icons for user functions or customer-facing help pages. Nguyen Decl. ¶ 16.

There does not appear to be actual source code in Tranche B. Nguyen Decl. ¶ 17. Instead, most of these documents appear to be customer-facing documents relating to years-old products.

    **B.**    **The Government Has Failed to Establish that SDM or DM Protections are Insufficient to Protect the Subject Materials**

Because the government has failed to substantiate that anything in the Company 1 Subject Materials merits any degree of confidentiality protection, the Court can deny the government's motions on that basis alone. The Court may also deny the motion for the separate and independent reason that the government has failed to show that whatever vague and unsubstantiated confidentiality interests might exist in these documents cannot be fully protected as SDM or DM. *See* P.O. ¶ 20 (government bears the burden to show that "designation as Sensitive Discovery Material provides insufficient protection").

Based on its initial review of the documents, the government designated Tranche A as SDM (and some as DM), and did not alter its designation in the nearly two years during which the government was aware of the dispute between Huawei and Company 1 over the materials. As detailed above, Company 1 itself even consented to these documents being maintained on network-connected devices and accessible to Huawei's in-house legal department on SDM terms. *Supra* at 5. During that time, none of the government's catastrophized concerns were realized. All that occurred was that Huawei's in-house lawyers were able to assist counsel in the preparation of a defense, while maintaining confidentiality over the materials in accordance with the Protective Order.

The only overarching justification the government offers is that these documents "relate to" source code technology, which is a broad and amorphous term. *E.g.*, Mot. 5, Suppl. Mot. 4. But even accepted as true, *contra supra* at 10–12, this does not explain why SDM restrictions are insufficient. SDM restrictions are specifically and expressly designed to protect "proprietary or sensitive information of a victim," P.O. ¶ 19, and the government has used this designation to

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 13

protect hundreds of thousands of documents containing the intellectual property of alleged victims—including actual source code. *See* Nguyen Decl. ¶ 23.

The government speculates that "[c]ontinued disclosure of Company 1's trade secret and proprietary information to the Defendants risks further misappropriation." Mot. 8. But under the Protective Order, SDM can be shared only with employees of the Defendant who have signed and agreed to be bound by the Protective Order—and even then, only in the physical presence of Defense Counsel or Defense Staff. P.O. ¶¶ 12–14. Neither the government nor Company 1 explains how there could be a credible risk of "further misappropriation" under these circumstances. The government also claims that certain documents could "reveal potential vulnerabilities and security concerns in Company 1's intellectual property," such as "known bugs in Company 1's technology." Mot. 5. As noted above, Company 1 routinely publishes such information broadly so that users can anticipate and address these issues. *See supra* at 11. Further, these "vulnerabilities" and "known bugs" were all identified in the late 1990s or early 2000s, in technology that is no longer sold or supported by Company 1. It defies credulity that Company 1, having identified these vulnerabilities and bugs around the turn of the last century, not only failed to remedy them in the intervening twenty-five years but also perpetuated them into multiple successive generations of technology.

Nor does the government justify the other onerous and unwarranted restrictions on outside counsel's access to AEO materials. Such a designation would require defense counsel to delete the Tranche A materials from its computer system and to maintain them, along with the Tranche B materials, which together comprise over 46,000 documents, only on a standalone, "air gapped" computer. The materials, however, have existed on internet-connected computers for decades, including internet-connected computers of Huawei's and (presumably) Company 1's civil lawyers, and on the internet-based review platforms for this case for almost two years. They also undoubtedly exist on networked computers within Company 1 itself and within the networks of its current counsel, as well as DOJ's own networks. And if that were not enough, many of documents themselves were available on the Internet. Nguyen Decl. ¶¶ 8, 14–15. The government has not offered any reason why such a restriction is necessary for defense counsel only. Not only has the government failed to establish that these restrictions are necessary, for the reasons described below they are unduly onerous on defense counsel and Huawei's ability to prepare for and participate in the defense of this case.

      **C.**      **The Government's Materiality Argument Does Not Justify AEO Treatment**

The government further justifies its designation of these materials as AEO based on a self-serving assurance that "Huawei employees do not need to review" these materials. *See* Mot. 10; Suppl. Mot. 4 (capitalization normalized). This is not a relevant consideration under the Protective Order, and moreover, it is plainly incorrect. The government has produced these materials as Rule 16 discovery, implicitly representing that they are either material to the defense or part of the government's case-in-chief. Fed. R. Crim. P. 16(a)(1)(E). The government cannot have it both ways—it cannot claim these materials satisfy its obligations under Rule 16 to

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 14

"permit *the defendant*" to access these materials, but then prevent the defendant from accessing these materials because the government believes them to be immaterial.

The government argues that the Company 1 Subject Materials cannot be material because Huawei is charged only with conspiracy to steal Company 1's trade secrets, which does not require an actual trade secret. *See* Mot. 10; Suppl. Mot. 5. But the government relies on these materials in the indictment, *see, e.g.*, S3 Indict. ¶¶ 18–19 (referencing the user manual produced within Tranche B); *id.* ¶ 23 (relying on the neutral expert's conclusions), and expressly leaves open the possibility of introducing the Subject Materials in its case-in-chief, *see* Suppl. Mot. 5. Moreover, whether the materials allegedly stolen were in fact trade secrets is of course highly relevant to whether Huawei believed them to be trade secrets. *See, e.g., United States v. Zheng*, 113 F.4th 280, 299 (2d Cir. 2024) (stating that "to find [the defendant] guilty of conspiracy to commit economic espionage, the jury needed to find that [the defendant] believed that the material he was misappropriating were…trade secrets"). To prove the charged conspiracy, the government no doubt intends to argue at trial that that Huawei actually misappropriated trade secrets, *see, e.g.*, S3 Indict. ¶¶ 8, 9, 11 (alleging Defendants actually misappropriated intellectual property). To rebut the charge, the defense is entitled to put on evidence that the material was not a trade secret and was not misappropriated. *Hsu* is not to the contrary, but instead confirms that where purported trade-secret materials are relevant to any aspect of the defense strategy, the documents are subject to disclosure. 155 F.3d at 204–05. Without knowing the government's evidence, and without Huawei being able to speak with non-lawyer witnesses who may be necessary to assess the materials' importance, the potential materiality of the Company 1 Subject Materials to Huawei's defense cannot be excluded.

Finally, the government contends that the designation of the Company 1 Subject Materials cannot be material because they represent "a miniscule fraction" of the total number of documents produced in this case. *See* Mot. 9. This is false. First, as to Company 1, the government has designated 46,979 documents as AEO, out of a total of 168,047 Company 1 documents—representing 28% of all Company 1 discovery. Moreover, the relative percentage of the Company 1 Subject Materials to the whole is not determinative of their significance since each of the six trade secret victims presents unique allegations, unique factual history, and unique defenses. And the government itself establishes their significance by reserving the right to use the materials in support of its own case at trial. Suppl. Mot. 5.

### III. The Court Should Overrule the Government's Designation of 2,048 Company 2 Subject Materials As AEO.

The government's designation of 2,048 Company 2 documents as AEO should be rejected for the same reasons described above, and for additional reasons unique to this set of documents.

The government, remarkably, has not even made its own determination that these documents merit AEO treatment; it has apparently outsourced that determination entirely to Company 2. During a meet and confer, the government confirmed that it had not independently determined the materials included proprietary information or whether the technology embedded

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 15

in Company 2's materials remains proprietary and a trade secret. Nguyen Decl. ¶ 27. Instead, the government based its AEO designation on its understanding that Company 2 has designated these materials "Confidential and Proprietary" under the protective order in Company 2 and Huawei's 2010–11 civil litigation. *Id.*

As detailed above, the factual premise for this designation appears to be mistaken. *See supra* at 7. There is no indication that these documents were ever produced in the civil case. And there was no corresponding designation under that protective order; the "Confidential and Proprietary" stamping instead appears to be an over-used course-of-business designation applied by Company 2 employees, not a confidentiality designation made for purposes of litigation (let alone for purposes of this case). Nguyen Decl. ¶ 25. But even if the government were correct in describing the provenance of these materials, whether Company 2 believed these materials were commercially sensitive 15 years ago is irrelevant. The government, not Company 2, is responsible for ensuring that its Rule 16 obligations are met and the defendants are afforded their constitutional and statutory rights. An AEO designation is appropriate "only upon a good-faith belief *by the government* that designation as Sensitive Discovery Material provides insufficient protection to such materials." P.O. ¶ 20 (emphasis added). By relying on Company 2, the government has failed to discharge its obligations.

In addition, as with the Company 1 Subject Materials, there appears to be no good-faith basis for designating these materials as AEO. The Company 2 Subject Materials are all from 2010 or earlier, with most materials originating from the early 2000s. Nguyen Decl. ¶ 25. The production includes an issued U.S. patent, third party brochures, internal tracking documents relating to patent applications, PowerPoint templates, and images of Company 2's logo. *Id.* ¶ 26. Defense counsel's review of these materials, limited as it is by the onerous AEO restrictions, has not identified any materials that would warrant AEO treatment. *Id.* ¶¶ 25–26.

Finally, and for the same reasons described above, designating these materials as SDM will more than adequately safeguard whatever ongoing confidentiality interests (if any) exist in the Company 2 Subject Materials.

### IV. Confirming the AEO Designation Would Unduly Prejudice Defendants

For several reasons, maintaining the Company 1 and Company 2 Materials as AEO would unduly prejudice Huawei's ability to defend itself and be completely unworkable.

*First,* an AEO restriction would prohibit anyone from the Defendants from seeing the documents so long as the restriction remains in place. Even were the government to retreat to its pre-motion proposal to allow limited access to "in-house counsel who … do not have a dual business role," Ex. 18, this would still be unduly restrictive, as it would remove Huawei's ability to discuss these documents with witnesses and non-lawyers in Huawei's legal department. As the government is aware, Huawei's in-house legal team consists of members who are not lawyers. *See* Mot. Ex. E at 1–2 (interim agreement from Company 1 agreeing to permit access to Huawei's "legal department," not just lawyers). The government's pre-motion proposal would cut off these non-lawyers who are full-time members of the in-house defense team, to say

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 16

nothing of the employees elsewhere in the company with the technical knowhow to explain the importance of these documents to counsel. The inability to discuss the materials with potential witnesses is prejudicial, as the Subject Materials are mostly technical documents that lawyers and legal employees need assistance to fully understand and analyze.

*Second*, the Protective Order's requirement that AEO material be maintained on a stand-alone computer with no connection to the internet would, as a practical matter, prevent even eligible U.S. defense counsel from collaborating together. The defense team consists of lawyers from multiple law firms across different locations throughout the United States. Under the current restrictions, defense counsel is required to make a separate air-gapped device for every attorney who needs to review the materials—a costly, multi-day process given the format of the government's productions. And even once counsel has access to those materials, they can only review the documents in low-quality PDFs reconstituted from individual TIFF images, not in the form they were originally maintained, and cannot benefit from tools within standard document review platforms, such as text searching and document coding. In other words, each attorney would need to review 48,000 documents page by page. The government no doubt is benefitting from these internet-connected tools (as are Company 1 and 2); it is patently unfair to deny the same tools to the defense when there is no showing that the networks of defense counsel are any less secure than those of Company 1, Company 2, or the government.

*Third*, the government has made the remarkable demand that Huawei "purge" attorney-generated work product containing "copy-and-pasted information or lengthy quotations from" Subject Materials 1 during the multi-year period those documents have been available to the defendants themselves. This would be a significant intrusion into the attorney-client relationship and into pure attorney work product, as it would require defense counsel to review many years of its files to identify and remove any materials that were properly created under the originally-applied SDM or DM designations. It is also unnecessary, as SDM restrictions already prohibit the Defendants from reviewing work product with direct quotations outside of the presence of Defense Counsel. *See* P.O. ¶¶ 11–12; *see also* ECF No. 432, at 4.

*Finally*, the government's proposal would substantially prejudice the defendants' ability to prepare an adequate defense at trial. For the Subject Materials initially produced with an AEO designation, the government's position would permit it to spring these materials on the defendants for the first time at trial. *See* Suppl. Mot. 5 ("[E]ven if the government intends to present evidence of the trade secret information at trial …."). It would be manifestly unfair to require the defendants to defend themselves against evidence they have never seen before. Nor is it plausible that these documents are so sensitive that they cannot be reviewed by employees of defendants while in the physical presence of defense counsel, but at the same time not so sensitive as to preclude the government from publishing them in open court.

## **CONCLUSION**

For the foregoing reasons, the government's motions to confirm its designation of 46,889 Company 1 Subject Materials as AEO should be denied, and Huawei's cross-motion to downgrade the Company 2 Subject Materials to SDM should be granted. To the extent this relief

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
May 8, 2025
Page 17

is not summarily granted, Huawei respectfully requests a hearing, at which it intends to cross-examine Company 1's declarant and any declarant who offers testimony with respect to the Company 2 documents.[10]

                            Respectfully submitted,

                            */s/ Douglas A. Axel*

| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| --- | --- | --- |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| JENNER & BLOCK LLP | Ellyce R. Cooper | Jessica I. Rothschild |
| 1099 New York Avenue, NW | Frank R. Volpe | STEPTOE LLP |
| Washington, D.C. 20001 | Melissa Colón-Bosolet | 1114 Avenue of the Americas |
| (202) 639-6048 | Daniel J. Hay | New York, NY 10036 |
| dbitkower@jenner.com | SIDLEY AUSTIN LLP | (212) 506-3900 |
| | 787 7th Avenue | rposcablo@steptoe.com |
| | New York, NY 10019 | |
| | (212) 839-5300 | |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

---

[10] The government has requested to seal exhibits that reveal the identity of Company 1. *See* Mot. 2 n.3; Suppl. Mot. 3 n.5. While Huawei disagrees this is necessary, we request leave to file the Nguyen Declaration and its exhibits under seal, since those materials identify Company 1 under seal. We likewise request leave to seal the portions of the Nguyen declaration and exhibits that identify Company 2 for the same reasons and subject to the same reservation.