UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    - v. -

HUAWEI TECHNOLOGIES CO.,
LTD., *et al.*,

              Defendants.

_____

18 CR 457 (S-3) (AMD)

**REDACTED VERSION
FILED PUBLICLY**

# DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO SUPPRESS

David Bitkower
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ..............................................................................................................................1

I.        The Government Cannot Rely on the Border Search Doctrine. .........................................2

        A.        The Government Has Not Shown that the Searches Occurred at the Border, Rendering Any Alleged Reasonable Suspicion Immaterial. ......................2

        B.        In Any Case, the Government Has Not Demonstrated that the Searching Agents Had Reasonable Suspicion. .......................................................................4

II.       The Government Cannot Rely on Inevitable Discovery. .....................................................7

III.     The Government's Reliance on Good Faith Is Waived and Unfounded. ...........................9

CONCLUSION .........................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Abidor v. Napolitano*, 990 F. Supp. 2d 260 (E.D.N.Y. 2013) ...................................................... 10

*Davis v. United States*, 564 U.S. 229 (2011) ............................................................................... 10

*Malik v. United States Department of Homeland Security*, 78 F.4th 191 (5th Cir. 2023) ........................................................................................................................................ 10

*Reid v. Georgia*, 448 U.S. 438 (1980) ............................................................................................ 5

*United States v. Alisigwe*, No. 22-cr-425, 2023 WL 8275923 (S.D.N.Y. Nov. 30, 2023) .......................................................................................................................................... 4

*United States v. Cabassa*, 62 F.3d 470 (2d Cir. 1995) ................................................................ 7, 8

*United States v. Colon*, 250 F.3d 130 (2d Cir. 2001) ................................................................. 6-7

*United States v. Daskal*, 676 F. Supp. 3d 153 (E.D.N.Y. 2023) ..................................................... 3

*United States v. Delva*, 858 F.3d 135 (2d Cir. 2017) ..................................................................... 3

*United States v. Eng*, 971 F.2d 854 (2d Cir. 1992) ........................................................................ 7

*United States v. Foster*, 634 F.3d 243 (4th Cir. 2011) ................................................................... 5

*United States v Fox*, No. 23-cr-227, 2024 WL 3520767 (E.D.N.Y. July 24, 2024) ....................... 3

*United States v. Freeman*, 735 F.3d 92 (2d Cir. 2013) .......................................................... 4, 5, 6

*United States v. Ganias*, 824 F.3d 199 (2d Cir. 2016) (en banc) ................................................... 3

*United States v. Gavino*, No. 22-cr-136, 2024 WL 85072 (E.D.N.Y. Jan. 7, 2024) ....................... 4

*United States v. Goines*, 604 F. Supp. 2d 533 (E.D.N.Y. 2009) ..................................................... 4

*United States v. Heath*, 455 F.3d 52 (2d Cir. 2006) .................................................................... 8, 9

*United States v. Kamaldoss*, No. 19-cr-543, 2022 WL 1200776 (E.D.N.Y. Apr. 22, 2022) .......................................................................................................................................... 4

*United States v. Kamaldoss*, No. 24-824 (2d Cir.) ...................................................................... 10

*United States v. Kim*, 103 F. Supp. 3d 32 (D.D.C. 2015) .............................................................. 3

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) ..................................................... 3

*United States v. Molina-Isidoro*, 267 F. Supp. 3d 900 (W.D. Tex. 2016) .................................... 10

*United States v. Pimentel*, 810 F.2d 366 (2d Cir. 1987) ................................................................ 7

*United States v. Roberts*, 852 F.2d 671 (2d Cir. 1988) .................................................................. 8

*United States v. Robinson*, No. 23-cr-192, 2025 WL 1359352 (E.D.N.Y. May 9, 2025) ............................................................................................................................................ 6

*United States v. Sandoval*, 29 F.3d 537 (10th Cir. 1994) .............................................................. 5

*United States v. Smith*, 967 F.3d 198 (2d Cir. 2020) .................................................................... 3

*United States v. Smith*, No. 24-1680 (2d Cir.) .............................................................................. 10

*United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000) ................................................................... 5

*United States v. Walden*, No. 24-cr-521, 2025 WL 3154359 (E.D.N.Y. Nov. 12, 2025) ............................................................................................................................................ 4

*United States v. Whitehorn*, 829 F.2d 1225 (2d Cir. 1987) .......................................................... 7

## ARGUMENT

Huawei initially moved to suppress the contents of ▮▮▮ that the government seized from ▮▮▮ in ▮▮▮ because the searches were not conducted pursuant to warrants, and the government had not shown that they were validly searched pursuant to the border search exception. The government's response did not dispute Huawei's analysis. Instead, it contended that the searches were justified by ▮▮▮ consent, notwithstanding that the ▮▮▮ did not belong to him, corporate policy forbade ▮▮▮ from unilaterally consenting to government searches, and ▮▮▮ "consent" was procured through threat of prosecution for personal crimes that had nothing to do with Huawei.

In response to the Court's request for further briefing, the government has now seized upon the border search exception as justification for its warrantless searches, and argues that the inevitable discovery doctrine and good faith exceptions justify the searches as well. To the extent the Court considers these belated arguments, it should reject them.

First, as to the border search exception, the government's latest brief fails at the outset because—for the second time—the government does not establish that it searched the ▮▮▮ at the border. Although it may have *seized* the ▮▮▮ at ▮▮▮, the government pointedly does not contend that it carried out the relevant *searches* at a time and place close to those seizures. It is established law that the government cannot collect electronic devices at the border and then warehouse them for subsequent warrantless searches. In any event, the government cannot establish reasonable suspicion to justify forensic border searches. The government's supplemental brief rests primarily on the fact that the government was *investigating* Huawei without setting forth any articulable and suspicious *facts* learned during its investigation—and in any event wholly fails to establish that anyone involved in the searches knew any such facts.

1

The government's inevitable discovery argument is likewise without merit. The government argues that in theory it *could* have obtained a subsequent warrant or subpoena for the evidence it now seeks to introduce. But the doctrine is called "inevitable discovery" rather than "theoretical discovery" for a reason. The government must show that it had probable cause to justify a warrant, yet here it has not even succeeded in demonstrating that it had reasonable suspicion. And it may rely on inevitable discovery only when it had a warrant in hand or was imminently obtaining one at the time of the search(es), which was not the case here. Otherwise the government could always say that it was theoretically capable of getting a warrant after a warrantless search, which would make a nullity of the warrant requirement. The government's theoretical subpoena argument is unavailing because it is subject to the same contingencies that render its theoretical warrant theory unavailing. And the theoretical subpoena theory would have even broader consequences if granted, because it would endorse warrantless invasions of privacy even *without* probable cause.

Finally, the government for the first time argues that the searches were justified by good faith reliance on then-unsettled law. But there is no doctrine of good faith reliance on then-unsettled law, and in any event this meritless argument was waived in the government's initial motion response and not invited by the Court for the supplemental response.

The government had good reason not to make any of these arguments in its initial motion response, and the Court should not credit them now. Instead, the Court should grant Huawei's motion to suppress.

**I.    The Government Cannot Rely on the Border Search Doctrine.**

> **A. The Government Has Not Shown that the Searches Occurred at the Border, Rendering Any Alleged Reasonable Suspicion Immaterial.**

When the government conducts a warrantless search, it "has the burden of showing that

2

the search was lawful because it fell within one of the exceptions to the warrant requirement." *United States v. Delva*, 858 F.3d 135, 148 (2d Cir. 2017). The government therefore bears the burden of proving that the border search exception applies. To meet that burden, the government must show not only that it *seized* the devices at the border (which is undisputed) but also that it *searched* the devices in proximity to the relevant border crossings.

As Huawei explained in its motion to suppress, courts consistently hold that if a search is too geographically or temporally distant from the border crossing, the border search exception ceases to apply. ECF No. 541 at 6–7; *see United States v Fox*, No. 23-cr-227, 2024 WL 3520767, at *9–10, *17 (E.D.N.Y. July 24, 2024) (suppressing evidence and rejecting government's "attempt[] to use the border-search exception to shirk the warrant requirement" where the search occurred "not . . . until days" after entry and "over one thousand miles" from the border); *United States v. Kim*, 103 F. Supp. 3d 32, 59 (D.D.C. 2015) (suppressing evidence and rejecting application of the exception where a warrantless laptop search was conducted the day after the defendant left the airport and 150 miles from the border, because the search was "so disconnected from . . . the border itself"). The reason for those geographic and temporal limitations is straightforward: the border search exception exists because the government has a compelling interest in protecting the integrity of its borders. But the government may *not* seize private property and then warehouse it for subsequent opportunistic exploitation without a warrant.[1]

Huawei made that point on page one of its motion, and the government chose not to argue

---

[1] *See, e.g.*, *United States v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) (month-long delay in seeking warrant to search tablet seized from defendant's vehicle "well exceed[ed] what is ordinarily reasonable"); *United States v. Ganias*, 824 F.3d 199, 217–18, 225 (2d Cir. 2016) (en banc) (upholding subsequent search only based on good-faith reliance on warrant); *United States v. Daskal*, 676 F. Supp. 3d 153, 184 (E.D.N.Y. 2023) ("There can be no reasonably timely review where authorities hold electronics for years without even beginning to look at the ESI stored therein."); *United States v. Metter*, 860 F. Supp. 2d 205, 212 (E.D.N.Y. 2012) (15-month delay in reviewing imaged electronic data seized pursuant to warrant unreasonable).

3

that the searches were justified by the border search exception. Given a second opportunity, the government does so now—but has still failed to produce evidence that the devices were searched in geographic and temporal proximity to the border. Indeed, the government does not even make such a *claim*. By contrast, in every other case in this Circuit in which the court upheld a border search of electronic devices, the record established that the search occurred at the border.[2] Because even in its second round of briefing the government has not satisfied its burden of demonstrating that the border search exception applies, the Court should grant the motion to suppress.

### B. In Any Case, the Government Has Not Demonstrated that the Searching Agents Had Reasonable Suspicion.

Even if the government had established that it searched the devices at the border, it has also failed to meet its burden to demonstrate reasonable suspicion.[3] *See United States v. Goines*, 604 F. Supp. 2d 533, 539 (E.D.N.Y. 2009) (government bears the burden to establish reasonable suspicion by a preponderance of the evidence). Reasonable suspicion requires "specific and articulable facts" that give rise to a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Freeman*, 735 F.3d 92, 96 (2d Cir. 2013) (quotation marks omitted).

The government's brief relies on three bases to establish reasonable suspicion.[4] First, the government argues that at the time of the searches it was investigating Huawei's business activities

---

[2] *See, e.g., United States v. Alisigwe*, No. 22-cr-425, 2023 WL 8275923, at *1–2, *6 (S.D.N.Y. Nov. 30, 2023) (no dispute that law enforcement "searched [defendant's] cell phone manually [at the airport] (without deploying forensic tools) and then returned [it]"); *United States v. Gavino*, No. 22-cr-136, 2024 WL 85072, at *3, *6 (E.D.N.Y. Jan. 7, 2024) (officers conducted a manual cellphone search at the airport, then obtained a warrant to conduct a subsequent forensic search based on the results of the manual search); *United States v. Walden*, No. 24-cr-521, 2025 WL 3154359, at *3 (E.D.N.Y. Nov. 12, 2025) (same); *United States v. Kamaldoss*, No. 19-cr-543, 2022 WL 1200776, at *3, *5, *11, *17 n.17 (E.D.N.Y. Apr. 22, 2022) (electronic devices searched at airport; warrant for subsequent forensic searches obtained approximately one month later).

[3] As Huawei argued in its motion to suppress, the border search exception should not be read to permit forensic searches of electronic devices without a warrant. *See* ECF No. 541 at 8–9. Huawei incorporates that argument by reference and addresses reasonable suspicion in light of the Court's December 5, 2025 Order.

[4] The government only attempts to articulate reasonable suspicion to justify its searches of the devices seized from ▆▆▆ in ▆▆▆. It thus cannot rely on reasonable suspicion to justify its search of ▆▆▆ seized from ▆▆▆ in ▆▆▆, which it has addressed with the Court only *ex parte*. *See* ECF No. 561-2.

4

in Iran, as evidenced by prior subpoenas and its agents' questions to ▮. Supp. Br. at 3–4. But it should go without saying that the government cannot open an investigation of a person, and then use the existence of the investigation as factual predication for a search. *United States v. Foster*, 634 F.3d 243, 247 (4th Cir. 2011) ("[A] person's Fourth Amendment rights cannot be lessened simply because he or she is 'under investigation[.]'"). For the same reason, the government cannot rely on unidentified "facts developed during these investigations," Supp. Br. at 4, as a basis for the searches, *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994) (similar) (collecting cases). Rather, the facts must be "specific and articulable." *Freeman*, 735 F.3d at 96.

Second, the government notes that a search of ▮ earlier revealed "dozens of files related to Huawei projects with telecommunications providers in Iran." Supp. Br. at 4.[5] But business in Iran is neither unlawful nor uncommon for foreign corporations like Huawei. The government never articulates *why* the existence of Huawei's business in Iran supported an inference of criminal conduct here. That omission is fatal. Courts have long rejected attempts to manufacture reasonable suspicion from conduct that is lawful on its face and untethered to any articulated theory of illegality. In *Reid v. Georgia*, for example, the Supreme Court held that reasonable suspicion cannot rest on a description of factors that, taken together, sweep in a "very large category of presumably innocent" actors. 448 U.S. 438, 441 (1980). Consistent with that principle, the Second Circuit has required the government to articulate "a particularized and objective basis" for concluding that lawful conduct is indicative of wrongdoing. *Freeman*, 735 F.3d at 96. And where the government fails to do so—where, as in *United States v. Ubiles*, "[f]or all the officers knew," the conduct at issue was lawful—reasonable suspicion is lacking. 224 F.3d 213, 218 (3d Cir. 2000) (no reasonable suspicion that defendant unlawfully possessed a firearm

---

[5] The government's reliance even on these documents depends on the Court upholding the 2013 search, which Huawei has challenged. *See* ECF at No. 541 at 3, 5–9.

5

based on a tip that he was carrying one, which was permitted under local law).

Finally, the government cites news articles published between 2011 and 2013—*seven to five years before the searches at issue*—reporting allegations that Skycom had sought to sell embargoed technology to an Iranian company. Supp. Br. at 4–5.[6] But years-old news reports, absent evidence of recent corroboration, do not support reasonable suspicion. *See, e.g.*, *United States v. Robinson*, No. 23-cr-192, 2025 WL 1359352, at *10 (E.D.N.Y. May 9, 2025) (three-year-old report linking defendant to child pornography was too stale to show reasonable suspicion that defendant possessed child pornography at time of search). If they did, then mere publication of an allegation would provide the government with carte blanche to search a person—or, in the organizational context, any employee—without any corroboration and for years to come. Unsurprisingly, the government cites no case law to support that expansive proposition.

Even putting all of that aside, the government's theory has yet another fatal flaw: It provides no evidence—or even *claim*—that anyone involved in these searches knew about the Iran-related computer files and years-old media reports. The government's brief speaks only in generalities, invoking "the government's then-ongoing inquiries" and unspecified "facts developed during those investigations." Supp. Br. at 4. But reasonable suspicion cannot be established by aggregating all information that may have existed somewhere within the Department of Justice. The Fourth Amendment inquiry is officer-specific and contemporaneous; it turns on what the *searching officers* knew *when they acted*. *See Freeman*, 735 F.3d at 96. Applying this principle, federal courts have repeatedly rejected efforts to impute uncommunicated information to officers on the ground. *See, e.g.*, *United States v. Colon*, 250 F.3d 130, 135–36 (2d

---

[6] Rather than cite specific news articles, the government's brief cites the Indictment, making it difficult to discern which news reporting the government views as relevant to the reasonable suspicion inquiry—and impossible to substantiate that the searching agents were aware of that reporting.

6

Cir. 2001) (refusing to uphold a search based on details known to a 911 operator but never conveyed to the officers who conducted the search). As with its other factual burdens, the government could have submitted a declaration but chose not to do so. The government has therefore failed to meet its burden of proof that the agents had reasonable suspicion to search the devices.

## II.    The Government Cannot Rely on Inevitable Discovery.

The government claims that it could hypothetically have sought a warrant or subpoena that would have allowed it to search the devices. Supp. Br. at 5–7. Under Second Circuit precedent, that speculative assertion is categorically insufficient to establish inevitable discovery.

The inevitable discovery doctrine does not rest on the government's "mere intention to use legal means subsequently." *United States v. Eng*, 971 F.2d 854, 861 (2d Cir. 1992) (citation omitted). Rather, the government must show that lawful means of obtaining the evidence were already "in existence" and "at least to some degree, imminent" at the time of the unlawful searches. *Id.* The Second Circuit has therefore applied the doctrine only in narrow circumstances where the lawful acquisition of evidence was already underway and effectively assured—for example, where a warrant application was being prepared based on independent probable cause and was ultimately granted; or where an ongoing audit or inventory search was certain to occur.[7]

Conversely, the Second Circuit has declined to apply the doctrine where lawful discovery depended on unresolved contingencies—even where the government's showing was far stronger than it is here. In *United States v. Cabassa*, for example, the government was *actively applying*

---

[7] *See, e.g.*, *United States v. Whitehorn*, 829 F.2d 1225, 1231 (2d Cir. 1987) (discovery inevitable where agents began preparing warrant application for apartment hours before the unlawful entry, agents possessed "overwhelming probable cause" independent of the illegal search, and a warrant was in fact issued); *United States v. Pimentel*, 810 F.2d 366, 367–69 (2d Cir. 1987) (discovery of letters from subcontractor to contractor inevitable because "ongoing" audit and search of contractor's files "surely" would have uncovered them).

7

for a warrant at the time of the unlawful search. 62 F.3d 470, 473–74 (2d Cir. 1995). Yet the court refused to apply the inevitable discovery doctrine because the application was incomplete, the timing uncertain, and there remained a "residual possibility" that the warrant would not have issued. *Id.* Likewise in *United States v. Heath*, the court refused to apply the inevitable discovery doctrine, even though the government presumptively had probable cause to arrest, because it remained "possible" that the arrest would not occur. 455 F.3d 52, 62 (2d Cir. 2006).

Measured against this standard, the government's showing falls far short. First, as noted above, the government has not even demonstrated reasonable suspicion to search, let alone probable cause. Second, the government offers no basis to conclude that it would have developed probable cause and sought a warrant. Rather, the government simply speculates that if the agents had not unlawfully searched the devices, they "*would have* simply obtained either a grand jury subpoena . . . or a warrant." Supp. Br. at 6 (emphasis added). But this is precisely the sort of post-hoc speculation that the Second Circuit has repeatedly rejected. This is not a case like *Whitehorn*, where agents had already begun preparing a warrant application before the unlawful search and a warrant issued shortly thereafter. Nor is it even like *Cabassa*, where agents were actively applying for a warrant but discovery was still not inevitable. The government points to no steps toward a warrant application at all. A warrant was thus not "inevitable"—doubly so because the government has once again failed to supply any evidentiary support for its factual assertions.

The government's hypothetical subpoena theory fares no better. The government again does not show—or even contend—that a subpoena had been requested or was being contemplated. Moreover, even the issuance of a subpoena does not "inevitably result[] in the discovery" of the materials sought. *United States v. Roberts*, 852 F.2d 671, 676 (2d Cir. 1988). A subpoena may be negotiated, limited or quashed, or may not yield the desired documents. *Id.* Here, the government

8

provides no indication of what the hypothetical subpoena would have demanded or when it would have issued, making it impossible to assess what objections Huawei would have raised, whether those objections would have succeeded, what documents would have been produced, or how long the process would have taken—in other words, whether the discovery was inevitable.

These uncertainties are dispositive. As the government itself acknowledges, Supp. Br. at 5, inevitable discovery requires a "high level of confidence" that "each of the contingencies" necessary for lawful discovery would have been resolved in the government's favor. *Heath*, 455 F.3d at 60. Conjectural warrants and hypothetical subpoenas—untethered to concrete facts and dependent on imaginary investigative steps and unknown judicial rulings—cannot satisfy that standard. More fundamentally, accepting the government's theory would, as with the government's other maximalist theories, invite sweeping consequences. It would permit the government to bypass the warrant requirement whenever probable cause exists, confident that it could later defend an unlawful search by asserting without evidence that it *would have* sought a warrant if necessary. And its subpoena theory is more sweeping yet, permitting the government license to invade private property as long as it can later claim that the illegally seized evidence was *relevant to an investigation*. The Court should not endorse either theory.

### III. The Government's Reliance on Good Faith Is Waived and Unfounded.

As a threshold matter, the government's belated invocation of the good faith exception is procedurally improper and should be deemed waived. Huawei's motion to suppress squarely presented the border search issue, *see* ECF No. 541 at 1, 5–9, and the government thus had the opportunity to invoke the good faith exception in its original response but chose not to do so. Nor did the Court's December 5, 2025 Order invite supplemental briefing on good faith.

9

In any event, the government's good faith argument fails on the merits.[8] The exception applies only where law enforcement acts in objectively reasonable reliance on binding appellate precedent that "specifically authorize[d the] particular police practice" at issue. *Davis v. United States*, 564 U.S. 229, 241 (2011). Here, the government points to no precedent that "specifically authorize[d]" the searches. *Id*. It instead invokes "simply the well-established principle" that the government possesses broad search authority at the border. Supp. Br. at 8.

As of 2018, the law in both the Second and Fifth Circuits was unsettled on the applicable standard for border searches of electronic devices. *See, e.g.*, *Abidor v. Napolitano*, 990 F. Supp. 2d 260, 281 (E.D.N.Y. 2013) ("The Second Circuit has not addressed the issue of border searches of electronic devices."); *United States v. Molina-Isidoro*, 267 F. Supp. 3d 900, 907 (W.D. Tex. 2016) ("[T]here is no Fifth Circuit precedent regarding border searches of technology[.]").

Indeed, even today, neither Circuit has resolved whether forensic searches of electronic devices require reasonable suspicion (or more). The Fifth Circuit recently reserved the issue, *see Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 201 (5th Cir. 2023), and the issue is pending in two Second Circuit cases, *see United States v. Smith*, No. 24-1680 (2d Cir.) (addressing constitutionality of warrantless border search of electronic devices); *United States v. Kamaldoss*, No. 24-824 (2d Cir.) (addressing remote forensic searches of electronic devices seized at border).[9] That unresolved legal landscape is an inadequate basis for applying the good faith exception.

## CONCLUSION

For the foregoing reasons, the Court should grant Huawei's Motion to Suppress.

---

[8] The good faith argument is also irrelevant because the government has failed to establish that the devices were searched in proximity to the border. *See* Part I above.

[9] *See* December 5, 2025 Order (directing parties to "discuss *United States v. Smith*, No. 24-1680 (2d Cir)").

10

Respectfully submitted,

/s/ David Bitkower

| | | |
|---|---|---|
| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| JENNER & BLOCK LLP | Ellyce R. Cooper | William L. Drake |
| 1099 New York Avenue, NW | Frank R. Volpe | Jessica I. Rothschild |
| Washington, D.C. 20001 | Melissa Colón-Bosolet | STEPTOE LLP |
| (202) 639-6048 | Daniel J. Hay | 1114 Avenue of the Americas |
| dbitkower@jenner.com | SIDLEY AUSTIN LLP | New York, NY 10036 |
| | 787 7th Avenue | (212) 506-3900 |
| | New York, NY 10019 | rposcablo@steptoe.com |
| | (212) 839-5300 | |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co. Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*