UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD, *et al.*,<br><br>Defendants. | 18 CR 457 (S-3) (AMD) (JAM)<br><br>██████████████████<br>██████████████ |

**DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S RESPONSE TO THE GOVERNMENT'S MOTIONS IN LIMINE TO ADMIT CERTAIN EVIDENCE AND PRECLUDE CERTAIN EVIDENCE AT TRIAL**

David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

**TABLE OF CONTENTS**

I.      The Government's Motion to Exclude China Initiative and Selective Prosecution Evidence Should Be Denied as Moot ................................................................... 3

II.     The Government's Categorical Request Regarding the Propriety of Property Seizures Should Be Denied as Overbroad................................................................................ 4

III.    The Government's Motion to Categorically Preclude Evidence Regarding the Civil Cases Underlying the Trade-Secrets Charges Is Overbroad and Premature. .............................. 5

        A.      Jury Verdicts................................................................................................ 6

        B.      Court Orders and Settlement Agreements.................................................... 6

        C.      Joint Statements .......................................................................................... 8

        D.      Fact That the Civil Litigations Have Been Resolved................................... 9

IV.     The Court Should Deny as Moot the Government's Motion to Preclude Certain "Industry Practice" Evidence. ........................................................................................................ 10

V.      The Court Should Deny the Government's Motion to Preclude Evidence of Negligence and Financial Loss. .......................................................................................................... 10

VI.     The Court Should Not Preclude Evidence, Argument, or Questioning Regarding the Defendants' Non-Use of, or the Absence of Economic Benefit Arising From, Allegedly Misappropriated Trade Secrets ........................................................................... 14

VII.    The Court Should Deny the Government's Motion to Exclude Evidence of Huawei's Prior Commission of Good Acts or Non-Commission of Other Bad Acts....................... 16

VIII.   The Government Has Not Identified the Information and Evidence That It Wishes to Seal or Otherwise Withhold From the Public ....................................................................... 19

        A.      Applicable Law ............................................................................................ 19

        B.      Discussion .................................................................................................... 21

IX.     The Court Should Deny the Government's Motion to Preclude Evidence of the Huawei-███ History........................................................................................................ 22

X.      The Court Should Deny the Government's Motion to Exclude ███████'s Response to the Unsealing of the Indictment in This Case ............................................................ 23

XI.     The Court Should Prohibit the Government From Eliciting Testimony Through Hypothetical Questions Exceeding the Bounds of *Cuti*.................................................. 26

XII.    The Court Should Exclude Evidence of Statements in *Light Reading* and *Reuters* Articles .......................................................................................................................... 29

        A.      The Statements in the *Light Reading* Articles are Inadmissible Hearsay Within Hearsay. ....................................................................................................... 30

B.      The Government Has Not Established That the *Light Reading* and *Reuters* Articles Are Admissible as Recorded Recollections or Under the Residual Hearsay Exception. ........................................................................................ 32

1.      The Articles Are Not Recorded Recollections ........................................ 32

2.      The Articles Are Not Admissible Under the Residual Exception. ............ 34

XIII.   The ▌▌▌ and ▌▌▌ Documents Are Not Recorded Recollections and Should Be Excluded as Hearsay ........................................................................................ 36

A.      Rule 803(5) Does Not Provide the Requested Relief ......................................... 36

B.      The Government Has Not Laid the Necessary Foundation to Satisfy Rule 803(5) ........................................................................................................ 37

1.      The ▌▌▌ Email ............................................................................... 37

2.      The ▌▌▌ Letter ............................................................................... 38

XIV.    The Court Should Deny the Government's Motion to Admit Futurewei's Payment of Professor ▌▌'s Attorneys' Fees ..................................................................... 39

A.      Factual Background ........................................................................................... 40

B.      Argument ........................................................................................................... 42

XV.     The Court Should Deny as Moot the Government's Motion to Exclude Evidence of a 2004 Cyber Intrusion of ▌▌ ......................................................................... 44

XVI.    The Court Should Deny the Government's Motion to Admit Evidence of ▌▌▌▌'s Destruction of Evidence .............................................................................................. 44

XVII.   The Court Should Not Preclude the Defense From Arguing That Admitted Evidence Is Inconsistent With Criminal Intent .......................................................................... 47

XVIII.  The Court Should Not Permit Evidence of Huawei Tech's Purported Misrepresentations About the Reasons for Its Commercial Separation From ▌▌▌ ................................. 49

A.      The 2017 ▌▌▌ Termination Evidence Is Not Evidence of the RICO Conspiracy Count ................................................................................................. 49

B.      The 2017 ▌▌▌ Termination Evidence Is Not Proper Rule 404(b) Evidence ..... 52

XIX.    The Court Should Deny the Government's Request to Use Aliases and Limit Cross-Examination and Deny the Government's Request to Admit Hearsay Testimony .......... 54

XX.     The Court Should Deny the Government's Unnecessary and Overbroad Motion to Preclude Evidence, Argument, or Questioning About Classified Information Outside the Scope of CIPA ......................................................................................................... 54

XXI.    The Court Should Deny the Government's Motion "to Preclude Evidence, Argument, or Questioning Inconsistent With Facts Known to Defense Counsel, Including Facts Made Known in Unclassified Discovery" as Unnecessary and Improper. ................................ 56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Homecare Fed'n, Inc. v. Paragon Sci. Corp.*,
27 F. Supp. 2d 109 (D. Conn. 1998)................................................................30

*Becker v. ARCO Chem. Co.*,
207 F.3d 176 (3d Cir. 2000)...........................................................................52

*Bond v. Bd. of Cnty. Comm'rs*,
No. 20-7067, 2023 WL 3589081 (10th Cir. May 23, 2023)..........................9

*Bowen v. Maynard*,
799 F.2d 593 (10th Cir. 1986) .......................................................................55

*Cain v. Trans World Airlines*,
549 F. Supp. 963 (S.D.N.Y. 1982) (Sand, J.) ...............................................29

*Croskey v. BMW of N. Am., Inc.*,
532 F.3d 511 (6th Cir. 2008) ...........................................................................7

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*,
760 F.3d 427 (5th Cir. 2014) .........................................................................41

*Donlon v. City of New York*,
No. 25-cv-5831 (DLC), 2026 WL 456892 (S.D.N.Y. Feb. 18, 2026).........18

*EEOC v. Karenkim, Inc.*,
No. 08-cv-1019, 2011 WL 13352967 (N.D.N.Y. Jan. 10, 2011) ...................7

*Fields v. Bayerische Motoren Werke Aktiengesellschaft*,
594 F. Supp. 3d 530 (E.D.N.Y. 2022) ...........................................................56

*Franchitti v. Cognizant Tech. Sols. Corp.*,
No. 21-cv-2174 (JMF), 2026 WL 504598 (S.D.N.Y. Feb. 24, 2026) .....52, 53

*Globe Newspaper Co. v. Super. Ct.*,
457 U.S. 596 (1982).......................................................................................19

*Grunewald v. United States*,
353 U.S. 391 (1957).......................................................................................46

*Huddleston v. United States,*
    485 U.S. 681 (1988)................................................................................................53

*Hynes v. Coughlin,*
    79 F.3d 285 (2d Cir. 1996)....................................................................................39

*In re Fischer,*
    259 B.R. 23 (Bankr. E.D.N.Y. 2001), *aff'd in part, rev'd in part*, No. 01-cv-
    2717, 2001 WL 1923359 (E.D.N.Y. Aug. 21, 2001)......................................33, 38

*In re Gen. Motors LLC Ignition Switch Litig.,*
    No. 14-md-2543 (JMF), 2015 WL 9165341 (S.D.N.Y. Dec. 16, 2015)....................8

*In re Grand Jury Subpoena,*
    781 F.2d 238 (2d Cir. 1986)..................................................................................42

*In re Shargel,*
    742 F.2d 61 (2d Cir. 1984)....................................................................................43

*Jacobson v. Deutsche Bank, A.G.,*
    206 F. Supp. 2d 590 (S.D.N.Y.2002), *aff'd*, 59 F. App'x 430 (2d Cir. 2003)........33

*Kellner v. City of New York,*
    No. 17-cv-1268 (NRM) (MMH), 2025 WL 3507346 (E.D.N.Y. Dec. 8, 2025) ...............34, 38

*Kimzey v. Diversified Servs., Inc.,*
    No. 6:15-cv-01369, 2017 WL 131614 (D. Kan. Jan. 13, 2017) ..............................56

*Kousisis v. United States,*
    605 U.S. 114 (2025)........................................................................................13, 14

*Kyles v. Whitley,*
    514 U.S. 419 (1995)..........................................................................................3, 55

*Level 3 Commc'ns v. Limelight Networks, Inc.,*
    611 F. Supp. 2d 572 (E.D. Va. 2009) ....................................................................20

*Lugosch v. Pyramid Co. of Onondaga,*
    435 F.3d 110 (2d Cir. 2006)..................................................................................20

*Magnoni v. Smith & Laquercia,*
    483 F. App'x 613 (2d Cir. 2012) ...........................................................................37

*Mandal v. City of New York,*
    No. 02-cv-1234 (WHP), 2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ...............30, 31, 34

*Manko v. United States,*
    63 F. App'x 570 (2d Cir. 2003) .......................................................................................8

*McAuliffe v. United States,*
    514 F. App'x 542 (6th Cir. 2013) ...................................................................................7

*Mendez v. Artuz,*
    303 F.3d 411 (2d Cir. 2002)............................................................................................3

███████████████████████████

*Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.,*
    937 F. Supp. 276 (S.D.N.Y. 1996) ...............................................................................56

*Neder v. United States,*
    527 U.S. 1 (1999)...........................................................................................................23

*Old Chief v. United States,*
    519 U.S. 172 (1997).......................................................................................................51

*Pablo Star Ltd. v. Welsh Gov't,*
    170 F. Supp. 3d 597 (S.D.N.Y. 2016)...........................................................................30

*Parker v. Reda,*
    327 F.3d 211, 215 (2d Cir. 2003)..................................................................................39

*Parsons v. Honeywell, Inc.,*
    929 F.2d 901 (2d Cir. 1991)..........................................................................................34

*Press-Enterprise Co. v. Super. Ct.,*
    478 U.S. 1 (1986)...........................................................................................................20

*U.S. Football League v. Nat'l Football League,*
    No. 84-cv-7484 (PKL), 1986 WL 5803 (S.D.N.Y. May 16, 1986)...............................36

*United States ex rel. American Systems Consulting, Inc. v. ManTech Advanced Systems Int'l,*
    600 F. App'x 969 (6th Cir. 2015) .................................................................................24

*United States v. Abrams,*
    165 F.4th 784 (3d Cir. 2026) ........................................................................................13

*United States v. Akhavan,*
    No. 20-cr-188 (JSR), 2021 WL 2776648 (S.D.N.Y. July 2, 2021) ..........................24, 25

*United States v. Al-Moayad,*
    545 F.3d 139 (2d Cir. 2008)..........................................................................................46

*United States v. Alcantara*,
   396 F.3d 189 (2d Cir. 2005).........................................................................................20

*United States v. Alshahhi*,
   628 F. Supp. 3d 449 (E.D.N.Y. 2022) .........................................................................55

*United States v. Balboa*,
   No. 12-cr-196 (PAC), 2013 WL 6196606 (S.D.N.Y. Nov. 27, 2013)...........................17

*United States v. Basciano*,
   No. 03-cr-929 (NGG), 2006 WL 385325 (E.D.N.Y. Feb. 17, 2006)........................52, 53

*United States v. Bautista*,
   252 F.3d 141 (2d Cir. 2001).........................................................................................54

*United States v. Calderon*,
   944 F.3d 72 (2d Cir. 2019)...........................................................................................23

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000)...........................................................................................51

*United States v. Castillero*,
   No. 23-cr-622 (JMF), 2025 WL 2773860 (S.D.N.Y. Sept. 29, 2025).........................10

*United States v. Cedeño*,
   644 F.3d 79 (2d Cir. 2011).............................................................................................4

*United States v. Chang*,
   No. 18-cr-681 (NGG) (CLP), 2024 WL 3303717 (E.D.N.Y. July 3, 2024)..................28

*United States v. Clanton*,
   No. 23-cr-328 (KAM), 2024 WL 1072050 (E.D.N.Y. Mar. 12, 2024) ...........3, 6, 10, 44

*United States v. Collorafi*,
   876 F.2d 303 (2d Cir. 1989)..........................................................................................18

*United States v. Corsey*,
   723 F.3d 366 (2d Cir. 2013)..........................................................................................25

*United States v. Crumble*,
   No. 18-cr-32 (ARR), 2018 WL 2016852 (E.D.N.Y. May 1, 2018)................................53

*United States v. Cuti*,
   720 F.3d 453 (2d Cir. 2013).........................................................................26, 27, 28, 29

*United States v. Davis*,
   244 F.3d 666 (8th Cir. 2001) ........................................................................................47

vi

*United States v. Devery*,
  935 F. Supp. 393 (S.D.N.Y. 1996) ..........................................................................5

*United States v. Dupree*,
  706 F.3d 131 (2d Cir. 2013).....................................................................................7

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992)...................................................................................46

*United States v. Floyd*,
  555 F.2d 45 (2d Cir. 1977), *abrogated on other grounds by United States v.
  Brutus*, 505 F.3d 80 (2d Cir. 2007)......................................................................46

*United States v. Guo*,
  No. 23-cr-118 (AT), 2024 WL 1862022 (S.D.N.Y. Apr. 29, 2024)........................26

*United States v. Gupta*,
  747 F.3d 111 (2d Cir. 2014)...................................................................................31

*United States v. Han*,
  230 F.3d 560 (2d Cir. 2000)...................................................................................16

*United States v. Hayes*,
  219 F. App'x 114 (3d Cir. 2007) ............................................................................17

*United States v. Heimann*,
  705 F.2d 662 (2d Cir.1983)....................................................................................14

*United States v. Hsu*,
  669 F.3d 112 (2d Cir. 2012)...................................................................................50

*United States v. James*,
  607 F. Supp. 3d 246 (E.D.N.Y. 2022) ...............................................................17, 26

*United States v. Johnson*,
  469 F. Supp. 3d 193 (S.D.N.Y. 2019).......................................................................9

*United States v. Judon*,
  567 F.2d 1289 (5th Cir. 1978) ...............................................................................37

*United States v. Kandic*,
  134 F.4th 92 (2d Cir. 2025) ...................................................................................34

*United States v. Kelly*,
  128 F.4th 387 (2d Cir. 2025) ..................................................................................18

*United States v. Krug*,
  No. 14-cr-102S, 2016 WL 7045937 (W.D.N.Y. Dec. 2, 2016).................................7

*United States v. Langford,*
990 F.2d 65 (2d Cir. 1993)..................................................................................51

*United States v. Litvak,*
808 F.3d 160 (2d Cir. 2015)...................................................................10, 15, 25

*United States v. Litvak,*
889 F.3d 56 (2d Cir. 2018).................................................................................25

*United States v. MacPherson,*
424 F.3d 183 (2d Cir. 2005).........................................................................15, 48

*United States v. Magnano,*
543 F.2d 431 (2d Cir. 1976)...............................................................................31

██████████████████████████
████████████████████████████..................................................................41

██████████████████████████
████████████████████████████..................................................................41

*United States v. Massino,*
319 F. Supp. 2d 295 (E.D.N.Y. 2004) ...............................................................43

*United States v. Mejia,*
948 F. Supp. 2d 311 (S.D.N.Y. 2013).................................................................35

*United States v. Montanez,*
No. 23-cr-186 (NGG), 2024 WL 4582387 (E.D.N.Y. Oct. 25, 2024).................50

*United States v. Morgan,*
385 F.3d 196 (2d Cir. 2004)...............................................................................34

*United States v. Naumovski,*
No. 20-cr-384 (WFK), 2023 WL 5806171 (E.D.N.Y. Sept. 7, 2023) .................50

*United States v. Nosal,*
No. 08-cr-237, 2013 WL 11327121 (N.D. Cal. Mar. 29, 2013).....................19, 21

*United States v. Patel,*
2023 WL 2643815 (D. Conn. Mar. 27, 2023) .....................................................10

*United States v. Peraire-Bueno,*
No. 24-cr-293, 2025 WL 2753560 (S.D.N.Y. Sept. 29, 2025).................26, 27, 28

*United States v. Potamitis,*
739 F.2d 784 (2d Cir. 1984)...............................................................................46

*United States v. Priolo*,
  No. 2:21-cr-566 (NJC), 2025 WL 679413 (E.D.N.Y. Mar. 4, 2005) .....................................46

*United States v. Pugh*,
  162 F. Supp. 3d 97 (E.D.N.Y. 2016) ........................................................................................6

*United States v. Ramirez*,
  No. 15-cr-379 (PKC), 2021 WL 2554442 (S.D.N.Y. June 22, 2021) ....................................31

*United States v. Reifler*,
  446 F.3d 65 (2d Cir. 2006)......................................................................................................11

*United States v. Roberts*,
  No. 08-cr-175, 2010 WL 1010000 (E.D. Tenn. Mar. 17, 2010)..............................................22

*United States v. Roldan*,
  --- F.4th ---, 2026 WL 452027 (2d Cir. Feb. 18, 2026) ....................................................15, 48

*United States v. Rommy*,
  506 F.3d 108 (2d Cir. 2007).............................................................................................32, 38

*United States v. Russo*,
  110 F.3d 948 (2d Cir. 1997) (Sotomayor, J.)..........................................................................29

*United States v. Russo*,
  302 F.3d 37 (2d Cir. 2002)......................................................................................................31

*United States v. Sabhnani*,
  599 F.3d 215 (2d Cir. 2010)..............................................................................................15, 48

*United States v. Sager*,
  227 F.3d 1138 (9th Cir. 2000) ..................................................................................................3

*United States v. Scott*,
  450 F.3d 863 (9th Cir. 2006) ..................................................................................................41

*United States v. Simmons*,
  923 F.2d 934 (2d Cir. 1991).....................................................................................................42

*United States v. Sing*,
  No. 14-cr-212, 2016 WL 54906 (C.D. Cal. Jan. 4, 2016)..................................................15, 16

*United States v. Stone*,
  No. 05-cr-401 (ILG), 2007 WL 4410054 (E.D.N.Y. Dec. 14, 2007) .......................................5

*United States v. Uvino*,
  590 F. Supp. 2d 372 (E.D.N.Y. 2008), *as amended* (Dec. 19, 2008) ...................................13

*United States v. Valencia,*
  No. 06-cr-80, 2006 WL 3707867 (S.D. Tex. Aug. 25, 2006)..................................................20

*United States v. Wang,*
  No. 98-cr-199 (DAB), 1999 WL 138930 (S.D.N.Y. Mar. 15, 1999) .....................................47

*United States v. Washington,*
  705 F.2d 489 (D.C. Cir. 1983) .................................................................................................5

*United States v. Wassner,*
  141 F.R.D. 399 (S.D.N.Y. 1992) ...........................................................................................46

*United States v. White,*
  692 F.3d 235 (2d Cir. 2012)......................................................................................................4

*United States v. Zabare,*
  871 F.2d 282 (2d Cir. 1989)....................................................................................................31

*United States v. Zuniga,*
  312 F. App'x 653 (5th Cir. 2009) ...........................................................................................42

*Universal Health Servs., Inc. v. United States ex rel. Escobar,*
  579 U.S. 176 (2016).....................................................................................................14, 23, 24

*Waller v. Georgia,*
  467 U.S. 39 (1984)............................................................................................................19, 20

**Statutes**

18 U.S.C. § 1001.....................................................................................................39, 40, 41, 42

18 U.S.C. § 1832...........................................................................................................15, 16, 47, 48

18 U.S.C. § 1962......................................................................................................................16, 47

31 U.S.C. § 3729.........................................................................................................................24

**Other Authorities**

2 Kenneth S. Broun et al., *McCormick On Evid.* § 281 (9th ed. 2020) ........................................38

DOJ Justice Manual § 9-5.100......................................................................................................4

*Enhanced Interior Gateway Routing Protocol*, Internet Engineering Task Force
  (Feb. 18, 2013), https://datatracker.ietf.org/doc/html/draft-savage-eigrp-00 ........................21

Fed. R. Evid. 401 .................................................................................................................11, 47

Fed. R. Evid. 402 .................................................................................................................11, 47

Fed. R. Evid. 403 ................................................................................................ *passim*

Fed. R. Evid. 404 ................................................................................................ *passim*

Fed. R. Evid. 608 ....................................................................................................4, 5

Fed. R. Evid. 801 ..........................................................................................30, 31, 32

Fed. R. Evid. 803 ................................................................................................ *passim*

Fed. R. Evid. 805 ......................................................................................................30

Fed. R. Evid. 806 ......................................................................................................13

Fed. R. Evid. 807 ..........................................................................................31, 32, 34, 35

N.Y. Rules of Professional Conduct Rule 3.8 ..............................................................57

## ARGUMENT

The government's motions in limine are united by a single, overarching goal—preventing Huawei from providing the jury with the information necessary to fairly evaluate the government's charges. In motion after motion, the government seeks to present evidence that it claims supports its own version of events, while preventing Huawei from introducing evidence or confronting government witnesses to allow the jury to assess whether that version is complete or accurate.

The pattern is consistent. The government intends to call senior bank personnel to testify that they were unaware of Huawei's relationship with Skycom, but seeks to prevent Huawei from offering evidence that the *reason* these bankers were unaware is not because Huawei committed fraud but because their own colleagues failed to relay information that Huawei had provided. (Mot. V). The government intends to prompt bank employees with hypothetical questions to elicit claims that they would have terminated their relationship with Huawei had they known certain facts, but seeks to preclude Huawei from proving that what █████████ *actually* did was to continue and expand its relationship with Huawei when those very facts became public. (*Compare* Mot. XI, *with* Mot. X). The government intends to reference the civil litigations underlying its trade-secret charges, including by asserting that █████████████ lied to the FBI by saying that Huawei had "won" one of them, but seeks to bar Huawei from offering evidence about those suits, whether to explain the basis for ██████ statement, to demonstrate Huawei's state of mind in connection with the numerous government allegations related to those suits, or to impeach government witnesses from the alleged victim companies that were involved in those suits. (Mot. III). And the government alleges a decades-long corporate conspiracy rooted in a company-wide business model of trade secret theft, but seeks to prevent Huawei from

1

offering evidence of its legitimate business policies and practices, which negate Huawei's intent to commit the charged crimes and undermine the government's theory of the case. (Mot. VII).

The government's motions similarly seek to protect the government's case by cutting off Huawei's right to confront the government's witnesses on a variety of issues. For example, the government seeks to admit several internet articles as recorded recollections or under the residual hearsay exception, notwithstanding that internet articles are classic double hearsay and the authors and quoted individuals are available to testify and be cross-examined. (Mot. XII). In a similar vein, the government seeks to admit an ██████ banker's email summarizing a meeting with ██████████ and a letter from ██████ 's general counsel describing a trade-show incident she did not witness. (Mot. XIII). The government offers each as a recorded recollection under Rule 803(5), even though both witnesses are expected to testify, the government has not shown that either lacks memory of what they put in their prior statements, and the general counsel's letter merely recites what others told her. The government's approach would allow it to prove critical facts through out-of-court writings that Huawei has no ability to test through cross-examination.

Finally, the government repeatedly asks the Court to preclude various types of evidence categorically, before trial, without regard to how the case develops or what doors the government itself may open. Such rulings will likely be inappropriate when the issues are presented, and are certainly premature now. Whether the defense evidence and arguments that the government tries to preclude in full will be relevant will depend on the testimony the government elicits, the theories it pursues, and the evidence it introduces. The Court should decline the government's invitation to rule in the abstract and instead reserve judgment for trial, where it can make informed and appropriately tailored rulings.

The government has charged a sweeping case. It will soon have its chance to try to prove it. But the government is not entitled to dictate the theories, evidence, or impeachment on which Huawei can rely in fairly demonstrating to the jury the government's inability to do so. Accordingly, the government's motions should be denied.

## I.    THE GOVERNMENT'S MOTION TO EXCLUDE CHINA INITIATIVE AND SELECTIVE PROSECUTION EVIDENCE SHOULD BE DENIED AS MOOT

Huawei does not intend to affirmatively introduce "[e]vidence, argument, or questioning about the Department of Justice's … China Initiative" or accuse the government of selective prosecution. Mem. Supp. Gov't's Mots. in Limine to Admit Certain Evidence & Preclude Certain Evidence at Trial ("Gov't Mot.") at 4, ECF No. 629 (Feb. 13, 2026). Huawei reserves the right, however, to introduce such evidence or argument if the government opens the door. For example, if the government implies that it has a proper motivation for prosecuting Huawei or disclaims the influence of the DOJ's China Initiative, Huawei would be entitled to correct the record. And the China Initiative question aside, the jury may consider defects and bias in the government's investigation that call its findings into question. *See Mendez v. Artuz*, 303 F.3d 411, 416 (2d Cir. 2002) (holding that undisclosed evidence was material in part because the defendant could have used it to challenge the reliability of the investigation in response to detective's testimony); *United States v. Sager*, 227 F.3d 1138, 1145–46 (9th Cir. 2000) (holding that trial court committed plain error by prohibiting jury from considering weaknesses in investigation) (citing *Kyles v. Whitley*, 514 U.S. 419, 446 n. 15 (1995)). At present, however, Huawei does not intend to discuss the China Initiative or selective prosecution. The government's motion should therefore be denied as moot. *See, e.g.*, *United States v. Clanton*, No. 23-cr-328 (KAM), 2024 WL 1072050, at *16 (E.D.N.Y. Mar. 12, 2024) (denying motion in limine as moot once government represented it did not intend to make challenged references).

3

## II. THE GOVERNMENT'S CATEGORICAL REQUEST REGARDING THE PROPRIETY OF PROPERTY SEIZURES SHOULD BE DENIED AS OVERBROAD

Huawei does not seek to relitigate suppression before the jury, and to the extent the Court rules that specific seizures were lawful, Huawei will not suggest otherwise. But the Court should not preemptively prohibit questioning of unidentified witnesses about unidentified topics without regard to whether and how the Court has ruled on those topics.

The government argues that if the Court resolves the pending suppression motion in Huawei's favor, any impropriety of the seizures would not be probative. This is incorrect. It is well-settled that an agent responsible for an unlawful search who testifies at trial may be cross-examined about that conduct as probative of the agent's credibility and truthfulness under Rule 608(b). The government's own *Giglio* policy acknowledges that such conduct is relevant to the agent's credibility and defines "prior findings by a judge that an agen[t] … engaged in an unlawful search or seizure" as impeachment information that must be disclosed. DOJ Justice Manual § 9-5.100(5)(c)(iv); *see also United States v. White*, 692 F.3d 235, 239 (2d Cir. 2012) (reversing conviction where district court barred cross-examination of detective regarding prior credibility finding; evidence of officer's willingness to lie to secure a conviction "is both relevant and probative"); *United States v. Cedeño*, 644 F.3d 79, 82–83 (2d Cir. 2011) (setting out non-exhaustive factors for assessing probative value of prior judicial findings and recognizing defendant's right to "wide latitude" in cross-examining government witnesses).

Even if the Court upholds any search, that would not necessarily indicate judicial endorsement of the conduct of every officer involved. The government has, for example, asked the Court to deny suppression on the basis of inevitable discovery—a doctrine that denies exclusion even for unlawful searches on the ground that the evidence would have been obtained through independent lawful means. *See* ECF No. 610 at 5–7. If the Court were to deny Huawei's

4

motion to suppress under that theory, that would hardly suggest that the officers' underlying conduct was beyond reproach. The government is thus wrong to assume that a ruling finding seized evidence admissible necessarily establishes that the seizure was proper or shields misconduct from cross-examination.

Finally, Huawei did not move to suppress most government searches at issue in this case, based on standing and other considerations. The absence of any judicial finding with respect to those searches plainly does not insulate the searching agents from cross-examination.

None of the government's cited authorities support its position that search-and-seizure-related conduct is categorically off limits for cross-examination. Rather, they involve fact-specific applications of Rule 608(b), *see United States v. Stone*, No. 05-cr-401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007), Rule 403, *see United States v. Devery*, 935 F. Supp. 393, 407–08 (S.D.N.Y. 1996), or the law governing jury nullification instructions, *see United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).

The Court should therefore deny the government's categorical preclusion request and reserve any Rule 403 balancing for trial.

III.    **THE GOVERNMENT'S MOTION TO CATEGORICALLY PRECLUDE EVIDENCE REGARDING THE CIVIL CASES UNDERLYING THE TRADE-SECRETS CHARGES IS OVERBROAD AND PREMATURE**

The government's trade-secret conspiracy charges (Counts 2 and 3) are based primarily on the records from five previous civil disputes that were long ago resolved. Although the government concedes that certain facts relating to those civil disputes should be admitted at trial,[1] its motion asks the Court to preclude before trial broad categories of evidence that may be

---

[1] The government's motion in limine seeks to exclude certain types of evidence related to prior civil litigation, but in passing it describes categories of material that it intends to introduce. Because the admissibility of any particular item the government may want to introduce at trial is

relevant to rebut and impeach the government's evidence. Gov't Mot. at 7–19. The government's categorical request for a blanket pre-trial exclusion of all such evidence should be denied as overbroad and premature. *Cf. United States v. Pugh*, 162 F. Supp. 3d 97, 100 (E.D.N.Y. 2016) ("The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." (citation omitted)). Huawei addresses each category of potential civil litigation evidence in turn.

### A.      Jury Verdicts

Huawei does not presently intend to introduce any civil litigation jury verdicts. The government's motion should therefore be denied as moot insofar as it seeks to preclude introduction of jury verdicts. *See, e.g., Clanton*, 2024 WL 1072050, at *16.

### B.      Court Orders and Settlement Agreements

The government contends that the judicial orders issued in the civil cases are irrelevant because they were issued on different legal standards and factual records from the standards and records in this case. Gov't Mot. at 18. The government similarly argues that settlement agreements are categorically irrelevant because of the various factors that may go into a party's decision to settle. Gov't Mot. at 16. However, certain of the orders and settlement agreements may be directly relevant to rebut the government's evidence and assertions in this case. For example:

- Although the government represents that it will not introduce evidence in its case-in-chief that Huawei ███████  it has reserved the right to do so "for impeachment or during any rebuttal case." Gov't Mot. at 10 n.5. If the government introduces any such evidence, Huawei should be permitted to introduce evidence of the real reason that ████████ settled: a district court granted Huawei's motions to restrain and enjoin ████████ from transferring any Huawei information to ████ as part of the same sale, *see Huawei Techs. Co. v.*

---

not at issue here, Huawei reserves the ability to challenge the admissibility of any evidence offered, as appropriate, when the government seeks to introduce it at trial.

████████████████████████, at *3 (N.D. Ill. Feb. 10, 2011) (granting motion for a temporary restraining order); *Huawei Techs. Co. v.* ████████████████████████, at *11 (N.D. Ill. Feb. 10, 2011) (granting preliminary injunction). *Cf. United States v. Dupree*, 706 F.3d 131, 138 (2d Cir. 2013) (district court erred in precluding a prior court order by "not considering the Order's probative value on [the defendant's] state of mind").

- One of the alleged overt acts of the trade-secrets conspiracy is that ████████ "falsely" told the FBI that Huawei "won" its lawsuit with ████. *See* Indictment ¶¶ 60(b), 96(c). The fact that Huawei was able to settle the matter without having to pay anything to ████ is certainly relevant to corroborate the accuracy of that statement and ██████ good-faith intent. *Cf. McAuliffe v. United States*, 514 F. App'x 542, 549–50 (6th Cir. 2013) (settlement evidence admissible to show "state of mind").

- The terms of settlement agreements could be admissible to impeach testimony of alleged victim-company witnesses, either to contradict exaggerated claims of value or to demonstrate bias. *E.g.*, *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 519 (6th Cir. 2008) (settlement evidence admitted "to show the state of mind of the witnesses," namely their bias, "because their settlement amounts [with defendant] were for less than they had requested"); *EEOC v. Karenkim, Inc.*, No. 08-cv-1019, 2011 WL 13352967, at *1, *4 (N.D.N.Y. Jan. 10, 2011) (permitting evidence that a claim settled for "nuisance value" to avoid "leaving a potentially false impression with the jury" regarding the severity of the prior incident); *United States v. Krug*, No. 14-cr-102S, 2016 WL 7045937, at *2 n.1 (W.D.N.Y. Dec. 2, 2016) (noting that if defendants had a basis for introducing facts of a "related civil suit," then the Court would "consider whether the settlement may be admitted to refute that evidence").

- The outcomes of the civil litigations—whether by way of court order or settlement—could be relevant to demonstrate Huawei's state of mind when it took actions in response to those litigations. The government has charged a 20-year conspiracy. Highly relevant to Huawei's corporate intent over that period is how Huawei responded to the very events that the government asserts prove the conspiracy. To the extent particular outcomes from those cases are relevant to explain the nature and scope of Huawei's remedial actions, or otherwise to explain Huawei's relevant state of mind following each of the cases, such evidence is also clearly admissible.

The government argues that prior settlements, even if impeaching, should not be admitted because "[w]hen deciding whether to settle a civil litigation, the litigants needed to weigh, among other considerations, the potential commercial costs of continuing with civil litigation, including the potential disruption of the victims' PRC-based business activities, or, ████

7

███████████████████████████████████████

Gov't Mot. at 16. That may be the witness's testimony if impeached with contradictory settlement terms, but there is no requirement that the jury accept it and no basis to exclude the impeaching terms in the first instance.

The government's cases are not to the contrary. The government principally cites *Manko v. United States*, in which the court held that the district court did not abuse its discretion in barring introduction of an IRS settlement that it had found had "little probative value" in the case. 63 F. App'x 570, 572–73 (2d Cir. 2003). But here, as shown above, some of the challenged evidence may be directly relevant to "the ultimate issue of guilt" and/or required to ensure the jury is not misled by incomplete or inaccurate testimony or other evidence. *Id.* at 572. Similarly, *In re Gen. Motors LLC Ignition Switch Litig.,* No. 14-md-2543 (JMF), 2015 WL 9165341, at *1 (S.D.N.Y. Dec. 16, 2015), involved a civil plaintiff's attempt to introduce a DOJ DPA to prove the merits of its civil claims. The opinion did not address the propriety of introducing conflicting terms from a civil settlement to impeach a witness or demonstrate bias.

In short, the admissibility of prior court orders or settlement agreements, either for impeachment or in Huawei's case-in-chief, is highly fact dependent and not appropriately addressed by way of a pre-trial, categorical motion in limine. The Court should deny the government's motion as premature.

### C.    Joint Statements

The government likewise seeks to categorically preclude any joint statements or other "public statements associated with the settlement agreements." Gov't Mot. at 17. Again, this is not the appropriate subject of a categorical, pre-trial ruling. The admission of any such statements would of course need to comply with the hearsay rules and other applicable rules of evidence. However, the mere fact that a witness may have an explanation for an impeaching

8

prior inconsistent statement—whether made in the context of a settlement agreement or otherwise—does not provide a basis to exclude it.

### D.        Fact That the Civil Litigations Have Been Resolved

Finally, the Court should deny any request by the government to prevent Huawei from introducing the fact that the civil litigations have been resolved. The government intends to reference the civil litigations in a variety of contexts, including by "introducing evidence from the civil cases, such as depositions and trial testimony of Huawei employees," and to try to show "that the defendants and co-conspirators sought to obstruct the civil litigations." Gov't Mot. at 19. References to these litigations without any mention of the *fact* of resolution—as the government would have it—risks confusing the jury and unfairly prejudicing Huawei. If jurors hear about multiple civil suits without being told whether the cases ended years ago or remain ongoing, jurors will fill the vacuum themselves. To mitigate any such prejudicial speculation, Huawei should be allowed to introduce evidence that the cases were long ago resolved. Courts, including the government's own cited authority, have allowed evidence of the fact of a prior litigation's resolution. *See, e.g.*, *Bond v. Bd. of Cnty. Comm'rs*, No. 20-7067, 2023 WL 3589081, at *12 (10th Cir. May 23, 2023) (proper to admit the fact of settlement of prior actions that were "constantly referenced" in the trial in order to "ensure there would be no jury confusion or speculation"); *United States v. Johnson*, 469 F. Supp. 3d 193, 226 (S.D.N.Y. 2019) (permitting parties to elicit "the fact that the [prior] lawsuit has been resolved") (cited at Gov't Mot. at 18). The Court should therefore deny the government's motion insofar as it seeks to preclude introduction of the fact that the civil litigations have been resolved.

For these reasons, the Court should deny the government's motion to categorically preclude, pre-trial, evidence regarding the civil cases underlying the trade-secret charges.

9

**IV.    THE COURT SHOULD DENY AS MOOT THE GOVERNMENT'S MOTION TO PRECLUDE CERTAIN "INDUSTRY PRACTICE" EVIDENCE**

Although the government captions this motion as broadly concerning evidence "suggesting that the charged conduct was consistent with industry practice," Gov't Mot. at 19, the motion itself focuses solely on selective prosecution evidence. Specifically, the government argues that Huawei should be precluded from introducing evidence questioning the government's "charging decisions" or "motives in pressing charges"; evidence that "the charges are somehow novel or that the defendants are being uniquely targeted"; or evidence "that other companies may unlawfully misappropriate technology of third parties without legal consequence." *Id.* at 19–21. Because Huawei does not intend to introduce such selective prosecution evidence at trial, the Court should deny the government's motion as moot. *See, e.g.*, *Clanton*, 2024 WL 1072050, at *16.[2]

**V.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE OF NEGLIGENCE AND FINANCIAL LOSS**

The government's contention that Huawei cannot rely on evidence of bank "negligence" or "lack of financial harm" attacks a straw man and would prevent Huawei from presenting critical and relevant evidence to the jury. The Court should deny the government's motion.

---

[2] There are myriad other types of "industry practice" evidence—not raised by the government's motion—that are admissible. *See, e.g.*, *United States v. Litvak*, 808 F.3d 160, 179–81 (2d Cir. 2015) (reversible error to exclude industry practice evidence relevant to materiality); *United States v. Patel*, 2023 WL 2643815, at *34–35 (D. Conn. Mar. 27, 2023) (industry practice evidence admissible as "relevant to determining whether Defendants' conduct and intent were more consistent with a conspiracy" or with independent and parallel actions of non-conspiring parties); *see also United States v. Castillero*, No. 23-cr-622 (JMF), 2025 WL 2773860, at *2 (S.D.N.Y. Sept. 29, 2025) (granting government's motion to preclude evidence regarding the conduct of other firms "in aid of contending" that the government engaged in selective prosecution, but noting that ruling "does not preclude the parties from presenting (subject to Rule 403) evidence and argument concerning industry custom and practice in connection with whether Defendants' alleged markups were excessive").

Relevant evidence is generally admissible. *See* Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Thus, evidence may be admissible "to provide background for the events alleged in the indictment" or to "enable the jury to understand the complete story of the crimes charged." *United States v. Reifler,* 446 F.3d 65, 91–92 (2d Cir. 2006) (internal quotation marks omitted).

The facts that the government characterizes as evidence of bank negligence are probative because of how the government has chosen to charge and present its case. Huawei intends to argue that it did not defraud the banks about its relationship with Skycom in part because it *told the banks* about its relationship with Skycom. For example, Huawei will establish that ▇▇ served as Skycom's bank and that a host of ▇▇ personnel knowingly serviced Skycom's Iran business on behalf of Huawei.

But rather than call the ▇▇ relationship team members with whom Huawei personnel dealt on a regular basis about the Skycom account and Huawei's Iran business, the government apparently intends to call only senior members of the banks' risk and compliance functions to testify that *they* were unaware of Huawei's relationship with Skycom, and that had they known the truth they would have terminated their relationship with Huawei. For example, the government intends to call ▇▇ then-Chief Financial and Risk Officer, who is expected to testify that he relied on relationship members to provide him with accurate information to assess risk.

Huawei is entitled to (and will) counter that evidence by showing that, even if witnesses like ▇▇ did not know about Huawei's relationship with Skycom, the reason for that knowledge gap is not any fraud by Huawei, but rather the failure of ▇▇'s relationship

11

managers to provide complete information to the bank's risk and compliance functions. This is not conjecture on Huawei's part; the same ███ personnel who handled the Skycom account for Huawei also prepared the briefing materials that ███ allegedly relied on, and omitted that information.[3]

Regardless of whether those personnel were negligent, intentionally misleading, or acting in good faith, it is crucial to Huawei's defense that the jury know that any ignorance on the part of ███'s risk and compliance witnesses was attributable to ███'s internal processes, not deception by Huawei. In this context, evidence pertaining to ███ is probative of Huawei's lack of fraudulent intent, because it explains how information provided by Huawei may not have been considered by ███ risk personnel.

The government wrongly characterizes this argument as contending that Huawei did not commit fraud because the banks were negligent in discovering the truth. Gov't Mot. at 21 ("Whether [the banks] were somehow negligent in not fully detecting or comprehending Huawei Tech's control over Skycom … is irrelevant to the charged financial fraud."). But Huawei's argument has never been that bank negligence excuses fraud, and Huawei does not intend to make that argument at trial. Bank employees' negligence in conveying information is a defense to the fraud charges not because it *excuses* fraudulent intent but because it goes to Huawei's *lack* of intent to defraud and helps explain to the jury why others at the banks—particularly the bank witnesses chosen by the government—claimed to be unaware of those facts.

---

[3] *See* Report (HuaweiTechnologies), Group Reputational Risk Committee, ███ (Feb. 21, 2014) (DOJ_HUAWEI_A_0000526670). ███

The way in which ████ handled Huawei's and Skycom's transactions is likewise probative of the credibility of ████ witnesses and declarants. For example, Huawei expects the government to seek to rely at trial on hearsay statements by bank employees purporting to represent assurances provided by Huawei—for example, that Huawei purportedly provided oral assurances that none of its ████ transactions related to Iran. If those statements are admitted for their truth, Huawei is entitled to impeach the declarants as if they were testifying. Fed. R. Evid. 806 ("When a hearsay statement … has been admitted in evidence, the credibility of the declarant may be attacked … by any evidence which would be admissible for those purposes if declarant had testified as a witness."). In that regard, it may well be relevant—depending on the declarant and statement involved—to show that the way ████ handled the relevant transactions provided the declarant with a motive to fabricate. As with the prior example, the government need not put these facts in dispute. But if it chooses to try its case in a way that makes them relevant, it cannot preclude Huawei from presenting its defense. *See United States v. Uvino*, 590 F. Supp. 2d 372, 375 (E.D.N.Y. 2008), *as amended* (Dec. 19, 2008) (admitting statements contained in FBI-302s for purposes of impeaching hearsay declarant).

Huawei must similarly be permitted to introduce evidence regarding the banks' lack of financial harm. Relying on *Kousisis v. United States*, 605 U.S. 114 (2025), the government insists that financial harm is not an *element* of fraud. Gov't Mot. at 22. True enough, but evidence that the victims were *in fact* not harmed tends to rebut the core elements of fraud like intent and materiality. To begin, the fact that a would-be victim suffered no actual financial harm supports an inference that the defendant did not intend to defraud in the first place. *See, e.g.*, *United States v. Abrams*, 165 F.4th 784, 811 (3d Cir. 2026) (noting, in a post-*Kousisis* case, that the jury "may consider among other things whether [Abrams] acted with a desire or purpose to

13

bring about some gain or benefit to himself or someone else or with a desire or purpose to cause some loss to someone"); *United States v. Heimann*, 705 F.2d 662, 669 (2d Cir.1983) ("While technically the success or failure of a scheme to defraud is irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not victims lost money can be a substantial factor in a jury's determination of guilt or innocence." (citation omitted)). A lack of harm can also bear on materiality. As *Kousisis* itself acknowledges, fraud's "demanding" materiality requirement is an important safeguard in distinguishing mere misstatements from federal crimes where the would-be victim suffers no financial loss. *Kousisis*, 605 U.S. at 135 (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016)). Huawei should be entitled to dispute materiality based on lack of harm.

And finally, if Huawei is barred from presenting evidence of the banks' lack of harm, the jury will likely infer that the banks *were* harmed—as occurs in most fraud cases. And the jury may in turn infer that Huawei must have intended the harm would occur. This risk is exacerbated if the government proffers evidence of Huawei's gains: If Huawei cannot tell the jury that the banks suffered no loss, the jury will infer that the gains came *from the victims*, as in a typical fraud case, which in turn will prejudice Huawei's case. The Court is free to instruct the jury as to the elements of fraud as clarified in *Kousisis*, but it should not accept the government's invitation to blind the jury as to the facts on the ground.

## VI.    THE COURT SHOULD NOT PRECLUDE EVIDENCE, ARGUMENT, OR QUESTIONING REGARDING THE DEFENDANTS' NON-USE OF, OR THE ABSENCE OF ECONOMIC BENEFIT ARISING FROM, ALLEGEDLY MISAPPROPRIATED TRADE SECRETS

The Court should deny the government's motion to prohibit the defense from "introducing evidence, arguing, or otherwise suggesting to the jury that a lack of use or economic benefit from a stolen trade secret is a defense to the charges." Gov't Mot. at 23.

14

Count Two requires the government to prove that Huawei knowingly joined an agreement with the intent to violate 18 U.S.C. § 1832(a), which requires in part that the Defendants (1) intended to convert the information to the economic benefit of someone other than the owner, and (2) intended or knew that the offense would injure the owner. *See* 18 U.S.C. § 1832(a).

Huawei is entitled to present evidence and urge any reasonable inference from admitted evidence that negates criminal intent. *See, e.g.*, *United States v. Roldan*, --- F.4th ---, 2026 WL 452027, at *6 (2d Cir. Feb. 18, 2026) (vacating conviction based on exclusion of circumstantial evidence of defendant's lack of criminal intent). "[J]urors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences of a defendant's knowledge and his criminal intent." *United States v. Sabhnani*, 599 F.3d 215, 241–42 (2d Cir. 2010) (internal citations omitted); *see also United States v. MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005) (mens rea elements of knowledge and intent "can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom."). Indeed, because criminal intent or good faith can "only [be] inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh" such relevance. *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015).

Evidence that Huawei neither used nor benefited from the alleged trade secrets supports a clear inference that, at the time of the alleged agreement, Huawei did not intend to convert the information for economic benefit or to injure the owner. For example, in *United States v. Sing*, No. 14-cr-212, 2016 WL 54906 (C.D. Cal. Jan. 4, 2016), the court reasoned that evidence that a trade secret "sat idle on defendant's computer for two years" supported a finding that the

15

government failed to prove intent to convert for economic benefit or to cause injury. *Id.* at *15. The jury instructions cited by the government likewise contemplate the use of such evidence at trial, stating that jurors "may take into consideration whether someone benefitted or not in determining whether defendant had" the requisite intent. Sand Modern Fed. Jury Instr. 49A.01. Here, the jury can infer from the absence of use or benefit that Huawei did not intend to convert the trade secrets or harm the owner at the time of the agreement, and therefore did not have the necessary intent to conspire to violate Section 1832(a).

Huawei's lack of benefit from its alleged theft of trade secrets is also relevant to Count One. Count One requires, in part, that Huawei conspired to use or invest "income derived … from a pattern of racketeering activity" (*e.g.*, theft of trade secrets) in a qualifying enterprise. *See* 18 U.S.C. § 1962(a), (d). Evidence that products did not incorporate or use trade secrets would tend to prove that any revenue from those products used or invested in a qualifying enterprise did not constitute income derived from a pattern of racketeering activity.

Because the non-use or lack of economic benefit from alleged trade secrets is relevant to multiple counts, the Court should deny the motion.

## VII. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE OF HUAWEI'S PRIOR COMMISSION OF GOOD ACTS OR NON-COMMISSION OF OTHER BAD ACTS

The Court should deny the government's motion to categorically exclude any evidence, argument, or cross-examination referencing the defendants' so-called "good acts" or the non-commission of other "bad acts." Gov't Mot. at 23–24.

Defendants may introduce "evidence of a character trait [that] relate[s] to some element at issue in the case." *United States v. Han,* 230 F.3d 560, 564 (2d Cir. 2000). And evidence of specific good acts is admissible when offered for a purpose other than proving a defendant's propensity, such as motive or intent. Fed. R. Evid. 404(b)(2). Good acts evidence "may be

16

relevant" in a case like this one, "where it is alleged the defendant has 'always' or 'continually' committed 'bad acts,' or where such 'good acts' 'would undermine the underlying theory of [the] criminal prosecution.'" *United States v. James*, 607 F. Supp. 3d 246, 257 (E.D.N.Y. 2022) (quoting *United States v. Balboa*, No. 12-cr-196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013)); *see also United States v. Hayes*, 219 F. App'x 114, 117, 118 (3d Cir. 2007) (admitting evidence that defendant followed corporate policy and did not encourage employees to violate policy as probative of intent where the government alleged a "company-wide" conspiracy and introduced specific instances of the defendant pressuring employees to falsify records).

The government has alleged that Huawei engaged in a decades-long conspiracy rooted in a company-wide pattern of criminality—including a "years-long pattern of theft, [] official corporate policy of stealing trade secrets, [] employee incentives for stealing the most valuable information, and [] repeated acts of obstruction for the unlawful purpose of growing Huawei's business." ECF No. 496 at 19–20. Huawei is permitted to rebut the "underlying theory" of the government's case with permissible other acts evidence. *James*, 607 F. Supp. 3d at 257.

To be sure, Huawei does not intend to introduce character evidence prohibited by the rules. For example, Huawei does not plan to introduce evidence regarding its job creation, charitable giving, or positive role in the global economy to prove that Huawei has good character inconsistent with the charged offenses. But Huawei may introduce evidence regarding its corporate formation, development, and operations to negate the government's prosecution theory. Such evidence would tend to prove that Huawei was not a racketeering enterprise that grew its global business through theft and fraud, and that Huawei lacked the intent or motive to engage in the company-wide, top-down conspiracies alleged in the Indictment. Such evidence is

17

not impermissible character evidence; it is evidence directly refuting the charged corporate conspiracies and negating criminal intent. It should be admitted. *See United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) (stating that "trial courts should follow a liberal policy in admitting evidence directed towards establishing the defendant's state of mind").

The government's argument that "good acts" evidence is irrelevant because a RICO enterprise may be "legitimate," *see* Gov't Mot. at 24, does not compel a different result. For one, such evidence is relevant to charges other than the RICO conspiracy charged in the Indictment. But even concerning RICO conspiracy, the government's claim is wrong.[4] To sustain a RICO conviction, it is not enough that the government prove the existence of a RICO enterprise, "legitimate" or not; it must prove that the enterprise had a "fraudulent" or otherwise criminal purpose in that it conspired to invest proceeds from a *pattern of racketeering*, *i.e.*, a pattern of unlawful predicate acts. *Donlon v. City of New York*, No. 25-cv-5831 (DLC), 2026 WL 456892, at *8 (S.D.N.Y. Feb. 18, 2026) (emphasis and citation omitted). Huawei is entitled to demonstrate that it lacked the motive or intent to commit the predicate acts or to join a conspiracy to commit such acts. At a minimum, the Court should defer ruling on this motion until it can assess the nature and purpose of such evidence in context.

---

[4] The government's argument is premised on a misstatement of the Second Circuit's opinion in *United States v. Kelly*, 128 F.4th 387 (2d Cir. 2025). While the Second Circuit held that a "legitimate" enterprise may be a "cognizable enterprise under RICO," *id*. at 409, *Kelly* does not state that a company's legitimate actions cannot be used to challenge the government's allegations of a pattern of racketeering activity.

18

**VIII.    HUAWEI DOES NOT OPPOSE SEALING TRADE SECRETS ON THE PUBLIC DOCKET OR GALLERY MONITORS, BUT THE GOVERNMENT HAS NOT IDENTIFIED THE INFORMATION AND EVIDENCE THAT IT WISHES TO SEAL OR OTHERWISE WITHHOLD FROM THE PUBLIC**

The government requests that the Court "establish reasonable procedures" to prevent disclosure of trade secrets. Gov't Mot. at 24. But it neither specifies the trade secrets at issue nor the documents or facts that would be subject to such procedures. Huawei has a constitutional right to a public trial and objects to conducting any aspect of its trial in secret. Recognizing, however, that a narrow exception exists for protecting trade secrets, Huawei does not oppose withholding trade secrets from the public gallery and sealing such evidence on the public docket, so long as the government identifies any trade secrets early enough for Huawei to contest over-designation. Any such partial closure of the trial should be invisible to the jury to avoid any implication that the information is, in fact, confidential. *See United States v. Nosal*, No. 08-cr-237, 2013 WL 11327121, at *6 (N.D. Cal. Mar. 29, 2013) (noting measures taken to prevent jury from concluding that Court believed documents contained trade secrets). Finally, the Court should reject the government's suggestion to limit the scope of witness examination to protect any trade secrets, which would interfere with Huawei's confrontation rights. As the government suggests, the parties can, if necessary, move to seal transcripts containing trade secret information.

### A.    Applicable Law

"The central aim of a criminal proceeding must be to try the accused fairly, and 'our cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.'" *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (citation omitted). Just as the public has a presumptive "constitutional right of access to criminal trials," including evidence, testimony, and court documents, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 603 (1982), so too does

19

the defendant have a right to public access, *Waller*, 467 U.S. at 46. The power to limit the public's access to a criminal trial "is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances, and for very clear and apparent reasons." *United States v. Alcantara*, 396 F.3d 189, 192 (2d Cir. 2005).

In order to seal exhibits or transcripts or otherwise inhibit public access to the trial, the Court must make "specific, on the record findings … demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 13–14 (1986) (quotation omitted); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (applying same test to sealing documents). "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced[,] the closure must be no broader than necessary to protect that interest[,] the trial court must consider reasonable alternatives to closing the [proceeding,] and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48.

In the context of trade secrets, the government must demonstrate that specific measures are necessary to preserve the confidentiality of trade secrets, including that no reasonable alternatives would suffice. *See Level 3 Commc'ns v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 590–91 (E.D. Va. 2009) (rejecting motion to seal trial exhibits that contained confidential and sensitive business information because they did not "constitute trade secrets" and therefore did not outweigh public right of access). The government's showing requires identifying the information that it seeks to withhold from the public and demonstrating that the information still qualifies as a trade secret. *Cf. United States v. Valencia*, No. 06-cr-80, 2006 WL 3707867, at *6 (S.D. Tex. Aug. 25, 2006) (denying motion to seal because information was no longer secret).

20

## B.    Discussion

The government has not yet met its burden to justify the protective measures it seeks. Indeed, the government has not identified the documents and trade secrets that merit protective measures and has even admitted that some claimed trade secrets were published long ago. For example, the alleged ███ trade secrets were published on February 21, 2013—over thirteen years ago. Ex. A at 7. Similarly, ███ published its alleged trade secret—the ███ protocol— in 2013, thereby removing any trade secret status. *See Enhanced Interior Gateway Routing Protocol*, Internet Engineering Task Force (Feb. 18, 2013), https://datatracker.ietf.org/doc/ html/draft-savage-eigrp-00. The government's mere anticipation that alleged trade secrets "will be at issue during the trial," Gov't Mot. at 25, does not carry the burden of proof necessary to seal any evidence or transcript.

If the government identifies the documents and trade secrets it seeks to protect with specificity, however, Huawei will agree to narrowly tailored remedies to protect those trade secrets, including withholding specific exhibits from the public gallery, sealing docketed versions of exhibits, and sealing portions of transcripts. However, any measure must be invisible and unknown to the jury to avoid the irreparable prejudice that would result if the jury believed that the Court considered the information to be a trade secret.

The Court should not, however, order that questioning "be kept to a sufficient level of generality that would prevent the public from discerning the substance of the trade secret," Gov't Mot. at 25, because such an order would violate the Confrontation Clause. Even when courts have established procedures to protect trade secrets, they have permitted defendants to conduct robust cross-examination on the topics or information contained in the sealed or unpublished exhibits. *See, e.g.*, *Nosal*, 2013 WL 11327121, at *6 (granting government's request to turn off audience facing monitors when confidential information displayed but refusing to "limit

21

Defendant's scope of cross examination on this basis to prevent the audience from hearing testimony on any of the information contained in the documents"). The sole case the government cites does not support limiting cross-examination. *See United States v. Roberts*, No. 08-cr-175, 2010 WL 1010000, at \*1 (E.D. Tenn. Mar. 17, 2010) (seven photographs of claimed trade secret exhibits were not published to the gallery, but cross-examination remained unlimited). The Court should deny any attempt to unconstitutionally curtail the scope of cross-examination.

IX.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO PRECLUDE EVIDENCE OF THE HUAWEI-███ HISTORY

The government's motion to preclude evidence regarding Huawei's and ███'s history should be denied. ███, which developed solid-state drive ("SSD") technology, was co-founded by ███, a former Huawei employee who had worked on similar SSD technology at Huawei. Likewise, at least ten of ███'s other early employees had previously worked on SSDs at Huawei. Huawei eventually sued ███ and ███, alleging breach of contract and trade secret misappropriation. The government seeks to categorically exclude the entire history between Huawei and ███, asserting it to be irrelevant. Gov't Mot. at 26.

Contrary to the government's assertion, there are myriad ways in which the history between Huawei and ███ may be relevant. For example, the Indictment alleges that as part of a conspiracy to steal from ███, Huawei prepared "[a]n internal … presentation … [that] articulated the 'countermeasures' planned" against ███ and listed "names and compensation information for [███] employees." Indictment ¶ 46. Most of the listed ███ employees were former Huawei employees. Contrary to the Indictment's allegation, the referenced Huawei "countermeasures" presentation was an effort to address ███'s poaching of *Huawei* employees, and not part of any conspiracy to steal from ███. The Huawei-███ history is directly relevant and admissible to rebut the government's allegations regarding the Huawei

22

"countermeasures" presentation. Similarly, the Huawei-███ history may provide relevant context and background to other emails and documents that may be at issue in the case.

The government's attempt to categorically exclude relevant background history between Huawei and ███ is improper and should be denied.

**X.      THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO EXCLUDE ███████'S RESPONSE TO THE UNSEALING OF THE INDICTMENT IN THIS CASE**

The government seeks to preclude evidence of how ███████████████ one of the alleged "victim" banks, reacted to learning the very information that the government asserts would have been material to its decisionmaking. Notably, in a different motion in limine, the government seeks leave to ask employees of the victim banks (including ██████) about how their banks *hypothetically* would have reacted to the same information. The government's proposal of asking witnesses to attest what they *would have done* while excluding evidence of what they *actually did* makes no sense and is contrary to governing law. The Court should permit the jury to hear the actual facts, and not exclude what the Supreme Court has expressly held is "strong evidence" of a lack of materiality. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 195 (2016).

"[A] false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder v. United States,* 527 U.S. 1, 16 (1999) (internal quotation marks and alterations omitted). As the government correctly states, materiality is governed by an objective standard. But the decisionmaker's real-world conduct is relevant evidence—indeed, it is frequently the best evidence—of whether that objective standard is satisfied. *See, e.g.*, *United States v. Calderon*, 944 F.3d 72, 87–88 (2d Cir. 2019) (bank employees' testimony regarding real-world bank policies was relevant evidence of objective materiality).

23

The Supreme Court has reached a similar conclusion in the context of the False Claims Act, which likewise defines a materially false statement as one that has "a natural tendency to influence, or be capable of influencing," payment. 31 U.S.C. § 3729(b)(4). In *Escobar*, the Supreme Court held that the government's real-world decision to continue paying claims after an alleged misrepresentation was exposed was "very strong evidence" that the misrepresentation was not material. 579 U.S. at 195. Similarly, the Court held that if the government "regularly pays a particular type of claim in full despite actual knowledge" of a purported misrepresentation, "that is strong evidence" of lack of materiality. *Id*. In other words, even under an objective standard, evidence from actual decisionmakers remains "highly relevant to any objective inquiry," and "may be (and often [is]) the best available evidence" of objective materiality. *United States ex rel. Am. Systems Consulting, Inc. v. ManTech Advanced Systems Int'l*, 600 F. App'x 969, 976 (6th Cir. 2015).

The same is true here: how an *actual* bank reacted to an alleged misstatement is surely probative of how a *hypothetical* bank would react to that statement. Thus, ▮▮▮▮▮▮▮'s real-world decision to continue (and ultimately expand) its relationship with Huawei, even after the purported fraud was exposed, is "very strong evidence" that any misstatement was not material. *Escobar*, 579 U.S. at 195.

*United States v. Akhavan* reaches precisely this conclusion. That case concerned allegedly fraudulent statements to banks about whether certain transactions were for marijuana. At trial, defense counsel was permitted to introduce, and even "focus[] on the fact" that, "after the indictment in [the] case, U.S. issuing banks and credit unions continued to authorize" the transactions at issue. No. 20-cr-188 (JSR), 2021 WL 2776648, at *3 (S.D.N.Y. July 2, 2021). Judge Rakoff correctly recognized that "a reasonable jury might, in theory, infer from [the]

24

banks' continued processing" of the suspect transactions "that banks did not care that [the] transactions were ultimately for marijuana." *Id*. Here, too, a reasonable jury could infer from ████████'s continued relationship with Huawei that Huawei's statements were immaterial.[5]

Indeed, the government implicitly concedes this point in its very next motion in limine, in which it seeks to ask bank employees hypothetical "what-if-you-had-known" questions. The premise of this request is that the employees' predictions of what their employers' real-world reactions *might* have been are relevant to objective materiality. If that is true, then historical facts about what their employers' real-world reactions *actually were* are necessarily even more relevant.[6]

Neither *United States v. Corsey*, 723 F.3d 366, 373 n.3 (2d Cir. 2013), nor *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018), support the government's motion. *Corsey* holds that a misstatement can be material even if the counterparty could have detected the falsity with sufficient diligence, while *Litvak* holds that materiality does not require a showing of actual reliance. These cases both hold that a lack of reasonable reliance does not necessarily establish immateriality. Judge Rakoff made a similar point in *Akhavan*: evidence of the banks' subsequent conduct, which showed that the banks did not care about the purported misrepresentation, did not

---

[5] The government all but conceded this point when it decided not to pursue Counts Five and Eight—the bank fraud charges related to alleged misrepresentations to ████████—after learning of this continued relationship.

[6] If the government were correct that an alleged victim's real-world conduct is irrelevant to establishing materiality, then the government must be precluded from introducing evidence or arguing that purported representations by Huawei influenced the banks' real-world conduct. For example, the government's *Chalmers* roadmap is replete with minutes from various bank meetings in which the banks reviewed their Huawei accounts. The only value of these minutes is to show the banks' purported reactions to and reliance upon Huawei's statements. If ████████'s reaction to the Indictment in this case is not relevant to materiality, then the reactions contained in these minutes cannot be either. The government cannot establish that the banks' actual reactions are relevant when they support the prosecution but irrelevant when they support the defense.

*compel* the conclusion that the misrepresentation was immaterial. 2021 WL 2776648, at *3. But as Judge Rakoff explained, that conduct is still *relevant* and should not be excluded. So too here: Huawei is entitled to present evidence of ▮▮▮▮▮▮'s continued relationship with Huawei after the Indictment was unsealed, and to argue that this evidence is probative of whether Huawei's statements were objectively material.[7]

**XI.    THE COURT SHOULD PROHIBIT THE GOVERNMENT FROM ELICITING TESTIMONY THROUGH HYPOTHETICAL QUESTIONS EXCEEDING THE BOUNDS OF *CUTI***

The Court should bar the government from asking hypothetical questions that exceed the scope of permissible questioning outlined in *United States v. Cuti*, 720 F.3d 453 (2d Cir. 2013).[8] Under *Cuti*, witnesses with firsthand knowledge may testify not only to what they knew, but also to what they did not know and what they would have done had they known, so long as those facts "ha[ve] been independently established in the record." *Id*. at 458–59. *Cuti* imposed three important limitations on such hypothetical testimony.

First, *Cuti* approved hypothetical questioning for witnesses with firsthand involvement in the relevant decision. *See id.* at 458. Permissible questions were cabined to focus on the witnesses' personal perception and avoided calling for speculation. *Id.* at 458–59. For example,

---

[7] The government offers the passing statement that the evidence would "only serve to confuse the issues." Gov't Mot. at 27. To the extent the government is making a Rule 403 argument, that argument fails. The jury can be instructed that materiality is an objective standard and that evidence is relevant only insofar as it bears on that standard.

[8] Courts throughout this circuit adhere to the *Cuti* framework. *See United States v. James*, 607 F. Supp. 3d 246, 261 (E.D.N.Y. 2022) (allowing the government to ask "hypotheticals that fall within the scope permitted by the Second Circuit in *Cuti*" but not those "concerning their views and opinions regarding the 'correctness' or 'accuracy' of Defendant's billing"); *United States v. Guo*, No. 23-cr-118 (AT), 2024 WL 1862022, at *7 (S.D.N.Y. Apr. 29, 2024) ("The Government may ask witnesses hypothetical questions that fall within the *Cuti* framework if the proper foundation is established."); *United States v. Peraire-Bueno*, No. 24-cr-293 (JGLC), 2025 WL 2753560, at *3 (S.D.N.Y. Sept. 29, 2025) (allowing hypothetical questions to show materiality where such questioning complied with *Cuti*).

26

before posing hypothetical questions to one witness, the government elicited testimony establishing that the witness made accounting decisions. Only after the witness demonstrated personal knowledge did the court permit hypothetical questions regarding how his decision would have been affected had he seen certain previously undisclosed documents. *See* Apr. 29, 2010 Tr. at 2465:1–16, *United States v. Cuti*, No. 11-3756, ECF No. 104 at A-1563 (2d Cir.). On the other hand, witnesses with no involvement in an underlying transaction or decision cannot testify about how a hypothetical fact would have affected that decision. *See Peraire-Bueno*, 2025 WL 2753560, at \*4 (denying government's motion to allow hypothetical questions to show materiality for witnesses who were not personally involved in the underlying transaction during the relevant time).

To the extent the government wants to pose hypothetical questions to "current and former employees of victim technology companies and victim financial institutions," Gov't Mot. at 28, such testimony should be limited to hypothetical scenarios stemming from each witness's first-hand involvement. For example, the government may ask a witness who served on a bank's risk committee how various factors would have changed the committee's decision, but a bank teller—who lacks necessary first-hand knowledge—cannot provide similar testimony. Witnesses without firsthand knowledge may testify about their company's or bank's general policies and practices, but they cannot testify about how those policies or practices interact with hypothetical facts outside their personal knowledge.

Second, *Cuti* instructs that hypothetical questions are permissible only if they "utilize[] facts that [have] been independently established in the record." *Cuti*, 720 F.3d at 458; *see id.* at 459 ("[A] witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior."). However,

27

hypotheticals that presume facts not established in the record are prohibited. For instance, a financial institution employee testifying about his decision-making practices might fairly answer whether knowledge that Skycom had a relationship with Huawei would have been relevant to his decision. However, the same witness could not testify to the effect of an unestablished fact such as the government's allegation that Huawei did not sell its shares in Skycom, which Huawei disputes. Whether Huawei sold its shares in Skycom is not "independently established in the record," *see id*. at 458, and would be misleading and unfairly prejudicial.

Third, *Cuti* affirmed the use of hypothetical questions that "made no assumption of guilt," *id.* at 460, while emphasizing that "[t]he district court took pains to limit the hypotheticals to the impact of the withheld information and barred the witnesses from speaking to the wrongfulness of the defendants' actions, leaving that analysis to the jury," *id.* at 461. For example, the *Cuti* trial court permitted questions about how the provision of specific documents would have affected a witness's decision-making but prohibited questions that assumed wrongdoing—sustaining an objection to "What if you had learned that [particular deals] didn't have economic substance?" May 12, 2010 Tr. at 3686:4-3687:14, *United States v. Cuti*, No. 11-3756, ECF No. 107 at A-2464 to A-2465 (2d Cir.). District courts in this circuit have followed suit. *See United States v. Chang*, No. 18-cr-681 (NGG) (CLP), 2024 WL 3303717, at *9 (E.D.N.Y. July 3, 2024) (allowing hypothetical questions to elicit evidence of materiality if the questions did not assume the defendant's guilt); *Peraire-Bueno*, 2025 WL 2753560, at *4 ("Therefore, to the extent 'the proper foundation is established for each question and that the[ ] questions are posed as hypotheticals without requiring the jury to assume the guilt of the defendant,' they are permitted.") (citation omitted). Thus, for example, while the government may ask a bank witness whether it would have been relevant to know that Skycom's account at

28

██████ was used for Iran-related payments, it would be improper ask witnesses whether it would have been relevant to know that Skycom's transactions violated the Iran Transactions and Sanctions Regulations or IEEPA.

Guilt-assuming hypotheticals should also be excluded under Rule 403. Such hypotheticals lack probative value because they are "conjectural and speculative, and are prone to being self-serving, subjective, and incapable of effective analysis by cross-examination." *See Cain v. Trans World Airlines*, 549 F. Supp. 963, 968 (S.D.N.Y. 1982) (Sand, J.). Bank employees, for instance, will feel significant pressure to respond to hypothetical questions by touting the strength of their employers' sanctions control procedures and testifying that even the smallest piece of additional information would have made an enormous difference to their decisions. In contrast to their limited probative value, guilt-assuming hypotheticals carry substantial prejudice for defendants because they assume as fact an allegation that is hotly contested. *See United States v. Russo*, 110 F.3d 948, 952 (2d Cir. 1997) (Sotomayor, J.) (noting that guilt-assuming hypothetical questions of character witnesses "trench too deeply into the presumption of innocence"). Because the unfair prejudice of guilt-assuming hypothetical questions substantially outweighs their probative value, the government should be precluded, as it was in the *Cuti* trial court and other trial courts in this circuit, from asking guilt-assuming hypothetical questions.

## XII.   THE COURT SHOULD EXCLUDE EVIDENCE OF STATEMENTS IN *LIGHT READING* AND *REUTERS* ARTICLES

The government asks the Court to admit an article in *Light Reading* about Huawei's alleged trade secret theft against ██████ quoting Huawei employee ██████████, and two *Reuters*

articles about Huawei's relationship with Skycom.[9] Despite conceding that "newspaper articles containing quoted remarks are hearsay within hearsay" and "usually inadmissible" for their truth, Gov't Mot. at 31, the government argues that the articles are not hearsay because the underlying quotes were acts in furtherance of the alleged conspiracies and that the articles themselves fall within several hearsay exceptions. The government is wrong.

The *Light Reading* article fails on two layers of hearsay: the employee's out-of-court statements to the author and the author's out-of-court writing of the article are both inadmissible hearsay. The *Reuters* articles fail on the second layer of hearsay because the author's writing of the article is inadmissible hearsay.[10] The government's motion should therefore be denied.

### A.     The Statements in the *Light Reading* Articles are Inadmissible Hearsay Within Hearsay

"Newspaper articles containing quoted remarks are hearsay within hearsay—they contain out of court statements by the quoted individual, within a document that is itself an out of court statement." *Mandal v. City of New York*, No. 02-cv-1234 (WHP), 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006). Hearsay within hearsay is admissible only when each part of the combined statement falls within an exception to the rule against hearsay. Fed. R. Evid. 805. The government concedes this but argues that double-hearsay articles "need not be excluded from

---

[9] The government's March 4, 2026 exhibit list includes additional news articles that the government may seek to admit. Huawei preserves all objections to those articles' admissibility and will address each one when appropriate, either in a motion in limine or in contemporaneous objections if the government offers them at trial.

[10] The government argues that Huawei's statements in the *Reuters* articles are also relevant to establish venue for the financial fraud charges. Mere access to an online source does not establish venue. *See Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 609 (S.D.N.Y. 2016) ("[T]he fact that an infringing material is accessible via the internet in a jurisdiction is hardly sufficient to conclude that this infringement occurred in this district for the purposes of venue."). *Cf. Am. Homecare Fed'n, Inc. v. Paragon Sci. Corp.*, 27 F. Supp. 2d 109, 113 (D. Conn. 1998) ("[A] passive [w]ebsite, which does little more than make information available to those who are interested in it, is not grounds for personal jurisdiction.").

evidence when they contain admissions by a party opponent under Rule 801, provided the article is a recorded recollection under Rule 803(5), or falls within the 'residual exception' of Rule 807." Gov't Mot. at 31 (citing *Mandal*, 2006 WL 3405005, at *2).

These exceptions do not apply to the *Light Reading* article. ███'s alleged statement in the *Light Reading* article is hearsay and was not made in furtherance of a conspiracy. And the article itself is inadmissible hearsay that fails to qualify as a recorded recollection or under the residual exception.

The government argues that it can overcome the first layer of hearsay because ███'s statements are non-hearsay acts in furtherance of the conspiracy to misappropriate trade secrets. Gov't Mot. at 33. The Court should reject that argument because the government has not established that ███ and the defendants joined such a conspiracy. *See* Fed. R. Evid. 801(d)(2)(E) (admitting hearsay statement by "coconspirator during and in furtherance of the conspiracy"); *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014) (evidence is admissible under Rule 801(d)(2)(E) where the government proves, among other things, that there was a conspiracy and "its members included the declarant and the party against whom the statement is offered"); *United States v. Russo*, 302 F.3d 37, 46 (2d Cir. 2002) ("Admissibility depends on … whether the defendant was jointly engaged with the declarant in the conspiracy[.]"); *United States v. Ramirez*, No. 15-cr-379 (PKC), 2021 WL 2554442, at *11 (S.D.N.Y. June 22, 2021) (similar).

In order to establish his membership, the government must prove by a preponderance that ███ knowingly and voluntarily "join[ed] the ranks of the [broader] conspiracy," not just "commit[ted] a single crime with a member of an existing conspiracy." *United States v. Zabare*, 871 F.2d 282, 287 (2d Cir. 1989); *United States v. Magnano*, 543 F.2d 431, 434–35 (2d Cir. 1976) (requiring knowledge of the broader conspiracy). The Indictment charges Huawei with a

conspiracy to steal trade secrets that allegedly began in 2000—four years before publication of the *Light Reading* article. Indictment ¶ 95. ▉ was not charged for this alleged conspiracy. Indeed, the government has not established that ▉ even knew of the charged conspiracy, much less joined it. The government has therefore failed to prove that the co-conspirator exception applies.[11]

> **B.** **The Government Has Not Established That the *Light Reading* and *Reuters* Articles Are Admissible as Recorded Recollections or Under the Residual Hearsay Exception**

Both articles also fail on the second layer of hearsay. The government argues that both articles are admissible as recorded recollections under Rule 803(5), or under the residual exception of Rule 807, but neither exception applies.

> **1.** **The Articles Are Not Recorded Recollections**

"For a statement to come within [Fed. R. Evid. 803(5)], a proponent must show that (1) the witness's memory of the events detailed in the record was sufficiently impaired; (2) the witness prepared or adopted the record at or near the time of the events reported; and (3) at that time, the record correctly reflected the witness's knowledge of the reported events." *United States v. Rommy*, 506 F.3d 108, 138 (2d Cir. 2007).[12] The government fails on each prong.

*First*, the government has not established that the authors' memories are impaired. The government *anticipates* that the authors *may* not recall the substance of the articles. *See, e.g.*, Gov't Mot. at 33 ("If the authors of the *Light Reading* article lack memory of ▉'s statements…"). But the government has not established that the authors lack any memory, or that

---

[11] *See* Fed. R. Evid. 801(d)(2)(E). The government does not argue that ▉'s statements were statements of a party opponent under any other prong. *Cf.* Fed. R. Evid. 801(d)(2)(A)–(D).

[12] Even if the Court were to find the article potentially admissible as a recorded recollection, the government is required to call one of the authors to establish the foundation.

their failure to recall would be unaided by an attempt to refresh their recollection at trial. *See Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 597 (S.D.N.Y.2002), *aff'd*, 59 F. App'x 430 (2d Cir. 2003) (declining to apply Rule 803(5) where reporter did not testify that he had an "insufficient recollection" but rather declined to testify about the article because "[a] necessary predicate of this Rule … is that there be a 'witness' with an 'insufficient recollection.'" (quoting Fed. R. Evid. 803(5)); *id.* at 35 ("*Should* the author's memory falter, the government *expects* to satisfy the criteria of Rule [803(5)] through the author's trial testimony." (emphasis added)). Only if the authors' memories fail during testimony would Rule 803(5) be implicated.

Second, the government has not established that the articles were written when the underlying ▮ and Huawei statements were "fresh in [the authors'] memor[ies]." *In re Fischer*, 259 B.R. 23, 38 (Bankr. E.D.N.Y. 2001), *aff'd in part, rev'd in part*, No. 01-cv-2717, 2001 WL 1923359, at *1 (E.D.N.Y. Aug. 21, 2001) (finding newspaper article was not admissible as a recorded recollection where there was no evidence of when the interview occurred and how long after the interview the article was written). It is unlikely that the authors prepared their articles contemporaneously with the interview based on their recollection of that interview (rather than based on a third layer of hearsay such as an assistant's notes). Without that foundation, it is impossible to know whether the articles were written close enough to the statements to be a reliable reflection of their contents.

Third, the government has not established that the record correctly reflected the authors' knowledge of the underlying statements and other events described. The government has offered no evidence to corroborate that journalists wrote the articles based on their knowledge of the underlying statements rather than other sources such as third-party accounts, notes, or previous reporting.

33

### 2.    The Articles Are Not Admissible Under the Residual Exception

The articles similarly are not admissible under Rule 807's residual exception. A statement is admissible under Rule 807 "if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party." *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (internal quotation marks omitted). The residual hearsay exception should "be invoked 'very rarely, and only in exceptional circumstances.'" *United States v. Kandic*, 134 F.4th 92, 103 (2d Cir. 2025) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)). No exceptional circumstances exist here. Although the articles bear on material facts and the government has provided notice, the articles fail multiple prongs.

First, the government fails to establish that the articles are "particularly trustworthy." *Morgan*, 385 F.3d at 208. The government cites general sources about the publications' reputations and cases finding sufficient guarantees of trustworthiness for statements printed in *The New Yorker* and *The New York Times*. *See* Gov't Mot. at 33–34 (citing *Kellner v. City of New York*, No. 17-cv-1268 (NRM) (MMH), 2025 WL 3507346 (E.D.N.Y. Dec. 8, 2025) and *Mandal*, 2006 WL 3405005). *Light Reading* is not comparable to *The New Yorker* and *The New York Times*. But even if it was (as *Reuters* is), *Kellner* and *Mandal* did not find sufficient trustworthiness based on the institutions' reputations alone. *Kellner*, 2025 WL 3507346, at *27–28 & n.19 (emphasizing that "its decision should not be construed as holding that articles in *The New Yorker* are necessarily trustworthy" and weighing the author's reputation and the article's assertion that the speaker was offered an opportunity to refute the quote); *Mandal*, 2006 WL 3405005, at *3 (author testified to independent recall, author and quoted parties were available as

34

witnesses, and contemporaneous notes were available). The government cannot rest on the publications' laurels.

Second, the articles and quoted statements are not the most probative evidence on the topics they discuss. ▮'s statements in the *Light Reading* article are not the most probative evidence available to support the charged conspiracies, and the authors' purported analysis is even less probative than ▮'s statements. The government has disclosed Jencks material for witnesses who observed ▮'s actions and spoke with him in the immediate aftermath of the incident, which are more probative than an internet article. And to the extent that such an article had any probative value, it would be less than the value of testimony from the authors—who the government plans to call as witnesses.

For the *Reuters* articles, the very points made by the government with regard to trustworthiness undermine the other prongs of the residual exception. The government argues that ▮ would testify to the manner in which Huawei conveyed its statement—via email according to the January 13, 2013 *Reuters* article. Because the quoted statements in the *Reuters* articles were allegedly sent via email, the email itself is more probative than the articles and avoids the second layer of hearsay. Furthermore, while witness unavailability is not a prerequisite for admissibility under Rule 807, "[i]n general, where the declarant is available to testify, hearsay testimony is not more probative than the in-person testimony of the declarant." *United States v. Mejia*, 948 F. Supp. 2d 311, 318 (S.D.N.Y. 2013) (collecting cases where residual hearsay exception did not apply when witness was available to testify). The testimony of the authors is more probative than the hearsay article, and the government has not indicated they are unavailable to testify.

Finally, newspaper articles and their online cousins are quintessential examples of what the rules of evidence are meant to prohibit. *See U.S. Football League v. Nat'l Football League*, No. 84-cv-7484 (PKL), 1986 WL 5803, at *1 (S.D.N.Y. May 16, 1986) (noting that newspaper articles are often "summarily reject[ed] … as obvious hearsay."). The government delayed this Indictment for years—limiting Huawei's ability to gather witnesses. It should not be allowed to capitalize on that delay by using online articles from decades past to prevent cross-examination of actual witnesses.

**XIII.    THE ███████ AND ███████ DOCUMENTS ARE NOT RECORDED RECOLLECTIONS AND SHOULD BE EXCLUDED AS HEARSAY**

As with the *Light Reading* and *Reuters* articles, the government seeks to admit, as recorded recollections under Rule 803(5): (1) an August 2013 email sent one day after a meeting between ███████████████████████ and ███████████████ ("███████ Email"); and (2) a July 2004 letter sent by the ████████████████████████████████████ ███████████████████, to Huawei Technologies regarding an alleged incident at the SUPERCOMM trade show in June of 2004 ("███████ Letter"). *See* Gov't Mot. at 37. The government implicitly concedes that the documents are hearsay admissible only if they satisfy the requirements of Rule 803(5). They do not, and both documents should be excluded.

**A.    Rule 803(5) Does Not Provide the Requested Relief**

As a threshold matter, the government seems to request that the ███████ Email and ███████ Letter be admitted *as exhibits*. *See* Gov't Mot. at 37 ("[T]he Court should admit…contemporaneous written accounts [the ███████ Email and ███████ Letter.]"); *id.* at 38 ("[T]he substance of the [███████ Email] and the [███████ Letter] should be admitted."). Rule 803(5) does not permit the requested relief. It allows a record only to be "read into evidence." Fed. R. Evid. 803(5). The record "may be received as an exhibit," as the government requests

here, "only if offered by an adverse party." *Id.*; *see also Magnoni v. Smith & Laquercia,* 483 F. App'x 613, 616 (2d Cir. 2012); *United States v. Judon*, 567 F.2d 1289, 1294 (5th Cir. 1978) ("The drafters precluded the receipt of recorded recollection as an exhibit of the proponent of the memorandum in order to prevent the trier of fact from being overly impressed by the writing.")). Because Rule 803(5) does not authorize the requested relief, the government's motion should be denied.

### B.      The Government Has Not Laid the Foundation Required by Rule 803(5)

Even assuming the government is requesting only that the ███████ Email and ██████ Letter be read into evidence, the government has not satisfied Rule 803(5)'s three foundational requirements with respect to either document. Rule 803(5) applies only if the proponent establishes by a preponderance that (1) each witness's memory of the events detailed in the document is sufficiently impaired; (2) each witness prepared the document in question at or near the time of the events; and (3) at the time the witness prepared the document, it correctly reflected his or her knowledge of the events. *See* Section XII, *supra*. The government has not carried its burden of proof.

#### 1.      The ███████ Email

The government has not provided evidence that Mr. ██████ lacks any recollection of his August 2013 meeting with ███████. To the contrary, there is evidence that Mr. ██████ *does* remember his meeting with ███████. According to *Jencks* material, the government last met with Mr. ██████ on July 18, 2017. At the time of his last interview, Mr. ██████ seems to have remembered the meeting clearly, recalling details such as ███████ demeanor, where in the restaurant the two met, and his apparent relief after the meeting that there was no new information about Huawei's sanctions compliance. *See* 3500-██████-2 at 4. Without evidence that Mr. ██████ cannot recall the meeting, the recorded recollection exception is inapplicable.

37

*See, e.g., Kellner v. City of New York*, No. 17-cv-1268 (NRM) (MMH), 2025 WL 3507346, at *27 (Dec. 8, 2025) ("The recorded recollection exception cannot apply because Chaim has not testified to a lack of recollection.").

Even if Mr. ██████'s memory has since faded, it is unlikely that he would lack a recollection of the high-level and generalized characteristics of the meeting as described in his email. In either case, the ██████ email fails as a recorded recollection under Rule 803(5) because the government has not established that Mr. ██████'s memory has faded such that he "now cannot recall well enough to testify fully and accurately." *Rommy*, 506 F.3d at 138.

### 2. The ██████ Letter

Similarly, the government fails to meet its foundational burden under Rule 803(5) as to the ██████ Letter. Jencks material shows that as of August 25, 2025, Ms. ██████ confirmed that, as in past years, she recalled the events of the alleged SUPERCOMM incident as described to her when she wrote her letter in 2004.

Moreover, there is no indication that Ms. ██████ wrote her letter at or near the time of the events, or that her memory of the events was fresh. *See, e.g., In re Fischer*, 259 B.R. at 38 (holding that newspaper article was not a recorded recollection because, although the author's notes may have been a written record, "there is no evidence that [the article] was made or adopted by [the author] when the matter was fresh in his memory") (internal quotation marks omitted). Ms. ██████'s letter is dated July 21, 2004, one month after SUPERCOMM. *See* Gov't Ex. F at 1; *see* 2 McCormick On Evid. § 281 (9th ed.) ("The record must have been prepared or recognized as correct at a time close enough to the event to ensure accuracy."). Even assuming Ms. ██████ once had a clear recollection of SUPERCOMM, the events were not likely to be "fresh in [her] memory" one month later. *In re Fischer*, 259 B.R. at 38.

Finally, the ▮▮▮ Letter is inadmissible because Ms. ▮▮▮ did not herself witness the events described in her letter. *See Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996) (holding that officer's use-of-force report was not a recorded recollection because he did not see the relevant portion of the event first-hand). Rather, Ms. ▮▮▮ describes the alleged incident as reported to her. "[E]vidence of recorded recollection…is inadmissible unless a witness, *who once had knowledge of what the record contains*, testifies." *Parker v. Reda*, 327 F.3d 211, 215 (2d Cir. 2003) (emphasis added) (citing Weinstein's *Federal Evidence* § 803(5)[01] (stating that recorded recollection requires that "accuracy [be] vouched for by each participant in the chain")). Ms. ▮▮▮'s letter is a recitation of hearsay from unknown third-party declarants and does not qualify as a recorded recollection.

Because the government has failed to establish that either document is a recorded recollection under Rule 803(5), both documents should be excluded.

**XIV. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO ADMIT FUTUREWEI'S PAYMENT OF PROFESSOR ▮▮▮'S ATTORNEYS' FEES**

The government seeks to introduce evidence that Futurewei paid the fees of ▮▮▮ ▮▮▮, an attorney for Professor ▮▮▮, as an act in furtherance of the conspiracies charged in Counts Two and Three of the Indictment. Gov't Mot. at 38–40. In fact, Professor ▮▮▮ was not part of any conspiracy, and the government dismissed all Huawei-related charges against him. As part of a deal that sent Professor ▮▮▮ promptly home without being incarcerated, the government required him to plead guilty only to an 18 U.S.C. § 1001 count arising from a post-arrest statement having nothing to do with Huawei. The attorney's fees paid to Mr. ▮▮▮'s firm did not further any conspiracy and served only to secure capable counsel to help Professor ▮▮▮ defend against an overbearing government prosecution. Because neither the facts nor the law support the admission of this evidence, the government's motion should be denied.

## A.    Factual Background

Between 2016 and 2018, while employed at Xiamen University in China, Professor ████ worked on a computer software research project that was undertaken pursuant to a contract between Huawei and Xiamen University. The government charges that this research project was a ruse to gain access to ████'s proprietary technology through a "proxy." Indictment ¶¶ 50–56. The evidence at trial will show that this was an ordinary computer software research project that did not misappropriate any proprietary technology of ████.

In August 2019, while Professor ████ was living with his family in Texas and serving as a visiting professor at the University of Texas, the government aggressively executed an arrest warrant by causing armed federal agents to burst, unannounced, into the ████' apartment. With guns pointed at Professor ████ as his wife looked on with their infant son in her arms, the agents separated the ████ for questioning and arrested Professor ████.

Upon his arrest, Professor ████ was taken into custody and subjected to a lengthy interrogation by federal agents. When the agents informed Professor ████ of his rights through an interpreter, Professor ████ promptly indicated that he wanted to hire an attorney but could not afford one. Ex. B. Rather than terminating the interrogation and permitting him counsel, the agents instead proceeded to question Professor ████ for nearly four and a half hours, repeatedly attempting to have Professor ████ implicate Huawei in the supposed conspiracy to steal ████'s trade secrets. *Id*. Professor ████ never did so.

Professor ████ was held overnight in a city jail and presented to a magistrate judge the next day, August 15. A detention hearing was ordered for August 20, and Professor ████ was ordered detained in the interim. Soon thereafter, the government offered to agree to release ████ on bail only if he would sign a waiver of indictment and agree to waive venue, allowing his case to be transferred to the Eastern District of New York where the case against Huawei was

40

pending. After a terrifying week in an especially frightening American jail over a one-count

fraud charge that had not yet been indicted (and which the government later dismissed), ▮▮▮

signed the waiver. *United States v.* ▮▮▮▮▮▮▮▮▮▮▮, ECF No. 7 (E.D.N.Y. Aug. 20, 2019).

But the government's demand was illegal: The constitutional rights to venue and to be indicted

by a grand jury have nothing to do with the factors that determine whether a defendant is

detained or released, and the government's threat of continued detention to obtain a waiver of

those unrelated rights was an unconstitutional condition and clear government overreach. *See*

*United States v. Scott*, 450 F.3d 863, 865–66 & n.4 (9th Cir. 2006); *Dep't of Texas, Veterans of*

*Foreign Wars of U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 437 n.4 (5th Cir. 2014).

Huawei paid for Professor ▮▮▮ to have competent and experienced counsel from global

law firm ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to help protect his constitutional rights and to

defend himself against an overbearing government prosecution. From Huawei's perspective,

Professor ▮▮▮ was being prosecuted only because of his past contractual relationship (through

Xiamen University) with Huawei—a relationship that was entirely legitimate and did not involve

any misappropriation. In this context, Huawei felt it appropriate to pay for his attorney's fees.

The government repeatedly touts its unproven allegations of a ▮▮▮-Huawei conspiracy as

part of its Motion. But when it had the opportunity to prove those *same* allegations charged in its

case against Professor ▮▮▮, the government *walked away. Compare United States v.* ▮▮▮▮▮▮▮

▮▮▮▮▮, ECF No. 8 (E.D.N.Y. Aug. 28, 2019) (information charging that ▮▮▮ conspired with

Huawei), *with id.*, Minute Entry (Dec. 14, 2020) ("Government dismisses underlying

indictment."). Instead, the government allowed Professor ▮▮▮ to plead guilty to a single Section

1001 count based on a statement during his initial interrogation (when he was without counsel)

that he did not know whether anyone at the University of Texas had received a ▮▮▮▮ SSD

Board—a statement that had nothing to do with Huawei. *See id.*, ECF No. 80 (Superseding Information). As part of his plea agreement, entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Professor ███ was sentenced to time served and permitted promptly to return to his home in China. *Id.* Minute Entry (Dec. 14, 2020).

## B.    Argument

Contrary to the government's assertion, Second Circuit law does not generally favor the admissibility of the payment of attorneys' fees "as an act in furtherance of the conspiracy," Gov't Mot. at 39, or for any other purposes. None of the government's cited cases admitted attorney-fee payment information as an act in furtherance of a conspiracy. Courts have admitted attorney-fee information for other specific purposes in highly fact-specific analyses, none of which aligns with the government's asserted purpose here. *Cf. United States v. Simmons*, 923 F.2d 934, 949 (2d Cir. 1991) (relevant to whether the defendant "is the head of a criminal enterprise as defined by the RICO statute"); *In re Grand Jury Subpoena*, 781 F.2d 238, 251 (2d Cir. 1986) (relevant to whether the defendant was the head of a crime family); *United States v. Zuniga*, 312 F. App'x 653, 658–59 (5th Cir. 2009) (relevant to whether the defendant was "the organizer and leader" of the conspiracy).

The payment of Professor ███'s attorney's fees is not probative of any relevant issue. The government does not seek to introduce this evidence to prove the existence of a relationship between Professor ███ and Huawei, that through the Huawei–Xiamen University research contract, is not in dispute. The government's only stated purpose is to prove an act in furtherance of the conspiracy. Gov't Mot. at 39. But the only way that the payments to ███'s lawyers could have furthered a conspiracy is if the representation itself was intended to obstruct justice or improperly conceal information, which the government does not allege here.

42

Instead, the government would have the jury draw a general negative inference from the mere fact of the fee payment: that providing Professor ▮ with criminal defense counsel was somehow inherently nefarious or illegal. But as the Second Circuit has observed, "[s]eeking legal advice is as much a first step in demonstrating innocence or the non-existence of a problem as it is an admission of guilt." *In re Shargel,* 742 F.2d 61, 64 n.3 (2d Cir. 1984). Here, the fact that Huawei decided to provide ▮ with highly capable retained counsel—particularly given the historical contractual relationship between the parties and the overbearing nature of the government's prosecution of Professor ▮—is fully consistent with "demonstrating innocence or the non-existence of a problem." *Id.*

Even if the payment of Professor ▮'s attorneys' fees had some scant probative value (it does not), any probative value is substantially outweighed by the risk of unfair prejudice and jury confusion, as well as the likelihood of delay. *See* Fed. R. Evid. 403. The jury could well be confused into thinking that the payments for legal representation were inherently improper, which would substantially prejudice Huawei. So too would evidence that Huawei's alleged co-conspirator was separately charged in a previous case, which would likely cause the jury to draw inferences as to ▮'s guilt and, by improper inference, Huawei. *Cf. United States v. Massino*, 319 F. Supp. 2d 295, 300 (E.D.N.Y. 2004) (excluding evidence of co-conspirator's guilty plea under Rule 403 because of "enormous risk that the jury, despite a limiting instruction, would find the fact that co-defendants pleaded guilty to be probative of the defendant's culpability for the instant charges"). And to address these improper inferences, the defense would be required to introduce extensive evidence establishing why it paid Professor ▮'s attorney's fees and all of



the facts establishing that Mr. ▮▮▮▮▮'s representation was undertaken in good faith and not for any obstructive or other improper purpose, further lengthening an already lengthy trial.[13]

For these reasons, the Court should deny the government's motion to admit evidence of Futurewei's payment of Professor ▮▮'s attorney fees.

## XV. THE COURT SHOULD DENY AS MOOT THE GOVERNMENT'S MOTION TO EXCLUDE EVIDENCE OF A 2004 CYBER INTRUSION OF ▮▮▮

The government seeks to exclude evidence regarding a 2004 cyber intrusion of the ▮▮▮ network, which resulted in the misappropriation of a version of the ▮▮▮▮▮▮▮ ▮▮▮▮▮ code. Gov't Mot. at 40–41. Huawei does not intend to introduce evidence regarding the 2004 cyber intrusion or to argue that, as a result of the 2004 cyber intrusion, ▮▮▮ code was not a protected trade secret. The Court should therefore deny the government's motion as moot. *See, e.g.*, *Clanton*, 2024 WL 1072050, at \*16.

## XVI. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO ADMIT EVIDENCE OF ▮▮▮▮'S DESTRUCTION OF EVIDENCE

The government seeks to "introduce evidence of ▮▮▮▮'s [2009] effort to delete evidence of his relationship with Huawei Tech from his home computers, to prove the existence of a conspiracy between ▮▮ and Huawei Tech to steal ▮▮▮'s trade secrets." Gov't Mot. at 41–42. The government's arguments suffer from several fundamental flaws.

*First*, the government asserts that ▮▮'s alleged 2009 "effort[] to destroy evidence" is itself "probative of the existence of the conspiracy between ▮▮ and Huawei Tech," because

---

[13] It is irrelevant whether or not the fee-payment evidence can be considered "more incendiary" than other allegations in the case." *Cf.* Gov't Mot. at 39–40. The point is not that the fee-payment evidence is "incendiary"; it is whether any probative value would be substantially outweighed by dangers of unfair prejudice, confusing the issues, misleading the jury, or wasting time. For the reasons described above, any probative value of such evidence would be substantially outweighed by all of those things.

many of the 2001–03 communications summarized in the indictment were found on "the very computers on which ▇ had run the ▇ program." Gov't Mot. at 42. But the government's own evidence is that materials subject to ▇'s ▇ program were entirely obliterated from his computers without a trace.[14] The fact that Huawei-related materials were found on the same computer suggests that those files were *not* the subject of any ▇ program. And even if one speculates (without evidence) that ▇'s deletions might have included Huawei-related files, there is no evidence as to ▇'s reasons for deletion or that Huawei had any knowledge of it. In short, there is no evidence that ▇'s alleged spoliation efforts had anything to do with Huawei.

*Second*, because Huawei had nothing to do with ▇'s alleged spoliation, its probative value is non-existent and substantially outweighed by the risk of unfair prejudice to Huawei. As explained in Huawei's pending "Motion In Limine To Exclude Evidence of Post-March 2003 Conduct By ▇ Corporation Or Its Employees," the government has failed to identify *any* evidence to establish that Huawei knew of, directed, or agreed to any alleged misconduct by ▇ or his company ▇ after March 2003. *See* ECF Nos. 588 (motion), 633 (reply). In response to that motion (ECF No. 607), and in its current motion in limine (Gov't Mot. at 41–42), the government repeatedly fails to point to *any* evidence of Huawei's knowing participation in ▇'s or ▇'s alleged misconduct after March 2003, including ▇'s alleged computer wiping in 2009. In the absence of any such evidence, admission of ▇'s bad acts against Huawei would be

---

14

unfairly prejudicial by encouraging the jury to find Huawei guilty by association. *See* Fed. Rule Evid. 403; *see also, e.g., United States v. Al-Moayad*, 545 F.3d 139, 161–66 (2d Cir. 2008) (reversible error to admit evidence of bad acts by others in the absence of evidence that the defendants were knowingly involved in those acts); *United States v. Priolo*, No. 2:21-cr-566 (NJC), 2025 WL 679413, at *24–26, 28 (E.D.N.Y. Mar. 4, 2005) (evidence of alleged co-conspirator's misconduct irrelevant and inadmissible absent evidence of defendant's knowledge of or participation in that misconduct); *United States v. Wassner*, 141 F.R.D. 399, 404–05 (S.D.N.Y. 1992) (excluding evidence of separate criminal activity of unindicted co-conspirators, finding improper the government's "propos[al] to wage a trial of guilt by mere association").

The government's cases are readily distinguishable because each case involved an ongoing conspiracy in which each co-conspirator had agreed to the acts of concealment. The government cites *United States v. Eisen*, 974 F.2d 246, 269 n.8 (2d Cir. 1992) and *United States v. Potamitis*, 739 F.2d 784, 787–88 (2d Cir. 1984), for the general legal proposition that acts of concealment designed to conceal an ongoing conspiracy are acts in furtherance of that conspiracy. Gov't Mot. at 41–42. That proposition holds true only if both co-conspirators remain active members of an ongoing conspiracy, the "central objectives" of which have not yet been attained. *Grunewald v. United States*, 353 U.S. 391, 401–02 (1957); *see United States v. Floyd*, 555 F.2d 45, 48 (2d Cir. 1977), *abrogated on other grounds by United States v. Brutus*, 505 F.3d 80 (2d Cir. 2007) (statement about the need to conceal bank robbery 24 hours after it occurred was not part of the conspiracy to rob a bank). Acts of concealment—absent evidence of an ongoing conspiracy that is furthered by those acts—are not attributable to former co-conspirators. The government cannot introduce evidence of a third-party's obstructive conduct

46

without any evidence that the conduct was intended to and did further an ongoing conspiracy with the defendant.

*Third*, even though the government received ▮'s hard drive and data in 2012, it failed to turn that evidence over to the defendants until March 3, 2026, *fourteen years later*. The government's extreme delay in producing this evidence alone warrants exclusion. *See United States v. Davis*, 244 F.3d 666, 669–671 (8th Cir. 2001) (affirming exclusion of DNA evidence because report was not produced until shortly before trial); *United States v. Wang*, No. 98-cr-199 (DAB), 1999 WL 138930, at *37 (S.D.N.Y. Mar. 15, 1999) ("When material information is disclosed on the eve of trial, seven months after the Defendants' request and at least six months after the Government came into possession of the information, such delay severely limits the ability of defense counsel to investigate and present a defense at trial.").

For these reasons, and to avoid wasting the jury's time with additional fact and technical expert testimony to address an issue that has no probative value, the Court should exclude evidence of ▮'s 2009 computer deletions under Federal Rules of Evidence 401, 402, and 403.

## XVII. THE COURT SHOULD NOT PRECLUDE THE DEFENSE FROM ARGUING THAT ADMITTED EVIDENCE IS INCONSISTENT WITH CRIMINAL INTENT

The government seeks to preclude "any argument that the filing of the provisional patent either reflected the defendants' lack of criminal intent or put ▮ on notice of the trade secrets theft." Gov't Mot. at 43. Whether ▮ was "on notice" of any trade secret theft is not at issue, but Huawei's lack of criminal intent is. The Court should deny the government's motion to preclude Huawei from arguing that it lacked criminal intent based on circumstantial evidence.

The government has accused Huawei of conspiring to steal trade secrets in violation of 18 U.S.C. § 1832 and of conspiring to invest the income from that conspiracy into a RICO enterprise in violation of 18 U.S.C. § 1962(a), (d). The charges require multiple types of criminal

47

intent including proof that Huawei acted "with intent to convert a trade secret"[15]; "inten[t] … [to] injure [the] owner of that trade secret"[16] and "specific intent[] of furthering" the conspiracy's "unlawful purpose."[17]

The defense is entitled to present evidence and urge any reasonable inference from admitted evidence that negates these criminal intent elements. *See, e.g.*, *Roldan*, 2026 WL 452027, at *6 (vacating conviction based on exclusion of circumstantial evidence of defendant's lack of criminal intent); *Sabhnani*, 599 F.3d at 241–42. Likewise, the Second Circuit recognizes that intent can be proved through circumstantial evidence. *See MacPherson*, 424 F.3d 183, 189 (2d Cir. 2005). This includes evidence supporting an alternative inference negating the intent to steal.

The government cites no authority that bars a defendant from arguing reasonable inferences from admitted evidence on the question of intent. Nor does the government identify any rule that carves out patent-related evidence from these general principles. Public disclosure is inconsistent with a criminal intent to convert another's trade secret, and intent to further an unlawful purpose. The government may argue its preferred inference from the evidence, but the defense is entitled to argue from the same evidence that it did not believe it had misappropriated a trade secret. The motion should be denied.

---

[15] 18 U.S.C. § 1832(a).

[16] *Id.*

[17] Sand Modern Fed. Jury Instr. 19-6.

XVIII. **THE COURT SHOULD NOT PERMIT EVIDENCE OF HUAWEI TECH'S PURPORTED MISREPRESENTATIONS ABOUT THE REASONS FOR ITS COMMERCIAL SEPARATION FROM** ▮

The government seeks to admit evidence of Huawei's alleged misrepresentations to banks in late 2017 about which party—Huawei or ▮—initiated the decision in August 2017 to cease doing business with each other ("2017 ▮ termination evidence"). At least with respect to statements allegedly made to ▮, these statements previously formed the basis of Counts 5 and 8 of the Indictment. The government, however, decided not to pursue those counts at trial after learning that ▮ continued to do business with Huawei even after those alleged misrepresentations came to light. Having now abandoned those counts because it cannot prove them, the government belatedly presses two new theories of admissibility for the 2017 ▮ termination evidence: first, that it is supposedly "central" to the RICO reinvestment conspiracy, "completes the story" of, and is "inextricably intertwined with" the Skycom fraud allegations; and second, that it is admissible under Rule 404(b) because it shows Huawei's "motive" for committing the Skycom fraud five years earlier.[18]

Both of the government's replacement theories are meritless and the Court should reject them as an impermissible attempt to introduce pure propensity evidence. And even if the government's new theories had any probative value (which they do not), the evidence should be excluded under Rule 404(b).

A.      **The 2017** ▮ **Termination Evidence Is Not Evidence of the RICO Conspiracy Count**

The government claims that the ▮ termination evidence is "central" to the RICO conspiracy because it is part of Huawei's scheme to find banks to reinvest the proceeds of the

---

[18] The government also cites "intent, plan, absence of mistake, or lack of accident," but never explains how the evidence would be admissible for those purposes. Gov't Mot. at 46.

Skycom fraud scheme charged in other counts;[19] and because it allegedly "completes the story of the Skycom fraud" or is otherwise "inextricably intertwined with" the evidence of that alleged scheme. Gov't Mot. at 46.

Other-acts evidence is not subject to Rule 404(b) only in a narrow set of circumstances: "if it arose out of the *same* transaction or series of transactions as the charged offense, if it is *inextricably intertwined* with the evidence regarding the charged offense, or if it is *necessary* to complete the story of the crime on trial." *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (emphases added). To satisfy that standard, the government must show that the charged offense "necessarily stems from or is part and parcel of" the other-acts evidence. *United States v. Montanez*, No. 23-CR-186 (NGG), 2024 WL 4582387, at *4 (E.D.N.Y. Oct. 25, 2024) (quotation marks and brackets omitted). Other-acts evidence that is merely "relevant to show the background of the charged offense," *id.* (alterations omitted), or "establishes background and context," *United States v. Naumovski*, No. 20-CR-384 (WFK), 2023 WL 5806171, at *2 (E.D.N.Y. Sept. 7, 2023), is insufficient to satisfy the "inextricably intertwined" standard.

That standard is not met here. The 2017 ███ termination evidence—by definition—concerns interactions with banks beginning in late 2017, long after the alleged Skycom scheme was completed. *Compare* Indictment ¶¶ 83–86 (describing the "Continued Scheme to Defraud Financial Institutions" in 2017), *with* Indictment ¶¶ 70–79 (describing "The SKYCOM Fraudulent Scheme" from 2007 to 2014). The Indictment's counts charging the Skycom scheme

---

[19] The government's RICO argument is not easy to follow, but it appears to be asserting that the 2017 ███ termination evidence is relevant to a scheme to reinvest proceeds of the Skycom fraud counts in the alleged victim banks. The argument states that Huawei was attempting to "expand its relationships with other global financial institutions" so it could "receive income indirectly in the form of cost savings and the value of continued banking services." Gov't Mot. 629 at 46. The only other allegations that could have resulted in "cost savings and the value of continued banking services" are the Skycom allegations.

all end in May 2015.[20] Huawei could not have been seeking to mislead banks in late 2017 so that it could reinvest the proceeds of an alleged Skycom scheme that had been completed over two years prior. Nor is the evidence "necessary to complete the story" of the earlier allegations, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)—a story about different alleged misrepresentations that had been completed years before. For the same reason, allegations of actions taken years apart are not "intertwined," let alone inextricably so. *See id.* (admitting evidence of other acts as "inextricably intertwined" with the charged conspiracy in part because it "occurred at about the same time" as the other conspiratorial conduct). And the argument that the 2017 ████ termination evidence is relevant to provide "background and history" for the Skycom allegations, *United States v. Langford*, 990 F.2d 65, 70 (2d Cir. 1993), is chronologically backward. Indeed, Huawei understands that the record is undisputed that ████ never linked the 2017 termination decision to Huawei's earlier relationship with Skycom.

Even if the government were right that the 2017 allegations were relevant to the RICO conspiracy count because Huawei was generally seeking banking partners to "receive" proceeds of prior crimes, Gov't Mot. at 46, the evidence should still be excluded under Rule 403, because the government could easily establish that Huawei was seeking banking partners without introducing evidence of additional alleged misrepresentations. *See Old Chief v. United States*, 519 U.S. 172, 183 (1997) (holding that courts should "discount the [probative] value" of

---

[20] Although the government has stated that it intends to expand the time frame for the wire fraud conspiracy in the Indictment to May 2018, it has not done so. As a result, this evidence cannot be admissible by reference to those expanded dates. In any event, the only evidence cited in the *Chalmers* roadmap for the extension is a purported misrepresentation in response to an inquiry about *this litigation*—not Skycom. That email largely offers a "no comment." The government cannot plausibly claim that its citation to that email links the Skycom scheme to the 2017 ████ termination evidence.

evidence if less prejudicial alternative evidence has "substantially the same or greater probative value.").

### B.    The 2017 ████ Termination Evidence Is Not Proper Rule 404(b) Evidence

The government's Rule 404(b) argument similarly fails. Rule 404(b) provides that evidence of another bad act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but is admissible for other purposes, such as "proving motive." Fed. R. Evid. 404(b). As with the other-acts doctrine, the standard for admissibility is demanding. Cases warn that "the government may not use motive … as a pretext to submit propensity evidence to the jury." *United States v. Basciano*, No. 03-CR-929 (NGG), 2006 WL 385325, at *4 (E.D.N.Y. Feb. 17, 2006). Instead, a 404(b) proponent "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Franchitti v. Cognizant Tech. Sols. Corp.*, No. 21-CV-2174 (JMF), 2026 WL 504598, at *1 (S.D.N.Y. Feb. 24, 2026) (quoting *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000)).

The government argues that the 2017 statements are relevant to establish Huawei's motive for allegedly misrepresenting its relationship to Skycom in 2012 and 2013, because they supposedly demonstrate Huawei's "commercial reliance on international banks' dollar clearing services" so that Huawei "could repatriate its funds from commercial activities in sanctioned countries such as Iran." Gov't Mot. at 46.

The government's Rule 404(b) rationale fails for three reasons. First, it has little to no probative value. Huawei's search for banking partners in 2017 says nearly nothing about its need for banking partners in 2012 and 2013. Moreover, whereas ████ did (voluntarily) manage Skycom's Iran business in 2012 and 2013, Huawei was not meeting with ██, ███, or ██ in

52

2017 so that it could "repatriate funds from … sanctioned countries such as Iran." *Id.* To the contrary, there is no allegation, much less evidence, that Huawei made any effort to involve those banks in its sanctioned country business in 2017 or later.

Second, to the extent the government is relying on a generalized motive to obtain banking services in 2017 as proof of intent to defraud in 2012 and 2013, that is simply propensity evidence by another name. Indeed, the same argument could be made in any propensity case: if a person commits the same crime twice, the government could always say he had the same motive both times, such that evidence of the first crime is "motive evidence" of the second. Courts reject that kind of boot-strapping argument. *See Basciano*, 2006 WL 385325, at *4 ("The Government offered no authority, nor is this court aware of any, that would support its contention that motive is a proper purpose to prove that Basciano's alleged motive in an uncharged act is admissible to prove Basciano's motive in a charged act."); *Franchitti*, 2026 WL 504598, at *1 (other-acts evidence inadmissible for purposes of proving motive when "those purposes themselves depend on propensity inferences").

Third, as with the proof-of-the-RICO argument, if the government really sought only to prove that Huawei was seeking banking partners in 2017, it could do so through entirely non-prejudicial evidence, rather than through allegations of fraud. For example, it could introduce evidence of the relevant Huawei-bank meetings without seeking to admit alleged false statements made at those meetings. *See United States v. Crumble*, No. 18-cr-32 (ARR), 2018 WL 2016852, at *2 (E.D.N.Y. May 1, 2018) (holding that prior conviction was inadmissible to prove motive because "motive and intent are established by the facts of the alleged crimes themselves").

Even if this evidence had some limited non-propensity probative value, that value would be "substantially outweighed by its potential for unfair prejudice," *Huddleston v. United States*,

53

485 U.S. 681, 691 (1988), given the likelihood the evidence would be heard by the jury as evincing Huawei's propensity to lie. And to mitigate that prejudice, Huawei would be forced to introduce exculpatory evidence regarding the 2017 statements, yielding an unnecessary sideshow regarding an uncharged crime. The Court should exclude this evidence and allow the jury to focus on the evidence relevant to the charged conduct in an already complex and sprawling case.

### XIX.  THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO USE ALIASES AND LIMIT CROSS-EXAMINATION AND DENY THE GOVERNMENT'S REQUEST TO ADMIT HEARSAY TESTIMONY

Huawei has submitted a sealed letter and proposed ex parte submission to address the government's nineteenth motion in limine and related request to admit hearsay testimony under the excited utterance exception. For the reasons stated in those submissions, the Court should deny the government's motion.

### XX.  THE COURT SHOULD DENY THE GOVERNMENT'S UNNECESSARY AND OVERBROAD MOTION TO PRECLUDE EVIDENCE, ARGUMENT, OR QUESTIONING ABOUT CLASSIFIED INFORMATION OUTSIDE THE SCOPE OF CIPA

The government seeks to preclude defense counsel from advancing "any evidence, argument, or questioning about classified information during trial outside the scope of the Classified Information Procedures Act ('CIPA')." Gov't Mot. at 52. The government's motion is unnecessary: Huawei does not intend to ask about or disclose any classified information at trial and will invoke CIPA Section 5 only if the need arises.

To the extent the government's motion goes further and seeks to bar the defense from making legitimate arguments that do not seek to disclose classified information, the government's request is overbroad and improper. *See* Gov't Mot. at 54. The defense is entitled to, and likely will, argue that the government's failure to adduce sufficient evidence despite an obviously exhaustive investigation is strong evidence that Huawei did not in fact commit the crimes that the government has accused it of. *See United States v. Bautista,* 252 F.3d 141, 145

(2d Cir. 2001) ("The absence of evidence in a criminal case is a valid basis for reasonable doubt."); *Kyles*, 514 U.S. at 446 ("'A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant.'" (quoting *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986)).

Judge Cogan's decision in *United States v. Alshahhi*, 628 F. Supp. 3d 449, 454 (E.D.N.Y. 2022), illustrates the distinction between attempting to disclose classified information and arguing that the government's failure to adduce proof of guilt supports a not guilty verdict. In that case, the government accused the defendant of assisting the United Arab Emirates in an unlawful scheme to infiltrate and influence the U.S. government. *Alshahhi*, 628 F. Supp. 3d at 454. Notwithstanding that the government might have had inculpatory classified evidence that it chose not to present to the jury, Judge Cogan held that the defense could argue in closing that "one would expect that if [the defendant] was as deeply involved in this as the Government contends, there would be abundant documentation showing you that. But the Government hasn't shown you any such thing." *Id.* Likewise, the court held that the defendant could "ask the appropriate witnesses whether they 'know of any evidence produced to the defense that shows UAE or US officials knew [the defendant] was a UAE agent,'" and thereby emphasize to the jury "that he believes [that] critical evidence is absent from the Government's case." *Id.*

Huawei retains the same rights here to demonstrate through questioning and argument that "critical evidence is absent from the government's case." No such questioning or argument will result in the disclosure of any classified information if the government adequately prepares its witnesses to answer the questions they are asked and not disclose nonresponsive classified information. By contrast, to the extent the government seeks to preclude Huawei from questioning witnesses or making arguments about gaps in the government's case or the failure of

55

its investigation to yield inculpatory evidence, it impermissibly seeks to use CIPA as both a sword and a shield, and violates Huawei's constitutional right to hold the government to its burden of proof.

## XXI.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION "TO PRECLUDE EVIDENCE, ARGUMENT, OR QUESTIONING INCONSISTENT WITH FACTS KNOWN TO DEFENSE COUNSEL, INCLUDING FACTS MADE KNOWN IN UNCLASSIFIED DISCOVERY" AS UNNECESSARY AND IMPROPER

The government moves to preclude defense counsel from "offering evidence, advancing arguments, or questioning witnesses in ways inconsistent with their prior statements or that are otherwise factually inaccurate." Gov't Mot. at 54. The motion should be denied because it is unnecessary, vague, and improperly addresses only defense counsel and not the government.

First, the motion is unnecessary. Defense counsel are bound by the New York Rules of Professional Conduct, and a motion in limine is not an appropriate vehicle to demand that counsel comply with obligations to which they are already subject. Courts in this district and elsewhere regularly decline to enter such prophylactic orders. *See, e.g.*, *Kimzey v. Diversified Servs., Inc.*, No. 6:15-cv-01369, 2017 WL 131614, at *2 (D. Kan. Jan. 13, 2017) ("The court anticipates that all counsel will behave professionally, and finds no reason for an explicit order directing that counsel comply with the rules of decorum."); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (similar); *Fields v. Bayerische Motoren Werke Aktiengesellschaft*, 594 F. Supp. 3d 530, 531–32 (E.D.N.Y. 2022) (similar).

Second, the motion is impermissibly vague. The government identifies no specific evidence, argument, or witness statement that it believes the defense knows to be false. Orders excluding broad, unspecific categories of conduct are disfavored. *See, e.g.*, *Nat'l Union*, 937 F.

56

Supp. at 287 (where a "motion *in limine* lacks the necessary specificity," the court should reserve judgment until trial).

Third, to the extent the Court is inclined to enter any order at all, it must apply equally to both parties. The government, too, is bound by the Rules of Professional Conduct—and is in fact subject to heightened obligations under Rule 3.8 ("Special Responsibilities of Prosecutors and Other Government Lawyers").

The government's closing reference to the "contents of declassified discovery produced pursuant to the Court's CIPA Section 4 ruling" is head-scratching. Gov't Mot. at 55. Initially, the government has refused (citing unspecified restrictions) to confirm to the defense *which* disclosure it produced pursuant to the Court's CIPA ruling. In any event, no law or ethical rule requires a defendant to agree with the government's view of the facts—all the more so where the government has elected to employ CIPA to *withhold* the underlying evidence and mask its sources.

Dated: March 13, 2026

Respectfully submitted,

| /s/ *David Bitkower* | /s/ *Douglas A. Axel* | /s/ *Brian M. Heberlig* |
|---|---|---|
| David Bitkower | Douglas A. Axel | Brian M. Heberlig |
| Matthew S. Hellman | Michael A. Levy | Ryan P. Poscablo |
| Katya Jestin | Ellyce R. Cooper | Julia Gatto |
| JENNER & BLOCK LLP | Frank R. Volpe | William L. Drake |
| 1099 New York Avenue, NW | Melissa Colón-Bosolet | Jessica I. Rothschild |
| Washington, D.C. 20001 | Daniel J. Hay | STEPTOE LLP |
| (202) 639-6048 | SIDLEY AUSTIN LLP | 1114 Avenue of the Americas |
| dbitkower@jenner.com | 787 7th Avenue | New York, NY 10036 |
| | New York, NY 10019 | (212) 506-3900 |
| | (212) 839-5300 | rposcablo@steptoe.com |
| | daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

57