NJM:AAS/MS/TGS/MJC/CF
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

18-CR-457 (S-4) (AMD)

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE*
TO ADMIT CERTAIN EVIDENCE AND PRECLUDE CERTAIN EVIDENCE AT TRIAL

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and Export
Control Section
National Security Division
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
MATTHEW SULLIVAN
Assistant U.S. Attorneys

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

CHRISTOPHER FENTON
Trial Attorney

    (Of Counsel)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 1

I.     The Court Should Admit Evidence of Huawei Tech's Misrepresentations
       in Victim Bank Reports, Emails, and Questionnaires, and Preclude
       Huawei Tech from Offering Self-Serving or Other Hearsay Contained in
       the Same Documents................................................................................................... 1

       A. Background ....................................................................................................... 2

       B. Analysis............................................................................................................. 5

II.    The Court Should Admit ████████████ Prior Trial Testimony ............... 11

       A. Background ..................................................................................................... 11

       B. Analysis........................................................................................................... 12

III.   The Court Should Admit Evidence of Huawei Tech's Failure to Comply
       with a ████████████ .................................................................................... 15

       A. Background ..................................................................................................... 15

       B. Analysis........................................................................................................... 20

IV.    The Court Should Admit Evidence of the Government's Efforts to Procure
       the Trial Testimony of Certain of Huawei's PRC-Based Employees................... 21

       A. Background ..................................................................................................... 22

       B. Consciousness of Guilt ................................................................................... 24

       C. Missing Witness Instruction ........................................................................... 25

REQUEST FOR SEALING....................................................................................................... 26

CONCLUSION.......................................................................................................................... 26

TABLE OF AUTHORITIES

Page(s)

Cases

*Crawford v. Washington*,
  541 U.S. 36 (2004) ........................................................................................................ 6

*Davis v. Washington*,
  547 U.S. 813 (2006) ...................................................................................................... 6

*Lugosch v. Pyramid Co.*,
  435 F.3d 110 (2d Cir. 2006) ....................................................................................... 26

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988) ...................................................................................... 25

*Pappas v. Middle Earth Condominium Ass'n,*
  963 F.2d 534 (2d Cir. 1992) .................................................................................. 12, 13

*United States v. Amodeo,*
  44 F.3d 141, 147 (2d Cir. 1995) ................................................................................. 26

*United States v. Aref,*
  533 F.3d 72 (2d Cir. 2008) ......................................................................................... 26

*United States v. Blake,*
  195 F. Supp. 3d 605 (S.D.N.Y. 2016) .......................................................................... 8

*United States v. Brashier,*
  548 F.2d 1315 (9th Cir. 1976) .................................................................................... 24

*United States v. Chang,*
  No. 18-CR-681 (NGG), 2024 WL 3303717 (E.D.N.Y. July 3, 2024) ......................... 9

*United States v. Cirillo,*
  468 F.2d 1233 (2d Cir. 1972) ................................................................................ 24, 25

*United States v. Dupree,*
  706 F.3d 131 (2d Cir. 2013) ......................................................................................... 7

*United States v. Fox,*
  No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025) ................... 6, 7

*United States v. Harper*,
  No. 05-CR-6068, 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009) ................................... 9

*United States v. Jackson,*
    180 F.3d 55 (2d Cir. 1999) ................................................................................... 10

*United States v. Jackson,*
    196 F.3d 383 (2d Cir. 1999) ................................................................................. 10

*United States v. James,*
    No. 02-CR-778 (SJ), 2007 WL 2702452 (E.D.N.Y. Sept. 12, 2007) ..................................... 10

*United States v. Johnson,*
    507 F.3d 793 (2d. Cir. 2007) ............................................................................. 9. 20

*United States v. King,*
    134 F.3d 1173 (2d Cir. 1998) ............................................................................ 13, 14

*United States v. Komasa,*
    767 F.3d 151 (2d Cir. 2014) ................................................................................... 6

*United States v. Mahaffy,*
    No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007) ....................................... 9

*United States v. Marin,*
    669 F.2d 73 (2d Cir. 1982) ..................................................................................... 8

*United States v. Mastropieri,*
    685 F.2d 776 (2d Cir. 1982) ................................................................................... 20

*United States v. McDaniel,*
    398 F.3d 540 (6th Cir. 2005) ................................................................................... 9

*United States v. Mittelstaedt,*
    31 F.3d 1208 (2d Cir. 1990) ............................................................................... 25, 26

*United States v. Nichols,*
    912 F.2d 598 (2d Cir. 1988) ................................................................................... 25

*United States v. Norris,*
    873 F.2d 1519 (D.C. Cir. 1989) ................................................................................ 26

*United States v. Orellana,*
    341 F. App'x 501 (11th Cir. 2009) ............................................................................. 14

*United States v. Pedroza,*
    750 F.2d 187 (2d Cir. 1984) ................................................................................... 7

*United States v. Persico,*
    No. 04-CR-911 (SJ), 2006 WL 3246922 (E.D.N.Y. Nov. 8, 2006) ....................................... 10

*United States v. Roldan-Zapata*,
  916 F.2d 795 (2d Cir. 1990).............................................................................. 20

*United States v. Rollins*,
  862 F.2d 1282 (7th Cir. 1988)........................................................................... 25

*United States v. Rom*,
  528 F. App'x 24 (2d Cir. 2013)............................................................................ 6

*United States v. Terry*,
  702 F.2d 299 (2d Cir. 1983).............................................................................. 10

*United States v. Vallee*,
  304 F. App'x 916 (2d Cir. 2008)........................................................................... 7

*United States v. Gonzalez*,
  399 F. App'x 641 ................................................................................................. 10

*Walker v. City of Buffalo*,
  No. 22-CV-520 (MAV), 2025 WL 828242 (N.D.N.Y. Mar. 17, 2025)................... 12

Federal Statute

18 U.S.C. § 1512(a)(1)(A) ....................................................................................... 24

Federal Rules

Fed. R. Crim. P. 6(e) ................................................................................................ 26

Fed. R. Evid. 106 .................................................................................................. 9, 10

Fed. R. Evid. 401 ...................................................................................................... 12

Fed. R. Evid. 801(c)................................................................................................... 7

Fed. R. Evid. 801(d)(2) .................................................................................... passim

PRELIMINARY STATEMENT

The government respectfully submits these supplemental motions *in limine* to admit certain evidence at trial against defendants Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd. ("Huawei Device"), Huawei Device USA Inc. ("Huawei Device USA"), and FutureWei Technologies, Inc. ("FutureWei," and, collectively, "Huawei") and to preclude the defendants from admitting certain evidence or conducting related questioning of witnesses.[1]

Specifically, the government moves for leave to: (1) admit statements attributed to Huawei Tech in victim bank reports, internal bank communications, and sanctions compliance questionnaires, and to preclude Huawei Tech from admitting self-serving and other second-level hearsay in these same documents; (2) admit a FutureWei employee's prior testimony in a civil trial; (3) admit evidence of Huawei Tech's failure to adhere to this Court's order to comply with a ██████████████ ; and (4) admit evidence of the government's efforts to procure the testimony of Huawei employees based in the People's Republic of China ("PRC").[2]

ARGUMENT

I.   The Court Should Admit Evidence of Huawei Tech's Misrepresentations in Victim Bank Reports, Emails, and Questionnaires, and Preclude Huawei Tech from Offering Self-Serving or Other Hearsay Contained in the Same Documents

The Court should admit statements attributed to Huawei Tech in certain records created by victim banks, namely (1) reports assessing the reputational risk of retaining Huawei as

---

[1]   The government will soon move *in limine* regarding witness-specific issues identified while preparing for trial, such as preclusion of unfairly prejudicial topics of impeachment.

[2]   In its letter seeking leave to file the instant motions, the government indicated that it would seek to preclude certain evidence, argument, and questioning regarding any investigation by the Office of Foreign Assets Control ("OFAC") of Huawei's alleged sanctions violations. (ECF No. 684.)  The government is continuing to evaluate this potential motion and will again seek leave of the Court should it decide to proceed.

1

a client, (2) internal emails concerning, among other things, the banks' responses to news reports about Huawei, and (3) sanctions compliance questionnaires reflecting information collected from Huawei Tech.  The government intends to offer these statements not for their truth but to prove their falsity, effect on the victim banks, and Huawei Tech's state of mind.  Separately, the Court should preclude Huawei Tech from admitting its own statements or other second-level inadmissible hearsay contained in these same documents.

A.    Background

Between approximately 2011 and early 2013, various news organizations reported on Huawei's conduct in Iran, including that it enabled the Iranian government to conduct domestic surveillance and owned and operated Skycom as an Iran-based subsidiary.  (*See* S-4 Ind. ¶¶ 70-71.)  Following these news reports, Huawei Tech employees communicated with the victim banks, generally denying the allegations and providing assurances regarding Huawei Tech's purported lack of a shareholder relationship with Skycom, compliance with U.S. sanctions, and commitment to not route Iran-related payments through the victim banks.  (*See id.* ¶ 72.)  These statements were untrue and are among the misrepresentations underlying the bank and wire fraud charges.  (*See id.* ¶¶ 96-103.)

In response to the media allegations, the victim banks created reports that catalogued aggravating and mitigating reputational risk factors relevant to the banks' decisions about whether to retain Huawei Tech as a client.  The government expects to admit testimony that making such reports was a regularly conducted activity of the victim banks, which required bank employees to obtain information from Huawei Tech.  A representative example is a November 2013 report authored by ███████, ██████ relationship manager with Huawei Tech—*i.e.*, the banker primarily responsible for interfacing with Huawei Tech—which states:

2

Pursuant to the news release, we followed up on this matter with Huawei and obtained a formal response from Huawei as follow[s]:

"Huawei confirms that Skycom is a business partner of Huawei and works with Huawei in sales and services in Iran and Huawei once owned shares in Skycom and ███████████ sits on the board of Skycom. Huawei has sold all its shares in Skycom and ████████ has relegated all her duties in Skycom and now Huawei operates their remaining business in Iran via Huawei['s] local subsidiary in Iran. Huawei has sold out all its shareholdings in Skycom by Dec 2009. Huawei conducts normal business in Iran and provides civilian telecommunication solutions in line with global standards (e.g. ITU/3GPP). Huawei observed all sanctions and regulations imposed under UN, EU and USA, where its current business complies with the relevant trade export regulation. Huawei continue[s] to work with Department of Commerce of USA annually where it will ensure it conforms to the applicable laws and regulations. Huawei would also maintain dialogue with DOS to update their compliance achievements annually.

In Iran 2011, Huawei has made a public announcement that Huawei [] has placed restrictions of its business in Iran and both the volume and value has continued to run down. Its remaining in Iran is purely to service its contractual obligation which is catering for civilian usage. Huawei has never and will never engage in any technology equipment that will be used in military or for monitoring or tracking purpose in the Iranian market. Huawei has continued to observe the regulatory development and has not and will not deal with any blacklisted entities."

GX-21611-R at 4-5. The representations attributed to Huawei Tech in this report and others were relied upon by the victim banks when assessing whether to continue their banking relationships with Huawei.

Similarly, multiple internal emails contain statements attributed to Huawei Tech within email threads relating to the victim banks' responses to the news reports. For example, on January 14, 2013, ██████ sent the email below to other ██████ employees:

3



GX-21355 at 1-2. Similarly, in April 2013, ███ emailed other ███ employees, "Huawei has confirmed no Iran related transactions have been done with [the Skycom] account, which is in line with our internal investigation. Nonetheless, they agreed to close this account as per our request." GX-21345-R at 1. Similar emails contain Huawei Tech's responses to questions from the victim banks, which are interlineated next to the original questions. For example:

4

GX-21354 at 3.

Additionally, the victim banks routinely completed sanctions compliance questionnaires to assess sanctions risk posed by their clients, including Huawei Tech. These documents asked a standard set of questions to benchmark the client's exposure in sanctioned countries, which victim bank employees would answer by obtaining responsive information from the client. These documents contain statements that are attributed to Huawei Tech which repeat the same misrepresentations at issue in the bank and wire fraud charges. For example, a 2015 sanctions compliance questionnaire from ████████████████████ states, "Client has consistently conveyed the message that all of their sales made to sanction[ed] countries are conducted within OFAC and Sanction Guidance." GX-22602 at 3. Another such ███ questionnaire from 2017 states: "Huawei confirms despite having exposure in sanction countries, all their dealings and business continue to operate within the guidance of trade sections and relevant US/EU sanction policies. The equipment[] provided to sanctioned countries are for civilian and commercial usage only." GX-22603 at 8.

B.    Analysis

The types of documents described above should be admitted because they are records of regularly conducted activity pursuant to Federal Rules of Evidence 803(6)(D) and 902(11). The statements therein attributed to Huawei Tech are admissible non-hearsay because they will not be offered for their truth; indeed, the government intends to prove their falsity. At the same time, however, the Federal Rules of Evidence do not permit Huawei Tech to introduce its own statements or other second-level hearsay recorded in the same documents that do not satisfy a hearsay exception.

*First*, the documents at issue are records of regularly conducted activity which the government intends to authenticate by certification. Under Rule 803(6)(D), the conditions

5

required to satisfy the business records hearsay exception may be shown by the testimony of a custodian or another qualified witness, or by a certification that complies with Rule 902(11). Courts in the Second Circuit routinely apply these provisions to authenticate and admit certified business records at trial. *See, e.g.*, *United States v. Komasa*, 767 F.3d 151 (2d Cir. 2014) ("Rules 902(11) and 803(6) are [] designed to work in tandem. Rule 902(11) was added to create 'a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness.'" (quoting Fed. R. Evid. 902(11))); *United States v. Rom*, 528 F. App'x 24, 27 (2d Cir. 2013) ("Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one."); *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *9 (E.D.N.Y. July 23, 2025) (recognizing that the proponent may satisfy the business records foundational conditions by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification). This Court should do the same, which overcomes the first level of hearsay and enables the government to admit any otherwise-admissible contents of the reports.

*Second*, the statements attributed to Huawei Tech within the documents are admissible non-hearsay because they will not be offered for their truth.[3] As alleged in the Fourth Superseding Indictment, the government intends to prove that these statements were false. (*See* S-4 ¶ 72.) The government will therefore offer the statements attributed to Huawei Tech to prove their falsity, as well as their effect on the victim banks and to show that Huawei Tech acted with the intent to deceive. "Where the proponent offers records into evidence to prove the falsity of the

---

[3]    Admission of Huawei Tech's statements in these documents would not violate the Confrontation Clause because (1) they are the defendant's own statements, (2) they are not testimonial; and (3) they are non-hearsay. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause" (citing *Crawford v. Washington*, 541 U.S. 36, 51 (2004)).

statements therein or to link the records to the defendant, courts within the Second Circuit admit such records into evidence because they are not offered for the truth of the matters asserted in the records." *Fox*, 2025 WL 2076664, at \*9 (citing *United States v. Pedroza*, 750 F.2d 187, 203 (2d Cir. 1984) (clarifying that a statement offered "for its patent falsity" is not hearsay)); *see also* Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). Likewise, "a statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013). Nor is a statement offered to show the defendant's state of mind. *See United States v. Vallee*, 304 F. App'x 916, 919 (2d Cir. 2008) ("The testimony at issue was not hearsay because it was not admitted for the truth . . . but rather as evidence of [the defendant's] state of mind.").

Separately, the Court should preclude Huawei Tech from admitting the statements of its own employees or agents, victim bank employees, or any other second-level hearsay contained in the victim bank reports, emails, and questionnaires because such statements would constitute hearsay without any exception.[4]

For example, during the Rule 15 deposition of ███████, a former ███, executive, Huawei Tech sought to introduce Huawei Tech statements contained in business records that plainly constituted second-level hearsay for which there is no exception. One representative example concerns the below-portion of an ███ report regarding reputational risks the bank associated with continuing to deal with Huawei Tech, including prior allegations of IP theft:

---

[4] During the Rule 15 depositions authorized by the Court, Huawei Tech repeatedly sought to introduce self-serving and other second-level hearsay from victim bank reports, emails, and questionnaires. The government objected to the introduction of such statements. Should Huawei Tech ultimately seek to admit these portions of the depositions at trial, the government will move the Court to preclude them from doing so for the reasons stated in this section.



GX 21348-3 at 6. After reading this portion of the report into the record, defense counsel proceeded to ask the witness questions about self-serving hearsay to which the government objected on hearsay and other grounds:

> Q. Okay, so from this you knew that Huawei denied stealing trade secrets from ▮▮▮▮ ▮
> MR. COHEN: Same objection. And hearsay.
> **A. I knew that. But as I said, everything in here is a factor in making a decision. This wasn't a big factor in my mind.**
> Q. It wasn't a big factor; it occurred ten years before, right?
> A. In ▮▮▮.
> Q. In ▮▮▮. And as the report indicated, Huawei brushed that aside and, as the report indicated, spent substantial sums on patent development and R&D, right?
> MR. COHEN: Same objection.

At trial, should Huawei Tech seek to admit these portions of the ▮▮▮ deposition, or to admit any other hearsay within victim bank reports, emails, and questionnaires for which there is no applicable exception, the Court should preclude them from doing so. It is well established that a defendant generally is prohibited from introducing its own out-of-court statements at trial. *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("[W]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y.

8

2016) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay." *United States v. Mahaffy*, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007). Were the law otherwise, a defendant "could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Nor may Huawei Tech introduce its own statements pursuant to the rule of completeness without complying with its strict terms. "Under the rule of completeness, '[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.'" *United States v. Chang*, No. 18-CR-681 (NGG), 2024 WL 3303717, at *5 (E.D.N.Y. July 3, 2024) (citing Fed. R. Evid. 106).

Self-serving statements are not admissible by a defendant unless "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence." *United States v. Harper*, No. 05-CR-6068, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009). Accordingly, the Second Circuit has excluded hearsay statements offered by a defendant that, by their omission, do not distort the admitted statements. *See United States v. Johnson*, 507 F.3d 793, 796 (2d. Cir. 2007) (affirming district court's decision to exclude portions of confession that did not explain the admitted portion or place the admitted portion in context). As the Second Circuit has explained, a defendant may not introduce other parts of the same statement offered in part by the government unless the defendant makes a proper showing that the statements he seeks to

9

introduce have a separate basis for admission. *See United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 199), *on reh'g*, 196 F.3d 383 (2d Cir. 1999) (rejecting claim under the completeness doctrine where "the portions of the tape proffered by [defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay"). In sum, the completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Johnson*, 507 F.3d at 796. Because "Rule 106 [of the Federal Rules of Evidence] does not render admissible evidence that is otherwise inadmissible," *United States v. Terry*, 702 F.2d 299, 314 (2d Cir. 1983), the Court should preclude Huawei Tech from attempting to admit its own statements under Rule 106, *see United States v. Gonzalez*, 399 F. App'x 641, 645 (noting that the rule of completeness cannot be used as a "mechanism to bypass [evidentiary] rules"), including those contained in the victim bank reports, emails, and questionnaires at issue.

Finally, Huawei Tech may not admit the statements of its employees or agents under Federal Rule of Evidence 801(d)(2)(D). Such statements are not an "opposing party" statement as to a defendant. In a similar context, for example, courts have held that the "co-conspirator exception is a one-way street down which only the government may travel." *United States v. Persico*, No. 04-CR-911 (SJ), 2006 WL 3246922, at *1 (E.D.N.Y. Nov. 8, 2006); *see also United States v. James*, No. 02-CR-778 (SJ), 2007 WL 2702452, at *1 (E.D.N.Y. Sept. 12, 2007) ("[A co-conspirator statement made] during the course and in furtherance of the conspiracy is one type of '[a]dmission by party opponent' defined as nonhearsay, but only if 'offered against' the party. The statement of a conspirator, offered for its truth by a co-conspirator, does not fall within this Rule."). The same is true of party admissions.

10

II.     The Court Should Admit ███████████████ Prior Trial Testimony

The government anticipates admitting at trial certain prior testimony by employees of the defendants given in connection with underlying civil litigations, as statements of a party opponent in a representative or employee capacity.  *See* Fed. R. Evid. 801(d)(2)(A), (D).  Below, the government seeks pretrial admission of a specific employee's prior testimony—that of FutureWei employee ███████████ in ████████████████████████████ ████████████████████████ (the "██████ trial").

A.     Background

In May 2015, ███████████████████████ filed suit against Huawei Tech, Huawei Technologies USA, Inc., FutureWei, and ██████ for the misappropriation of certain of ████████ antenna design-related trade secrets, namely, its confidential and proprietary concept of ████████████████ .  This same theft is part of the scheme to misappropriate intellectual property alleged in Count Two of the Fourth Superseding Indictment.  (S-4 Ind. ¶¶ 6-15, 28-32, 91-93.)  In furtherance of the scheme, Huawei is alleged to have, among other things, "filed a provisional patent application with the U.S. Patent and Trademark Office that used and . . . misappropriated [████████ trade secret information" regarding ██████ (*Id.* ¶ 93(d).)  ██████████ is listed as the "inventor" of the allegedly misappropriated intellectual property at issue in the provisional patent application.  *See* GX 13620.

The ██████ trial began in March 2018.  All of the defendants, including ████████ , were represented by the same counsel—Steptoe & Johnson LLP ("Steptoe"), which also represents Huawei and Wanzhou Meng in this case.  ██████ testified for approximately a day and a half regarding actions he took in his capacity as a principal engineer for FutureWei, particularly with respect to his interactions with ██████ and the events surrounding his filing of the provisional

11

patent application that allegedly incorporated ███████ trade secrets.  While ████████ was testifying on redirect—after Huawei had cross-examined him—the parties reached a confidential settlement.

████████ resides in the United States, and the government intends to call him as a witness at trial.

B.    Analysis

████████ prior testimony is admissible under the Federal Rules of Evidence.

As a starting point, ████████ prior testimony is relevant.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action."  Fed. R. Evid. 401.  ████████ was FutureWei's main point of contact with ████████ and claimed to have invented the intellectual property that the government alleges was misappropriated from ████████  There can be no doubt that ████████ prior testimony regarding these issues is highly relevant evidence.

████████ prior testimony is not hearsay because it is admissible pursuant to Rule 801(d)(2)(D) as a statement of an agent or employee.  Under Rule 801(d)(2)(D), an out-of-court statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D); *see Walker v. City of Buffalo*, No. 22-CV-520 (MAV), 2025 WL 828242, at *20-22 (N.D.N.Y. Mar. 17, 2025) (holding that expert witness's prior testimony is not hearsay under Rule 801(d)(2)(D)).  A party seeking to admit a statement under Rule 801(d)(2)(D) must establish: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency."  *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534 at 537-38 (2d Cir. 1992) (internal citations omitted).

Courts addressing the admissibility of agent or employee statements under Rule 801(d)(2)(D) have focused on whether the statement relates to the agent or employee's responsibilities and whether the interests of the employer and the agent or employee are divergent at the time of the statement.   For example, the Second Circuit has explained that "Section 801(d)(2)(D) broadens the prior definition of admissible statements of agents from statements 'made by the agent acting in the scope of his employment' to statements 'related to a matter within the scope of the agency or employment.'"   *United States v. King*, 134 F.3d 1173, 1174 n.1 (2d Cir. 1998).  The Second Circuit has also recognized that Rule 801(d)(2)(D) does not permit an agent's or employee's statements to be imputed to the principal if the parties have conflicting litigation positions.   *Id.* at 1176.  Notably, the Second Circuit has explained that "admissibility under this rule should be granted freely."  *Pappas*, 963 F.2d at 537; *see also* Fed. R. Evid. 801(d)(2), advisory comm. notes (calling for "generous treatment of the avenue of admissibility" for admissions in general).

▮▮▮▮ prior testimony is admissible against FutureWei under Rule 801(d)(2)(D) because (1) the requisite agency or employment relationship existed between ▮▮▮▮ and FutureWei during his testimony, (2) the prior testimony relates to ▮▮▮▮ responsibilities as an agent and employee of FutureWei, and (3) ▮▮▮▮ interests at the time of his prior testimony did not conflict with those of FutureWei (or Huawei Tech).

*First*, an employee (and agency) relationship existed between ▮▮▮▮ and FutureWei.  As ▮▮▮▮ testified, he was, at the time of his prior testimony, employed by FutureWei as a principal engineer, and had been since 2008.  (*See* Ex. A at 40:15-23.)

*Second*, the substance of ▮▮▮▮ testimony directly relates to his work as a principal engineer for FutureWei.  It details, among other things, his meetings and discussions with

13

███ as a potential business partner of FutureWei, how ███ shared confidential and proprietary information regarding ███ with FutureWei pursuant to a non-disclosure agreement, and how he included certain of that information in the provisional patent application, which lists him as the inventor of the concepts described in the application. As explained above, the question is not whether ███ testimony was made within the scope of his employment or agency relationship with FutureWei, but instead whether that testimony *related to* a matter within the scope of the employment or agency relationship. *See King*, 134 F.3d at 1174 n.1. ███ testimony regarding ███, ███, and the provisional patent application clearly were about—and thus related to—his employment.

*Third,* ███ and FutureWei did not have conflicting litigating positions during the ███ trial. In fact, ███ interests were so closely aligned with FutureWei's (and Huawei Tech's) that they shared the same defense counsel, which Huawei Tech provided for ███ at its own expense and which represents the corporate defendants and Meng in the instant prosecution. (*See* Ex. A at 41:21-42:07.) In other words, ███ testified not only in his own defense, but as a witness prepared by FutureWei and Huawei Tech.

In sum, this Court should find that ███ prior testimony, made while he was an employee of FutureWei, regarding actions taken in his capacity as an employee while his interests aligned with FutureWei, should be attributable to FutureWei. Accordingly, this Court should admit ███ prior testimony pursuant to Rule 801(d)(2)(D).[5]

---

[5]    The admission of ███ prior testimony will not violate the Confrontation Clause. As to FutureWei, ███ prior testimony does not even implicate the Confrontation Clause because, for the reasons described above, it is non-hearsay, and the Confrontation Clause "prohibits *only* statements that constitute impermissible hearsay." *United States v. Orellana*, 341 F. App'x 501, 506 (11th Cir. 2009) (emphasis in original; internal quotations omitted). More fundamentally, and as to the other defendants, there is no Confrontation Clause issue because ███ has been subpoenaed to testify at trial.

III.    The Court Should Admit Evidence of Huawei Tech's Failure to Comply with a ███████ ███████

The Court should admit evidence of Huawei Tech's failure to comply with a ███ ████████—notwithstanding the Court's order to ██████████████████—as evidence of consciousness of guilt.

A.    <u>Background</u>



15



16



On April 2, 2026, the government received the defense's sole reciprocal discovery production, which includes documents ▮▮▮▮▮▮▮▮▮▮ that were not previously produced ▮▮▮▮▮▮▮▮▮▮▮▮. For example, the defense produced several Huawei internal communications that appear to originate from the PRC regarding the bounty memo circulated in July 2013 (▮▮▮▮), which purport to suggest that worldwide dissemination of the bounty memo may have been somewhat curtailed. The defense also produced a version of the bounty memo—apparently not the version sent to the United States—with additional language stating that recipients should comply with country laws and the Huawei business conduct guidelines. Huawei Tech had previously produced ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮, all of which are ostensibly exculpatory. Notably, based on reasonable searches of Huawei Tech's productions ▮▮▮▮▮▮▮▮ ▮▮▮▮, the productions do not appear to include documents regarding the drafting of the bounty memo, the establishment of an email address to receive misappropriated intellectual property, or the payment of any bonuses pursuant to the memo's policy.

The government has uncovered substantial evidence that inculpatory records responsive materials to the ▮▮▮▮ do, in fact, exist, whereas the government's own review suggests that Huawei Tech has largely failed to produce such inculpatory records.[6] For example:

- Multiple former Huawei Tech/Skycom or Iranian telecommunications employees provided the government with communications between Huawei

---

[6] The government's review of the produced materials, including Chinese-language materials, is ongoing. The following assessments regarding the produced materials are based on reasonable reviews conduct to date.

17

Tech/Skycom and Iranian government authorities, as well as contracts for work performed in Iran to build out, and to obtain equipment for, the country's wireless networks. The government has produced these documents to the defense. The government's review suggests that Huawei Tech has not produced any such documents. For example, as the government will show at trial and as other documents in Huawei Tech's production confirm—such as the document below (███████ ███████), which appears to be a spreadsheet tracking Huawei Tech projects around the world, including in "A2," Huawei Tech's internal code for Iran—Huawei Tech had contracts with Iranian cellular carriers ███████████████████████████ to build ██████ and other networks in Iran, but the government has been unable to locate contracts for these projects in Huawei Tech's productions. A more legible version of the chart below is attached as Exhibit B.

| 代表处\Rep.office | 地区部\Region | 主项目总数\Project Qty. | A | 项目级别\level | 项目编码1\Project code 1 | 项目名称1\project name |
|---|---|---|---|---|---|---|
| A2 Rep Office | Middle East Region | 550 | 5501016 | | 5501016 | |
| A2 Rep Office | Middle East Region | 550 | 5502278 | Normal Company Level (Class B) | 5502278 | |
| A2 Rep Office | Middle East Region | 550 | 5506697 | | 5506697 | |
| A2 Rep Office | Middle East Region | 550 | 5507940 | Normal Company Level (Class B) | 5507940 | |
| A2 Rep Office | Middle East Region | 550 | 5508508 | | 5508508 | |
| A2 Rep Office | Middle East Region | 550 | 5509039 | | 5509039 | |
| A2 Rep Office | Middle East Region | 550 | 5509041 | | 5509041 | |
| A2 Rep Office | Middle East Region | 550 | 5511459 | Regional Level (Class C) | 5511459 | |
| A2 Rep Office | Middle East Region | 550 | 5512177 | | 5512177 | |
| A2 Rep Office | Middle East Region | 550 | 5513654 | Regional Level (Class C) | 5513654 | |
| A2 Rep Office | Middle East Region | 550 | 5514551 | | 5514551 | |
| A2 Rep Office | Middle East Region | 550 | 5517306 | Regional Level (Class C) | 3607706 | |
| A2 Rep Office | Middle East Region | 550 | 5517905 | Regional Level (Class C) | 5517905 | |
| A2 Rep Office | Middle East Region | 550 | 5517950 | Normal Company Level (Class B) | 3654618 | |
| A2 Rep Office | Middle East Region | 550 | 5517950 | Normal Company Level (Class B) | 5517950 | |
| A2 Rep Office | Middle East Region | 550 | 5518742 | Regional Level (Class C) | 5518742 | |
| A2 Rep Office | Middle East Region | 550 | 5518874 | | 5518874 | |
| A2 Rep Office | Middle East Region | 550 | 5520171 | | 5520171 | |
| A2 Rep Office | Middle East Region | 550 | 5520173 | | 5520173 | |
| A2 Rep Office | Middle East Region | 550 | 5520326 | Regional Level (Class C) | 5520326 | |
| A2 Rep Office | Middle East Region | 550 | 5520378 | Regional Level (Class C) | 5520378 | |
| A2 Rep Office | Middle East Region | 550 | 5521040 | Regional Level (Class C) | 5521040 | |
| A2 Rep Office | Middle East Region | 550 | 5521317 | Regional Level (Class C) | 5521317 | |
| A2 Rep Office | Middle East Region | 550 | 5522734 | Normal Company Level (Class B) | 5522734 | |

- Additionally, Huawei Tech appears to have produced a single non-substantive document related to ████████████████████—the U.K.-based contract worker firm through which Huawei Tech hired contractors to work on the foregoing Iran-based network projects, and which Huawei Tech paid in U.S. dollars via its correspondent accounts at ██████ in violation of U.S. sanctions and contrary to its representations to ██████ regarding compliance with U.S. sanctions.

- The government has obtained from third parties (and produced to the defendants) (1) shipping instructions sent by a Huawei Tech employee based in the PRC that include directions on how to ship Huawei products to North Korea, (2) emails sent by Huawei Tech employees in the PRC regarding Huawei products going to North Korea, and (3) business records contained in public media reports that show Huawei products made in the PRC were purchased for a company in North Korea. The government's review of the materials produced by Huawei Tech in response to the grand

jury subpoena has identified certain documents that obliquely refer to Huawei Tech's operations in North Korea; these references to North Korea are subsumed within much larger documents whose focus is not Huawei Tech's business in North Korea. The documents produced by Huawei Tech stand in stark contrast to materials that the government obtained from other sources during its investigation, and that have appeared in third-party media reports, which show Huawei Tech involved in specific transactions for equipment to be delivered in North Korea.

- The PRC-based ▉ relationship manager for Huawei's accounts and ▉ outside counsel informed the government of email communications in which Huawei Tech lied to ▉ about the allegations in the 2012 and 2013 *Reuters* articles; according to both, these email communications were located in the PRC. Based on the government's review, Huawei Tech has not produced any such email communications.

- Internal ▉ records suggest that there were direct communications between the ▉ relationship manager for Huawei's accounts and Huawei Tech in which Huawei Tech lied to ▉ about the allegations in the 2012 and 2013 *Reuters* articles; according to these records, the underlying communications appear to be located in the PRC. Based on the government's review, Huawei Tech has not produced any such email communications.

- *Reuters* has informed the government that the representations attributed to Huawei in the 2012 and 2013 articles regarding Skycom were conveyed via email correspondence from Huawei. Based on the government's review, Huawei Tech has not produced any such email communications.

- As alleged in the Fourth Superseding Indictment, there were direct communications between then-▉ employee ▉ and the CEO of Huawei Tech ▉ concerning ▉ efforts to procure ▉ technology for Huawei Tech. (S-4 Ind. ¶¶ 23-25.) The government has located only a limited number of such communications because ▉ attempted to erase files from his electronic devices in connection with ▉-related litigation. (*See* Gov't Mot. *in Limine*, Feb. 13, 2026, at 10-11.) Based on the government's review, Huawei Tech has produced only certain of the relevant email communications involving ▉, only one of which is not a document the government previously produced to the defense and which document contains ▉ self-serving post hoc explanation of the ▉ document he had emailed to ▉; in this email, ▉ claims that he found the document on the internet.

- Former FutureWei employees have informed the government of efforts, directed by Huawei Tech personnel in the PRC, to destroy evidence of FutureWei's misappropriation of ▉ proprietary

19

technology used in FutureWei's ████ routers.  Based on the government's review, Huawei Tech has not produced any relevant communications regarding the destruction of evidence related to ████ routers, apart from notices to customers recalling ████ routers attached to filings in the related civil litigation between Huawei Tech and ████ Notably, none of these documents include PRC-based Huawei Tech communications.

- Employees of FutureWei's vendors have informed the government of shipments and sales of ████ routers in or about 2002.  As corroborated by bank records, former FutureWei employees informed the government that Huawei Tech controlled all of FutureWei's financial decisions and fully funded FutureWei's economic activities.  However, based on the government's review, Huawei Tech has not produced any records of sales of ████ routers or communications regarding such sales.

B.    Analysis

Efforts to conceal or suppress evidence constitute evidence of consciousness of guilt.  "There can be no doubt that an attempt to suppress material records permits an inference of consciousness of guilt and therefore of guilt itself."  *United States v. Mastropieri*, 685 F.2d 776, 790 (2d Cir. 1982).  Indeed, "an apparent attempt to suppress evidence of the crime and is plainly relevant to show . . . consciousness of guilt."  *United States v. Roldan-Zapata*, 916 F.2d 795, 803-04 (2d Cir. 1990).

Here, Huawei Tech's productions ████████████ and its reciprocal discovery production demonstrate an abuse of ████████ to suppress inculpatory evidence.  The information provided by third parties, including ████ ████ ████ *Reuters*, and various witnesses who previously worked in the telecommunications industry in Iran proves the existence of incriminating documents in Huawei Tech's possession—almost none of which Huawei Tech appears to have produced to the government.  For example, Huawei Tech's selective production of a limited volume of ostensibly exculpatory documents sourced from the PRC related to the bounty memo—without producing key communications relating to the same topic that would be incriminating, such as internal drafting documents and the creation of the internal email account

to receive misappropriated intellectual property—reflects a broad effort to suppress evidence. Similarly, notwithstanding talking points found on ███████ iPad regarding Skycom, Huawei Tech has produced no internal documents regarding internal reaction to the allegations in the *Reuters* articles, much less coordination of the scheme to obscure from banking partners and the U.S. government the relationship between Huawei Tech and Skycom. Similarly, though multiple witnesses report that Huawei employees conduct sensitive work communications through WeChat, Huawei Tech has not produced any WeChat communications.

The noncompliance is inexcusable. Huawei Tech did not raise any issues regarding data retention policies or other logistical issues preventing fulsome disclosure in the underlying motion to compel litigation.[7] Accordingly, the Court should permit the government to present witness testimony and documentary evidence of Huawei Tech's noncompliance with the ████████ ████████ as evidence of consciousness of guilt. *See Roldan-Zapata*, 916 F.2d at 803-04.

IV.   **The Court Should Admit Evidence of the Government's Efforts to Procure the Trial Testimony of Certain of Huawei's PRC-Based Employees**

The Court should permit the government to introduce evidence of its unsuccessful efforts to procure the trial testimony of certain Huawei employees based in the PRC (the "PRC Huawei Employees"), many of whom are Huawei Tech principals. Huawei Tech exercises unique control over the PRC Huawei Employees, yet the defendants have refused to accept subpoenas to produce them for testimony at trial. At the same time, the defendants have listed numerous other PRC-based Huawei employees on their own witness list for trial. The defendants' efforts to pick and choose which witnesses from the PRC will testify at this trial reflect the defendants'

---

[7]   To the extent Huawei Tech argues that no negative inference can be drawn from its withholding of inculpatory records because the ████████████████████████, the Court should reject that argument. Huawei Tech produced documents for years—████████ ████████████████████████████████. Its repeated and deliberate choice to not produce the inculpatory records is clear evidence of consciousness of guilt.

consciousness of guilt and are admissible for that purpose. Further, the government seeks a missing witness instruction as to the PRC Huawei Employees.

### A.    Background

The PRC Huawei Employees include 25 Huawei Tech employees based in the PRC whose testimony at trial the government has sought, but whose attendance the government cannot compel. Many of these witnesses would offer helpful testimony to the government. For example:

- CFO and Rotating Chairperson ████████ █ ████████████████████████████████████████████████████████████████████████████████ (*See* Gov't Mot. *in Limine*, Dec. 1, 2025, at 13-14.)

- Founder and CEO ████████ : Email correspondence involving ██ reveals his personal involvement in efforts to recruit ██ his participation in meetings with ██ during ██ visits to the PRC, as well as the receipt of a ██ document from ██ marked "Confidential Property." (*See* S-4 Ind. ¶¶ 24-25.)

- Executive ████████ : In 2012, then-"President of Huawei North America" ████████ offered false testimony before the U.S. House of Representatives' Permanent Select Committee on Intelligence (the "HPSCI"). For example, ██ falsely claimed that Huawei's business in Iran had not "violated any laws and regulations including sanction-related requirements," and that "We have never provided any equipment to the Iranian government. All that we have provided are only for commercial civilian use." (S-4 Ind. ¶ 60.)

Other PRC-based witnesses personally participated in the scheme to mislead financial institutions regarding the relationship between Huawei Tech and Skycom, personally participated in the theft of intellectual property from U.S. technology companies (including ████████ and ████ ), or filed declarations containing false information in connection with civil litigation with victims of Huawei's theft of intellectual property.

22

Where former employees report that Huawei Tech often moves employees at a moment's notice between countries to circumvent official scrutiny, Huawei Tech has unique control over the PRC Huawei Employees, including the ability to direct them to appear for testimony at trial.  Notably, in previous civil actions with ██████, ████████ and ██████, Huawei Tech has made PRC-based witnesses available for deposition and/or trial testimony.

On February 20, 2026, the government served Huawei Tech's counsel in the instant case and ██████ personal counsel at Steptoe with a trial subpoena for █ testimony in the forthcoming trial, coupled with a promise to issue a safe passage letter for ████ upon request.  No counsel acknowledged receipt of the trial subpoena.

On April 14, 2026, the government served Huawei Tech's counsel with trial subpoenas for the PRC Huawei Employees, including a subpoena for ██████ with an updated trial date (which the government also served on ██████ personal counsel at Steptoe).  The government remains willing to issue safe passage letters for any of the subpoenaed parties upon request. Defense counsel wrote the government on April 17, 2026, stating that it does not represent the PRC Huawei Employees and is not authorized to accept service of the trial subpoenas, but did not provide contact information for the witnesses or their counsel.  In the past, the defense team has identified for the government the name and contact information of counsel for current or prior employees based in the United States.  This time, they said nothing.  ██████ personal lawyers at Steptoe similarly have not responded to the government's efforts to serve the trial subpoenas.

Notably, the defendants' list of defense trial witnesses includes numerous PRC-based Huawei employees.  Based on open-source information, the list includes at least eleven such employees.  The list includes approximately 50 additional persons for whom the government has not ascertained their employment or residence, but who may include additional PRC-based

23

witnesses.[8]   Among other persons, the defense witness list includes two PRC-based perpetrators of the scheme to misappropriate ███████ technology for whom, within the past year, Huawei Tech has previously requested and received safe passage letters to enter the United States.

B.        Consciousness of Guilt

As the party with unique control over the PRC Huawei Employees, the defendants are responsible for their absence, and the government is therefore entitled to present evidence to the jury of its efforts to procure the witnesses' testimony as proof of the defendants' consciousness of guilt.

"Evidence of conduct designed to impede or prevent a witness from testifying is admissible as showing consciousness of guilt." *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972); *see United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) ("[E]vidence of conduct designed to impede a witness from testifying truthfully may indicate consciousness of guilt and should be placed before the trier of fact."); *see also* 18 U.S.C. § 1512(a)(1)(A) (criminalizing the act of "prevent[ing] the attendance or testimony of any person in an official proceeding").

Huawei Tech regularly coordinates with the government for Huawei Tech personnel to travel to the United States to review discovery or participate in case-related discussions (pursuant to more than 20 safe passage letters for dozens of Huawei Tech PRC-based employees, including two co-conspirators in the scheme to misappropriate ███████ technology). As noted above, in previous civil litigations with ████ ███████ and ████ Huawei Tech has made PRC-based witnesses available for deposition and trial testimony.  And it has now identified

---

8        Should the defense successfully arrange for PRC-based Huawei Tech employees to travel to the United States to testify at trial, while simultaneously refusing to produce for trial the other PRC Huawei Employees, the government may move to preclude the defense witnesses' testimony on fairness grounds.

at least 11 Huawei Tech employees based in the PRC that it may call as witnesses at trial, including the same two co-conspirators in the █████ misappropriation scheme. There thus can be no serious argument that Huawei Tech is unable to procure the testimony of the PRC Huawei Employees. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1988) ("Because Giacomini was an Atlas employee at the time it agreed to produce him as a witness, Atlas had a measure of control over Giacomini. Moreover, Atlas had an opportunity to obviate any feared effect from the instruction by presenting evidence of its efforts to produce Giacomini but failed to do so."). In sum, Huawei Tech is the party responsible for the witnesses' unavailability, and the government should be permitted to present proof of Huawei Tech's "conduct designed to impede or prevent a witness from testifying . . . as showing consciousness of guilt." *Cirillo*, 468 F.2d at 1240.[9]

C.      Missing Witness Instruction

"A missing witness charge inviting the jury to infer that the testimony of an uncalled witness might have favored a specified party 'is appropriate if production of that witness is peculiarly within the power of the other party.'" *United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1990) (quoting *United States v. Nichols*, 912 F.2d 598, 601 (2d Cir. 1988) (quotation marks and alterations omitted). "The rule regarding missing witness instructions is that 'if a party has it peculiarly within his [or her] power to produce witnesses whose testimony would elucidate the transaction, the fact that he [or she] does not do it creates the presumption that the testimony, if produced, would be unfavorable.'" *United States v. Rollins,* 862 F.2d 1282, 1297 (7th Cir. 1988)

---

[9]      There is no risk of undue prejudice to the defendants under Federal Rule of Evidence 403, where the evidence at issue is no more inflammatory than other evidence in the case, which includes a multifaceted effort to mislead the U.S. government and multiple financial institutions regarding Huawei Tech's activities in Iran, including assisting the Iranian government's suppression of domestic pro-democracy activities, a scheme to misappropriate the intellectual property of numerous U.S.-based technology companies, and a scheme to obstruct justice by removing personnel with experience working in Iran from the United States and destroying their Iran-related work data.

25

(citations omitted). "The logic underlying the missing witness rule is that where the party with peculiar or exclusive control of a witness fails to call that witness, there must be some reason for its failure." *United States v. Norris*, 873 F.2d 1519, 1522 (D.C. Cir. 1989).

As detailed above, the ability to produce the PRC Huawei Employees is "peculiarly within the power of the [defense]," *Mittelstaedt*, 31 F.3d at 1216, and a missing witness instruction is therefore appropriate.

## REQUEST FOR SEALING

The government respectfully requests leave to file this brief and the exhibits under seal, with a redacted version of the brief filed on the public docket. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, sealing is warranted in order to protect the privacy interests of third parties and because certain of the information contained herein relates to ███████████████ ████████. *See* ████████████████; *United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). Under the circumstances, the interest in safeguarding the privacy of these individuals and information about ████████████████ outweighs the public's qualified right to access such information. Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

## CONCLUSION

For the reasons set forth above, the Court should grant the government's supplemental motions *in limine*.

26

Dated: Brooklyn, New York
April 24, 2026

Respectfully submitted,


JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:     /s/ _____
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000


MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys


CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and
Export Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney

27